IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

AMERICAN CIVIL RIGHTS UNION, )
in its individual and corporate capacities, )
)
         *Plaintiff*, )
)                               7:16-CV-103
    v. )     Civil Action No. _____
)
ELECTION ADMINISTRATOR )
RAFAEL R. MONTALVO, in )
in his official capacity, )
         *Defendant.* )
)
**Serve: Rafael R. Montalvo** )
    401 Britton Ave # 208 )
    Rio Grande City, TX 78582 )
_____ )

## COMPLAINT

Plaintiff, by its attorneys, brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §20507.

1. Plaintiff seeks declaratory and injunctive relief to compel Defendant's compliance with Section 8 of the NVRA. Specifically, Defendant has violated Section 8 by failing to make a reasonable effort to conduct voter list maintenance programs in elections for federal office and by failing to produce records and data related to those efforts, as required by Section 8. Plaintiff seeks injunctive relief commanding Defendant to permit inspections of election records pursuant to 52 U.S.C. §20507(i). Plaintiff also seeks a declaratory judgment and injunctive relief requiring Defendant to conduct and execute reasonable voter list maintenance programs in a manner that is consistent with federal law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, as the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. §20510(b), as the action seeks injunctive and declaratory relief under the NVRA.

3. Venue in this Court is proper under 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4. Plaintiff American Civil Rights Union, Inc. ("ACRU") is a non-profit corporation, incorporated in the District of Columbia, which promotes election integrity, compliance with federal election laws, government transparency, and constitutional government. Plaintiff ACRU brings this action in its individual and corporate capacities and also on behalf of its members and supporters who are registered to vote in the State of Texas.

5. Plaintiff ACRU has individual members and supporters. Members and supporters enable the mission of ACRU and some make financial contributions to support this mission.

6. An essential and core mission of the Plaintiff is to foster compliance with federal election laws, promote election integrity and ensure that only eligible voters may participate in American elections so as prevent dilution of legitimate votes by illegal votes.

7. Plaintiff has members and supporters in the State of Texas. Plaintiff's members and supporters in the State of Texas are registered to vote in the State of Texas. These members and supporters share Plaintiff's interest in the accuracy and currency of official lists of eligible voters in the State of Texas, as the accuracy and currency of these lists directly affect their right to vote.

8. Defendant's actions and omissions have injured and continue to cause injury to members and supporters of Plaintiff who are registered to vote in the State of Texas because they are undermining their confidence in the integrity of the electoral process and potentially diluting the effectiveness of their vote.

9. It is unlikely that any individual supporter would have the ability or the resources to take action to protect their individual interests or redress the injury to their right to vote absent collective action by Plaintiff.

10. Plaintiff itself has been and continues to be harmed by the failure of Defendant to provide substantive responses to requests for election data and the right to inspect election records concerning the Defendant's voter list maintenance programs and activities, an issue of substantial public importance especially in an election year. Not only has the refusal of Defendant denied Plaintiff the ability to obtain records and data about an issue of substantial public importance, but it also is preventing Plaintiff from analyzing such records and information and disseminating its findings to the public. Consequently, Defendant is injuring the ability of Plaintiff to carry out its public interest mission.

11. As an integral part of its public interest mission, Plaintiff disseminates information about compliance by state and local officials with federal election statutes, including election integrity statutes. A central activity of the Plaintiff is to promote election integrity and compliance with federal and state statutes which ensure the integrity of elections. Defendant's violation of NVRA has impaired and will impair Plaintiff from carrying out this public interest mission. Plaintiff itself has been harmed by Defendant's noncompliance with the NVRA.

12. The Defendant, Starr County Election Administrator Rafael R. Montalvo, is the county registrar of voters. As registrar, the Defendant has the power to conduct voter

registration and voter roll maintenance, pursuant to Tex. Elec. Code Ann. § 12.001, Tex. Elec. Code Ann. § 15.022(a), and Tex. Elec. Code Ann. § 31.043.

13. Numerous Texas statutes vest power solely in the Defendant to maintain voter rolls and place responsibility on the Defendant to ensure that only eligible voters are on the rolls.

(a). Tex. Elec. Code Ann. § 15.022(a) mandates "[t]he registrar shall make the appropriate corrections in the registration records, including, if necessary, deleting a voter's name from the suspense list."

(b). Furthermore, Tex. Elec. Code Ann. § 15.022(b) specifically requires the Defendant to, at least monthly, "request from the United States Postal Service any available information indicating address reclassifications affecting the registered voters of the county."

