IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| AMERICAN CIVIL RIGHTS UNION, ) <br> in its individual and corporate capacities, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> ELECTION ADMINISTRATOR ) <br> RAFAEL R. MONTALVO, ) <br> in his official capacity, ) <br> *Defendant*. ) <br> ) <br> _____ ) | Civil Action No. 7:16-cv-00103 |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COMES NOW the Plaintiff and files this Response in Opposition to Defendant's Motion to Dismiss.

## SUMMARY OF ARGUMENT

This is an action brought under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §20501, *et seq.*, to enforce obligations of election officials to maintain accurate voter registration rolls.[1]  Plaintiff American Civil Rights Union's ("ACRU") is a "non-profit corporation…which promotes election integrity, compliance with federal election laws, government transparency, and constitutional government." Plaintiff ACRU's Complaint, Dkt. 1, ¶ 4. The registration rolls in Starr County have contained, and continue to contain, more voters registered to vote than there are citizens eligible to vote living in the county. *See*, *e.g.*, *id.* ¶ 17. ACRU named as Defendant Starr County Election Administrator Rafael R. Montalvo

---

[1] List maintenance obligations and public record rights at issue in this case under 52 U.S.C. §20507 are commonly referred to as "Section 8" obligations under the NVRA as they were contained in Section 8 of Pub. L. 103-31, May 20, 1993, 107 Stat. 77.

("Defendant") because he is the official responsible for maintaining voter rolls in Starr County. *See* Complaint at ¶¶ 13-16. Defendant responded to these allegations by filing a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defendant Rafael R. Montalvo's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Motion to Dismiss for Failure to State a Claim, Dkt. 6 (hereinafter "Motion"). Plaintiff opposes Defendant's Motion.

Defendant's arguments that ACRU's Complaint should be dismissed are predicated on Defendant's attempt to disavow his responsibility for voter roll list maintenance under state or federal law. Defendant claims that the "State of Texas and/or the Secretary [of State of Texas] are the only parties that may be subject to a civil enforcement action." Motion at 6.  In order to do so, Defendant must ignore the responsibilities placed upon him by Texas law and the NVRA, responsibilities the ACRU delineated in its Complaint. *See* Complaint at ¶ 12-13.

Defendant's arguments lack merit. Texas law vests Defendant with the responsibility of conducting voter registration and voter roll maintenance. Complaint at ¶ 12 (citing Tex. Elec. Code Ann. § 12.001, Tex. Elec. Code Ann. § 15.022(a), and Tex. Elec. Code Ann. § 31.043). The United States District Court for the Western District of Texas recently confronted and rejected Defendant's argument. *See ACRU v. Tax Assessor-Collector Cindy Martinez-Rivera*, No. 2:14-cv-00026 (W.D. Tex. 2014).

Defendant's argument that ACRU's Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of standing because the ACRU did not send a statutory notice letter to the State of Texas or the Secretary of State also lacks merit. Defendant's argument contains an important factual error as ACRU *did* send a statutory notice letter to the Texas Secretary of State on the same day it sent the notice to Defendant. *See* Exhibit A to Complaint, Dkt. 1-1.  Both letters were

mailed 72 days before this action commenced, more than satisfying the statutory standing requirements.[2] In fact, the Western District of Texas found a nearly identical notice letter, sent by ACRU to the Zavala County voter registrar with a copy sent to the Secretary of State, to provide sufficient notice under the NVRA.

## STANDARD OF REVIEW

A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) "for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. Tex. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (internal citations omitted). Accordingly, first, a court "must accept as true all well pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff." *Id*. (internal citations omitted). Second, dismissal for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.*

While a complaint need not contain detailed factual allegations, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[2] Pursuant to 52 U.S.C. § 20510(b), "A person who is aggrieved by a violation of [the NVRA] may provide written notice of the violation," and if, as relevant here, the notice was sent within 120 days of a federal election, "the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." *See also*, Complaint at ¶ 25.

544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### I. Election Administrator Montalvo is the Proper Defendant.

Defendant claims that ACRU "has not alleged a cognizable claim over which the Court has subject-matter jurisdiction and has failed to state a claim upon which relief can be granted, because [ACRU] has no private right of action under the NVRA against the Defendant." Motion at 9. Under Defendant's interpretation of the NVRA, "private actions for alleged NVRA violations must be brought against the State and/or its chief election official." *Id*. Accordingly, Defendant contends that ACRU's complaint "should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6)." Motion at 10. In support of his theory, Defendant relies upon a readily distinguishable Fifth Circuit case involving Louisiana's Secretary of State, *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014). Defendant also ignores a decision from the District Court for the Western District of Texas case rejecting the exact theory Defendant espouses here, *ACRU v. Tax Assessor-Collector Cindy Martinez-Rivera*.