(c). Tex. Elec. Code Ann. § 16.031 states that "[t]he registrar shall cancel a voter's registration immediately on receipt of: (1) notice . . . that the voter's residence is outside the county; (2) . . . that the voter is deceased . . . (3) of a final judgment of the voter's . . . mental incapacity without the right to vote, conviction of a felony" and other notices indicating that the voter has an address outside the state or county for voting purposes. Tex. Elec. Code Ann. § 16.0332 states that "the registrar shall cancel the voter's registration" . . . "if a voter fails to submit to the registrar proof of citizenship" within 30 days of being mailed a notice requesting such proof after the voter is "excused or disqualified from jury service because of citizenship status . . . ."

(d). Tex. Elec. Code Ann. § 18.001 requires the Defendant to prepare the certified list of registered voters eligible to vote in upcoming elections. This list is the government record which is used to determine eligibility to cast a ballot in a Texas election.

4

(e).    Tex. Elec. Code Ann. § 18.003 requires the Defendant, "[f]or each election held in the county in a voting year[,]" to "prepare and furnish to the authority responsible for procuring election supplies a certified list of corrections," containing "(1) the name of each person for whom the information on a list of registered voters furnished under Section 18.001 or 18.002 has changed because of cancellation or correction; and (2) an indication that the person's registration has been canceled or the corrected registration information."

## FACTUAL BACKGROUND

14.    Defendant has a federal obligation to maintain accurate and current voter rolls which contain the names of only eligible voters residing in Starr County. Federal law requires "local election officials [to] perform list maintenance with respect to the computerized [state] list on a regular basis." 52 U.S.C. §21083(a)(2)(A). Moreover, Section 8 of NVRA requires Defendant to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant . . . ." 52 U.S.C. §20507(a)(4)(A)-(B). Local election officials such as the Defendant are specifically obliged to carry out these list maintenance duties and remove ineligible voters from the rolls pursuant to 52 U.S.C. §20507(d)(3).

15.    Section 8 of the NVRA also requires that Defendant shall "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. §20507(c)(2)(A). Section 8 of the NVRA mandates that any such list maintenance programs or activities "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (52 U.S.C. §10301 *et seq.*)." 52 U.S.C. §20507(b)(1).

16. Also pursuant to Section 8 of the NVRA, Defendant "shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ." 52 U.S.C. §20507(i)(1).

17. Voter rolls maintained by the Defendant for Starr County contain more voters registered to vote than there are citizens eligible to vote residing in the county. According to Texas Secretary of State's Office, in 2014 Starr County had 30,198 registered voters despite having a citizen voting age population of only 27,975, according to the United States Census Bureau. Thus, more than 107 percent of living citizens old enough to vote are registered to vote in Starr County in 2016. This 27,975 figure includes voters who are on the "suspense list." According to the Texas Secretary of State, "[a]n individual on the suspense list is still a registered voter and has the same rights as a non-suspense list voter." *See*, Voter Registration, http://www.sos.state.tx.us/elections/vr/index.shtml. These rights include the right to vote. *Id*.

18. Starr County has had longstanding problems maintaining plausible numbers of registrants on the rolls. According to Texas Secretary of State's Office, in 2010 Starr County had 29,114 registered voters despite having a citizen voting age population of only 27,615, according to the United States Census Bureau. Therefore, approximately 105 percent of living citizens eligible to vote in Starr County were registered to vote there in 2010.

19. According to the Texas Secretary of State's Office, in 2012 Starr County had 30,627 registered voters despite having a citizen voting age population of only 27,615, according to the United States Census Bureau. Thus, during the 2012 federal general election in Starr County about 110 percent of living citizens eligible to vote were registered.

20. Defendant is responsible for allowing this circumstance to occur and persist over the past several election cycles. By failing to implement a program which takes reasonable steps to cure these circumstances, Defendant has violated NVRA and other federal list maintenance statutes.

21. The failure of the Defendant to comply with its obligations under federal voter registration laws has undermined the confidence of Texas' properly registered voters in the integrity of the voter registration rolls and, accordingly, has undermined the integrity of elections held across the State of Texas.

22. On December 23, 2015, Susan Carleson, the President of the ACRU, writing on behalf of ACRU and its members and supporters who are registered to vote in the State of Texas, sent a statutory notice letter to Defendant notifying him that Starr County was in violation of federal voter registration laws. (Attached as Exhibit A.) The notice letter informed the Defendant that "your county is in apparent violation of Section 8 of the National Voter Registration Act based on our research." (Exhibit A at 1.) The letter explained that, "[b]ased on our comparison of publicly available information published by the U.S. Census Bureau and the federal Election Assistance Commission, your county is failing to comply with Section 8 of the NVRA." *Id*. The letter, *inter alia*, stated: "[i]n short, your county has significantly more voters on the registration rolls than it has eligible living citizen voters." *Id*.