#### a. Defendant misunderstands the applicable federal statute.

As an initial matter, more than six pages of Defendant's 11-page Motion purport to describe the statutory backdrop for ACRU's claims.[3] In so doing, Defendant misunderstands the statutory obligations at issue in this case. Congress provided election officials flexibility to implement a generalized program to keep voter rolls clean. The NVRA provides that each State

---

[3] Defendant's Motion contains several confusing citation errors. For example, ACRU believes that the references to the NVRA's voter removal programs on page 3 omit subsection (c) from the citation. It appears the citation to "*Id*. § 20507(2)(B)(i)" on the last line of page 3 is referring to § 20507(c)(2)(B)(i). Additionally, the citation to the same program at the top of page 4 omits subsection (c) and erroneously list subpart (A) instead of (B). It appears the citation to "*Id*. § 20507(2)(A)(ii)" is referring to § 20507(c)(2)(B)(ii).

"shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities . . . ." Title 52 of the United States Code § 20509 and Texas have done just that by designating a voter registrar for each county. Tex. Elec. Code § 12.001. The fact that Congress spoke to the "States" in the specific NVRA provisions does not absolve Defendant when, under Texas law, Defendant has the primary responsibility for and functional control of maintaining Starr County voter rolls, not Texas. Defendant's assertions to the contrary are without merit. The Complaint details numerous state statutory obligations for list maintenance, that fall solely on the Defendant, not the state. Complaint, ¶¶ 12-13. Under Texas law, the Defendant performs the duties of the "registrar," Tex. Elec. Code Ann. § 31.043, including the responsibility of maintaining the voter rolls, Tex. Elec. Code Ann. § 15.022(a).

Section 8 of the National Voter Registration Act ("NVRA"), 52 U.S.C. §20507, therefore, requires Defendant to make reasonable efforts to remove the names of ineligible voters from their official lists of eligible voters by reason of the death of the registrant or a change in the registrant's residence. Defendant must "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4). Prior to 90 days before any federal election, Defendant must complete any program "to systematically remove the names of ineligible voters." 52 U.S.C. § 20507(c)(2)(A).[4]

---

[4] Defendant is correct that the Help America Vote Act of 2002 ("HAVA") does not confer a private right of action enforceable by Plaintiff. Motion at 7. But in judging whether the Defendant has a "reasonable" program for voter list maintenance, this Court may look at the obligations within HAVA, codified at 52 U.S.C. § 21083(a)(2)(A), (which explicitly incorporate obligations under the NVRA), to broadly inform this Court of the reasonableness of Defendant's list maintenance program. If Defendant is failing to comply with a number of federal election obligations, even mandates which themselves do not contain a private right of action, the failure may inform the court as to the "reasonableness" of the Defendant's program. HAVA and the NVRA deliberately cross-pollinate their list maintenance obligations. Hence, Plaintiff mentions obligations under 52 U.S.C. § 21083(a)(2)(A) so the Defendant is on notice that a comprehensive inquiry into Defendant's conduct is relevant in this dispute and will be conducted in discovery.

### b. Actions Under the NVRA May Be Brought Against Local Officials.

The NVRA imposes obligations on both state and local officials. The NVRA requires a state to make a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters, and allows any aggrieved person to file suit to enforce the provision. Here, the Complaint alleges failures to properly maintain voter rolls, stating: (1) Defendant, as the person designated by Texas law to maintain voter rolls in Starr County, has a federal obligation to maintain accurate and current voter rolls which only contain the names of eligible voters residing in Starr County; (2) Defendant must conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists; (3) Voter rolls maintained by Defendant for Starr County contain more voters registered to vote than citizens eligible to vote; (4) an implausible voter registration rate indicates that Defendant has failed to make reasonable efforts to conduct voter list maintenance programs; and (5) ACRU's members are aggrieved because of the potential for voter fraud and vote dilution.

Failing to comply with these obligations gives rise to a cause of action against either a state or local election official, depending who is the most appropriate party. This particular case concerns list maintenance activities of Defendant, the Starr County election administrator, including seeking access to election records solely in his custody.

### c. The Fifth Circuit Decision Relied Upon by Defendant Is Distinguishable.

Defendant primarily relies upon a Fifth Circuit decision for its contention that Texas is the only proper defendant. *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014). There, the Louisiana Secretary of State claimed "neither the NVRA nor Louisiana law provide[d] his office with the authority to enforce the NVRA" and, therefore, the plaintiffs' claims were not redressible. *Id*. at 838. The Fifth Circuit disagreed with the Louisiana Secretary of State's interpretation, finding

that he did have enforcement power under the NVRA. *Id*. at 839. Finding that the Secretary of State has obligations under the NVRA is not the same thing as finding that local election registrars have no obligations under the NVRA. Indeed, they both do.