23. The December 23, 2015 letter also sought a variety of publicly available information which would tend to indicate whether or not the Defendant was in compliance with NVRA and other federal laws. (Exhibit A at 2.) Among the data requested were current registration data, the numbers of voters purged pursuant to maintenance obligations, the number

of notices sent to inactive voters, the number of voters removed due to criminal conviction, and the most recent number of registered voters. *Id.*

24. The December 23, 2015 letter also requested that the Defendant make available for public inspection all records concerning "the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency" of official lists of eligible voters, explaining that the Defendant was required to make such records available under Section 8 of the NVRA. *Id.*, (quoting 52 U.S.C. § 20507(i)).

25. The December 23, 2015 letter also notified Defendant that a lawsuit may be brought against it to ensure compliance with the requirements of federal voter registration laws. (Exhibit A at 2.)

26. The Plaintiff has spent considerable time and financial resources in an effort to encourage citizens of Starr County to petition the Defendant to cure any violations of the NVRA and also spent time and financial resources directly seeking a cure to voters rolls in Starr County which contain more registrants than eligible citizens who reside in Starr County.

27. In January 2016, the ACRU initiated contact with the Defendant in an effort to remedy the Defendant's failure to reasonably maintain the voter rolls. Prior to filing this action, the ACRU expended considerable time, energy, and monetary costs to encourage the implementation of a systemic effort to clean the Defendant's registration records.

28. A representative of the Plaintiff traveled to Starr County in January 2016 and met with the Defendant to discuss areas of concern, potential remedial efforts and requested current registration numbers.

29. Plaintiff's pre-filing efforts to cure the defects in registration rolls through requesting the implementation of a systemic process of list maintenance failed, because Defendant would not agree to adopt additional remedial procedures suggested by the Plaintiff.

## COUNT I

### (Violation of the NVRA: Failure to Conduct List Maintenance)

30. Plaintiff realleges paragraphs 1 through 29 as if fully stated herein.

31. Defendant has failed to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of NVRA, 52 U.S.C. §20507 and 52 U.S.C. §21083(a)(2)(A).

32. Plaintiff has suffered an irreparable injury as a direct result of Defendant's violation of Section 8 of the NVRA and 52 U.S.C. §21083(a)(2)(A). Defendant's failure to comply with the NVRA has aggrieved Plaintiff by impairing its essential and core mission of fostering compliance with federal election laws, promotion of election integrity and avoiding vote dilution when ineligible voters participate in elections. Defendant's failure to comply with the NVRA has caused the Plaintiff pecuniary injury.

33. Plaintiff's members and supporters in Texas will continue to be injured by Defendant's violations of Section 8 of the NVRA because confidence in the legitimacy of elections in Texas will be undermined and burden their right to vote unless and until Defendant is enjoined from continuing to violate the law.

34. Plaintiff has no adequate remedy at law.

## COUNT II

### (Violation of the NVRA: Failure to Produce Records and Data)

35. Plaintiff realleges paragraphs 1 through 34 as if fully stated herein.

36. Defendant has failed to substantively respond to Plaintiff's written request for data and failed to provide records to Plaintiff concerning Defendant's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters for Starr County, in violation of Section 8 of the NVRA, 52 U.S.C. §20507(i).

37. Plaintiff has suffered an irreparable informational injury as a direct result of Defendant's violation of Section 8 of the NVRA because the Plaintiff does not have the data and records requested. The NVRA confers upon Plaintiff an individual right to information, and by denying that information to Plaintiff, Defendant caused a concrete injury to Plaintiff.

38. Plaintiff will continue to be injured by Defendant's violations of Section 8 of the NVRA unless and until Defendant is enjoined from continuing to violate the law.

39. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

1. Declaring that Defendant is in violation of Section 8 of the NVRA;

2. Enjoining the Defendant from failing or refusing to comply with the voter registration list maintenance requirements of Section 8 of the NVRA in the future;

3. Ordering the Defendant to substantively respond to Plaintiff's written request for records concerning his implementation of programs and activities to ensure the accuracy and currency of Starr County's voter registration list.

4. Ordering the Defendant to pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. §20510(c); and

5.  Granting Plaintiff further relief that this Court deems just and proper, including potential preliminary injunctive relief to ensure that the 2016 Texas statewide election is not conducted in Starr County using voter rolls with ineligible registrants.

Dated: March 4, 2016

For the Plaintiff ACRU:

Respectfully submitted,

_____
Eric Wiesehan
Wiesehan Law Firm, PLLC
P.O. Box 720938
McAllen, TX 78504
Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com

H. Christopher Coates*
LAW OFFICE of H. CHRISTOPHER COATES
934 Compass Point
Charleston, South Carolina 29412
Tel: (843) 609-7080
curriecoates@gmail.com

J. Christian Adams*
Kaylan L. Phillips*
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org

*Pro Hac Vice applications to be filed*