*Scott v. Schedler* does not support dismissal of ACRU's Complaint for two important reasons. First, in *Scott*, the court was presented with Louisiana's implementation of an entirely different provision of the NVRA related to voter registration at state social service agencies, not the failure of a Texas county to reasonably maintain voter rolls. Second, *Scott* did not address whether a plaintiff *must* name the Louisiana Secretary of State but, rather, whether enjoining the Secretary of State would redress the plaintiffs' concerns.

### d. Defendant's Argument Was Rejected by U.S. District Court for the Western District of Texas.

*Scott* did not address the issues now before this Court, but the Western District of Texas squarely did in *Martinez-Rivera*. There, the ACRU filed a lawsuit against the Zavala County voting registrar pursuant to the same statutory provisions now before this court. Defendant there, as here, alleged that the ACRU failed to sue the proper party. *See ACRU v. Tax Assessor-Collector Cindy Martinez-Rivera*, No. 2:14-cv-00026, at 14 (W.D. Tex. 2014 Mar. 30, 2015) (order denying defendant's motion to dismiss and plaintiff's motion for leave to file first amended complaint) (attached as Exhibit A). The district court in *Martinez-Rivera* assessed the responsibilities of the voter registrar for maintaining the voter rolls and found that "[b]y fulfilling these duties, the county tax assessor-collectors enable the Texas Secretary of State to maintain accurate and current voter registration rolls, as mandated by the NVRA. *See* 52 U.S.C. § 20507." *Id*. at 15.

The court specifically considered the *Scott* case and rejected its application to the present case:

7

> [T]he *Scott* court did not say that the Secretary of State is a necessary party to an NVRA suit. The NVRA itself is also silent on the subject of necessary parties. *See* 52 U.S.C. § 205 10(b). In the absence of a holding to the contrary, this Court is unwilling to dismiss the instant Complaint on standing grounds for failure to join the Secretary of State. As previously noted, the Tax Assessor-Collector has certain obligations under the NVRA as the designated voter registrar and state official. If the Defendant has failed to meet her obligations, ACRU can bring a civil suit against her.

*Id*. at 16. For the same reasons, Defendant's identical arguments should be rejected here.

### e. ACRU Complied with the NVRA's Notice Requirement.

Defendant's allegation that ACRU failed to satisfy the NVRA's notice requirement of 52 U.S.C. § 20510(b) is also without merit for two reasons.[5]

First, as is stated above, ACRU *did* send the requisite statutory notice to both Defendant and the Texas Secretary of State on December 23, 2015. Dkt. 1-1 at 3 (copying Texas Secretary of State.) Defendant wholly ignores this fact.

Second, Defendant is the most appropriate party to receive notice. Notices sent under the NVRA should be directed to the offending official who has the power to remedy the violation. The Defendant, not the Secretary of State, is the official in charge of maintaining Starr County's voter rolls and is the custodian of records sought by the ACRU.

The ACRU's detailed, three-page, single-spaced letter notified Defendant that Starr County was in violation of Section 8 of the NVRA and advised Defendant that a lawsuit may be

---

[5] Procedurally, Defendant's Motion seeing relief pursuant to Fed. R. Civ. P. 12(b)(6) is flawed because "[t]he Fifth Circuit has held that 'Congress intended the NVRA's private-right-of-action provision to eliminate prudential limitations on standing.' Consequently, organizations like the NAACP only have to demonstrate that they have constitutional, or 'Article III,' standing." *Ferrand v. Schedler*, 2011 U.S. Dist. LEXIS 82898, *5-6 (E.D. La. July 19, 2011) (citing *Ass'n of Comm. Org. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999).) *See also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of . . . statutory standing is properly granted under Rule 12(b)(6).")

brought to ensure compliance with the requirements of the law. Dkt. 1-1. The legislative history of the NVRA "indicate[s] that Congress structured the notice requirement in such a way that notice should provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Ass'n of Community Orgs. For Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997). ACRU's letter did just that. Further, prior to filing this lawsuit, a representative of ACRU met with Defendant in order to discuss potential remedial efforts. Plaintiff's efforts failed, because Defendant did not agree to adopt additional remedial procedures suggested by the Plaintiff. *See* Complaint, ¶¶ 28-29.

Defendant relies entirely on the omission of the words "voting registrar" or "local election official" from the notice provisions of 52 U.S.C. § 20510(b) claiming that notice must be sent to the state election official. Given the concurrent obligations on local officials throughout the NVRA, and the delegation of responsibilities to the Defendant as indicated in Texas law, Defendant proffers an absurd interpretation of the notice provisions of 52 U.S.C. § 20510(b). Throughout the NVRA, concurrent obligations on local election officials are imposed. The NVRA does not inventory in every instance the list of obliged parties, as it also does not do in the notice provisions of § 52 U.S.C. § 20510(b). Nevertheless, even if "local official" or "voter registrar" is not listed as obliged party in every section under the NVRA, the NVRA unquestionably obligates local officials, including Defendant, to comply with the terms.

Notably, the Western District of Texas found that a nearly identical letter from the ACRU to the Zavala County voter registrar survived a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Exhibit A at 19. As here, the ACRU's letter was addressed to the Zavala County voter registrar and copied the Texas Secretary of State. As here, the letter provided the proper statutory citations underpinning the alleged violations, set forth the organization's concerns that "Zavala

County 'has significantly more voters on the registration rolls than it has eligible live voters[,]'" and "urged the recipient to work toward full compliance with the NVRA, warning that the failure to do so could result in a lawsuit and citing the provision of the NVRA that allows a private party to bring suit." *Id*. As in *Martinez-Rivera*, the ACRU's letter to Defendant "gives the Defendant enough information to diagnose the problem. At that point it was the Defendant's responsibility to attempt to cure the violation." *Id*.

Defendant's interpretation of the proper party to receive notice is overly narrow and incorrect. Defendant's interpretation of the statute would misdirect notices away from the party most responsible for compliance with the particular provision of the NVRA (local custodians of records) and toward parties which have nothing to do with maintaining the records (the state).

The district court in another NVRA case, *Project Vote v. Long*, 752 F.Supp.2d 697, (E.D. Va. 2010), *aff'd*, 682 F.3d 331, (4th Cir.2012), refused to apply an absurd result in interpreting the language of the NVRA.

> Under a plain meaning analysis, the court will not apply a statute's plain meaning when it would frustrate the statute's purpose or lead to an absurd result. . . [the stated purposes of the NVRA include] (3) to protect the integrity of the electoral process; and (4) to ensure that accurate and current voter registration rolls are maintained. Reading these purposes together, it is evident that the last identified purpose of the statute is dependent upon, and is the culmination of, the fulfillment of the other purposes of the statute.

*Id.*, at 709-710 (internal citations omitted).

In *Project Vote*, the local registrar was found to be subject to the record keeping obligations of the NVRA. There, the plaintiff initially sent a public information request for election records to the local election official. After the local election official refused to provide the information, the state election official, *sue sponte*, sent a communication to plaintiff agreeing

10

with the denial. *Id.* at 699-700. Thereafter, plaintiff asked the state to amend state guidelines which formed the basis of the denial of the plaintiff's request. *Id*. at 700.

> In this case at bar, as in *Public Citizen* and *Akins*, the NVRA provides a public right to information. There is no dispute that the plaintiff has been unable to obtain the Requested Records, which, in its view of the law, the NVRA requires the defendants to make publicly available. Moreover, the NVRA specifically provides a private right of action to any person who is aggrieved by a violation of the Public Disclosure Provision.

*Id.* at 703. The Defendant's interpretation of the NVRA, that notice letters should be directed to a state official who in not responsible for the maintenance of the records nor has control of the records sought, and when no state policies are challenged, should be rejected.

## CONCLUSION

For the reasons stated above, Defendant's Motion should be DENIED.

Respectfully submitted,

For the Plaintiff ACRU:
Dated: April 27, 2016

*/s/ Eric Wiesehan*
_____
Eric Wiesehan SBN 24084094
Southern District Bar No.: 1690807
Wiesehan Law Firm, PLLC
P.O. Box 720938
McAllen, TX 78504
Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com

H. Christopher Coates*
LAW OFFICE of H. CHRISTOPHER COATES
934 Compass Point
Charleston, South Carolina 29412
Tel: (843) 609-7080
curriecoates@gmail.com

J. Christian Adams\*
Kaylan L. Phillips\*
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org

*\*Pro Hac Vice applications to be filed*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2016, I caused the foregoing to be filed with the United States District Court for the Southern District of Texas via the Court's CM/ECF system, which will serve all registered users.

Dated: April 27, 2016

>*/s/ Eric Wiesehan*
>Eric Wiesehan SBN 24084094
>Southern District Bar No.: 1690807
>Wiesehan Law Firm, PLLC
>P.O. Box 720938
>McAllen, TX 78504
>Tel: (956) 207-2795
>Fax: (866) 311-5445
>wiesehanlaw@gmail.com