IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AMERICAN CIVIL RIGHTS UNION, | § | |
| In its individual and corporate capacities, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| V. | § | Civil Action No. 7:16-CV-00103 |
| | § | |
| ELECTION ADMINISTRATOR | § | |
| RAFAEL R. MONTALVO, | § | |
| In his official capacity, | § | |
| Defendant. | § | |
| | § | JURY TRIAL REQUESTED |

## DEFENDANT'S ORIGINAL ANSWER
## AND JURY DEMAND

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant Starr County Elections Administrator Rafael R. Montalvo, (hereinafter "Defendant"), filing this original answer to Plaintiff's original complaint, and jury demand.  In support thereof, Defendant would respectfully show as follows:

### A.  ANSWER

Pursuant to Rule 8(b), Federal Rules of Civil Procedure, Defendant denies each and every allegation contained in Plaintiff's original complaint (hereafter "the Complaint") except those expressly admitted herein.

Defendant answers the allegations contained in the numbered paragraphs of the Complaint as follows:

1.      Plaintiff's alleged violations of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507 are denied.

2.      It is denied that the Court has subject-matter jurisdiction.  The NVRA does not provide Plaintiff with a private right of action against Defendant.  Further, the NVRA does not provide the Court with subject-matter jurisdiction over the Plaintiff's claims.  Additionally, Plaintiff has failed to state a claim upon which relief may be granted.  Moreover, Plaintiff does not have standing to bring claims under the NVRA.  Furthermore, Plaintiff's claims of alleged NVRA violations are not ripe and/or moot.

3.      It is denied that venue is proper because a substantial part of the alleged events or omissions giving rise to the claim occurred in the Southern Judicial District of Texas.  Plaintiff's claims concern the maintenance of the State of Texas's official list of registered voters.  The NVRA imposes obligations upon the State and the State's chief elections officer, the Texas Secretary of State.   See e.g., 52 U.S.C. §§ 20507, 20509; Tex. Elec. Code § 31.001(a).  Accordingly the substantial part of any relevant events or omissions occurred in Austin, Texas, which is located in the Western Judicial District of Texas.  At most, venue is proper in the Southern Judicial District of Texas because the Defendant resides therein.  Cf. 42 U.S.C. § 1391(b)(1)

4.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 4 of the Complaint, including whether Plaintiff has members or supporters who are registered to vote in the State of Texas.

5.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 5 of the Complaint.

6.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 6 of the Complaint.

7.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 7 of the Complaint.

8.    Plaintiff's allegations in Paragraph 8 of the Complaint are denied.

9.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 9 of the Complaint.

10.    Plaintiff's allegations in Paragraph 10 of the Complaint are denied.  Defendant substantively responded to all of Plaintiff's requests for election information and records, and made the same available to Plaintiff's representatives for inspection.  However, Plaintiff's representatives declined to inspect or review said information and records.  Defendant also denies that the NVRA provides Plaintiff with a right to inspect records for which Defendant is responsible, liable, or capable of causing any harm.  Section 20507(i) provides that, "[e]ach State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered."  52 U.S.C.A. § 20507(i) (emphasis added).    "State" means a State of the United States, not a county elections administrator.  See id. § 20502(4).

11.    The allegation in Paragraph 11 of the Complaint that "Plaintiff disseminates information about compliance by state and local officials with federal elections statutes" is admitted to the extent that Defendant is aware that Plaintiff has published propaganda making claims similar to those raised in the Complaint.  For example, Plaintiff has published an advertisement in the Starr County Town Crier providing in pertinent part:

Starr County, Texas has more people registered to vote than people alive.

Tell elections director Rafael Montalvo to clean up their voter rolls before the next election.

See Exhibit A attached hereto, and incorporated by reference.

Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 11 of the Complaint that "Plaintiff disseminates information about compliance by state and local officials with federal elections statutes."

Defendant also lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 11 of the Complaint concerning Plaintiff's "public interest mission" and its "central activity."

Defendant denies Plaintiff's allegations contained in Paragraph 11 of the Complaint regarding NVRA violations, and thus Defendant also denies Plaintiff's claims that it has been harmed or impaired.

12.     It is admitted that "Defendant, Starr County Elections Administrator Rafael R. Montalvo, is the county registrar of voters."  Is also admitted that Texas Election Code Section 31.043 sets forth general duties of a county elections administrator, and that Section 15.022(a) provides that a voting registrar "shall make the appropriate corrections in the registration records, including, if necessary, deleting a voter's name from the suspense list" under specified circumstances. See Tex. Elec. Code § 15.022(a), 31.043.  Defendant otherwise denies that these statutory provisions obligate Defendant under the NVRA.

13.     Defendant denies Plaintiff's allegation contained in Paragraph 13 of the Complaint that "[n]umerous Texas statutes vest power solely in the Defendant to maintain voter rolls."  The Election Code does not vest sole power with voter registrars.  The secretary of state ("Secretary") is the chief election officer of this State.  Tex. Elec. Code § 31.001(a).  County registrars action related to voter rolls are carried out in accordance with the Secretary's

regulations, instructions, directives and advice, and those actions are ultimately subject to the Secretary's authority to order county registrars how to exercise their powers.  See id. §§ 31.003, 31.005, 31.007, 31.010; see also Scott v. Schedler, 771 F.3d 831, 839 (5th Cir. 2014) (holding that State's chief election official holds authority to enforce the NVRA with respect to state agencies).  The Secretary is further responsible for implementing and maintaining "a statewide computerized voter registration list that serves as the single system for storing and managing the official list of registered voters in the state."  Tex. Elec. Code § 18.061.  The Secretary is solely responsible for prescribing procedures for voting registrars to supply the necessary information to maintain the statewide list.  Id. Moreover, the Secretary is solely responsible for monitoring each registrar for substantial compliance with Sections 15.083, 16.032, and 18.061 of the Election Code and with rules implementing the statewide computerized voter registration list. Id. § 18.065.

13(a).  Defendant admits that Plaintiff's partial quotation of Texas Election Code Section 15.022(a) contained in Paragraph 13(a) of the Complaint is accurate.  Section 15.022(a) provides as follows:

> The registrar shall make the appropriate corrections in the registration records, including, if necessary, deleting a voter's name from the suspense list:
>
> (1)    after receipt of a notice of a change in registration information under Section 15.021;
>
> (2)    after receipt of a voter's reply to a notice of investigation given under Section 16.033;
>
> (3)    after receipt of any affidavits executed under Section 63.006, following an election;
>
> (4)    after receipt of a voter's statement of residence executed under Section 63.0011;
>
> (5)    before the effective date of the abolishment of a county election precinct or a change in its boundary;

(6)     after receipt of United States Postal Service information indicating an address reclassification;

(7)     after receipt of a voter's response under Section 15.053; or

(8)     after receipt of a registration application or change of address under Chapter 20.

Tex. Elec. Code § 15.022(a).

13(b).  Defendant admits that Section 15.022(b) of the Election Code provides that, "[a]t least monthly, the registrar shall request from the United States Postal Service any available information indicating address reclassifications affecting the registered voters of the county." Id. § 15.022(b).

13(c).  Defendant admits that Section 16.031(a) provides as follows:

The registrar shall cancel a voter's registration immediately on receipt of:

(1) notice under Section 13.072(b) or 15.021 or a response under Section 15.053 that the voter's residence is outside the county;

(2) an abstract of the voter's death certificate under Section 16.001(a) or an abstract of an application indicating that the voter is deceased under Section 16.001(b);

(3) an abstract of a final judgment of the voter's total mental incapacity, partial mental incapacity without the right to vote, conviction of a felony, or disqualification under Section 16.002, 16.003, or 16.004;

(4) notice under Section 112.012 that the voter has applied for a limited ballot in another county;

(5) notice from a voter registration official in another state that the voter has registered to vote outside this state;

(6) notice from the early voting clerk under Section 101.0041 that a federal postcard application submitted by an applicant states a voting residence address located outside the registrar's county; or

(7) notice from the secretary of state that the voter has registered to vote in another county, as determined by the voter's driver's license number or personal identification card number issued by the Department of Public Safety or social security number.

Id. § 16.031(a).

Defendant further admits that Section 16.0332 of the Elections Code provides as follows:

(a) After the registrar receives a list under Section 18.068 of this code or Section 62.113, Government Code, of persons excused or disqualified from jury service because of citizenship status, the registrar shall deliver to each registered voter whose name appears on the list a written notice requiring the voter to submit to the registrar proof of United States citizenship in the form of a certified copy of the voter's birth certificate, United States passport, or certificate of naturalization or any other form prescribed by the secretary of state. The notice shall be delivered by forwardable mail to the mailing address on the voter's registration application and to any new address of the voter known to the registrar.

(b) If a voter fails to submit to the registrar proof of citizenship on or before the 30th day after the date the notice is mailed, the registrar shall cancel the voter's registration.

(c) The registrar shall retain a copy of the notice mailed to a voter under this section on file with the voter's registration application. The registrar shall also retain any proof of citizenship received under this section on file with the application.

Id. § 16.0332.

13(d).  Defendant admits that Section 18.001(a) of the Election Code provides that, "Before the beginning of early voting for the first election held in a county in each voting year, the registrar shall prepare for each county election precinct a certified list of the registered voters in the precinct. The list must contain the name of each voter whose registration will be effective on the date of the first election held in the county in the voting year." Id. § 18.001(a).  Defendant further admits that such an "original list of registered voters" along with a "supplemental list of registered voters," "registration correction list," and/or a revised original list of registered voters created under Chapter 18 of the Elections Code would be governmental records that may be used to determine eligibility to cast a ballot in a Texas election.  See id. §§ 81.001 – 18.0013.

13(e).  Defendant admits that Section 18.003 of the Election Code provides as follows:

(a) For each election held in the county in a voting year, the registrar shall prepare and furnish to the authority responsible for procuring election supplies a certified list of corrections.

(b) The list must contain:

(1)     the name of each person for whom the information on a list of registered voters furnished under Section 18.001 or 18.002 has changed because of cancellation or correction; and

(2)     an indication that the person's registration has been canceled or the corrected registration information.

(c) An additional copy of each list shall be furnished for use in early voting.

(d) In this code, "registration correction list" means a list prepared under this section.

Id. § 18.003.

14.     The allegations contained in Paragraph 14 of the Complaint are admitted in part and denied in part.  Defendant denies Plaintiff's conclusory allegations that "Defendant has a federal obligation to maintain accurate and current voter rolls which contain the names of only eligible voters residing in Starr County." These allegations reference section 21083(a)(2)(A) of the Help America Vote Act ("HAVA"), 52 U.S.C. § 21083, and Section 20507(a)(4) of the NVRA.   Defendant admits that 21083(a)(2) of HAVA includes provisions regarding the maintenance of the computerized statewide voter registration list, and that Section 21083(a)(2(A) of HAVA provides as follows:

In general

The appropriate State or local election official shall perform list maintenance with respect to the computerized [statewide] list on a regular basis as follows:

(i) If an individual is to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.), including subsections (a)(4), (c)(2), (d), and (e) of section 8 of such Act (42 U.S.C. 1973gg-6).

(ii) For purposes of removing names of ineligible voters from the official list of eligible voters—

(I) under section 8(a)(3)(B) of such Act (42 U.S.C. 1973gg-6(a)(3)(B)), <u>the State shall coordinate the computerized list with State agency records on felony status</u>; and

(II) by reason of the death of the registrant under section 8(a)(4)(A) of such Act (42 U.S.C. 1973gg- 6(a)(4)(A)), <u>the State shall coordinate the computerized list with State agency records on death.</u>

(iii) Notwithstanding the preceding provisions of this subparagraph, if a State is described in section 4(b) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg-2(b)), that State shall remove the names of ineligible voters from the computerized list in accordance with State law.

52 U.S.C.A. § 21083(a)(2)(A) (emphasis added).

However, HAVA imposes an obligation on "<u>each State, acting through the chief State election official</u>, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State. " <u>Id</u>. § 21083(a)(1)(A) (emphasis added).  HAVA does not create a federal obligation under NVRA for the Defendant.

Defendant also admits that Section 20507(a)(4) of the NVRA prescribes that "<u>each State shall</u>-- …conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of-- (A) the death of the registrant; or (B) a change in the residence of the registrant, <u>in accordance with subsections (b), (c), and (d)</u>." <u>Id</u>. § 20507(a)(4) (emphasis added).  However, Defendant denies that this provision imposes any federal obligation upon the Starr County Elections Administrator.

Defendant also denies that HAVA or NVRA impose a federal obligation to maintain voter rolls that contain the names of *only* eligible voters.  The principal purposes of the NVRA include the establishment of "procedures that will increase the number of eligible citizens who register to vote in elections for Federal office" and the protection of the integrity of the electoral process.  See id. § 20501(b).  Accordingly, Section 20507 includes specific restrictions on programs to remove the names of voters from the official lists of eligible voters.  This includes the so-called "90 Day Provision," which generally prescribes that a State shall not conduct any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters later than 90 days prior to the date of a primary or general election for Federal office.  Id. § 20507(2)(A).  Hence, the NVRA limits the circumstances when, and imposes waiting periods before, a registered person's name can be removed from the rolls, thus erring on the side of over-inclusion and voter access. Accordingly, the paragraph's framing of the duty as being to have "rolls which only contain the names of eligible voters residing in Starr County" is denied.

Defendant further admits in part and denies in part Plaintiff's allegation that "[l]ocal election officials such as the Defendant are specifically obliged to carry out these list maintenance duties and remove ineligible voters from the rolls pursuant to 52 U.S.C. § 20507(d)(3)."  Subsection 20507(d) concerns the removal of names from voting rolls on the ground that the registrant has changed his or her residence.  Id. § 20507(d).  Like Subsection 20507(b), it generally provides that registered voters shall not be removed from a voting roll for a federal election unless they have either confirmed their changed residence or failed to respond to a notice seeking to confirm eligible residency and have not voted in two consecutive general elections for federal office. Id. § 20507(b)(2), (d)(2).  Subparagraph (d)(2) prescribes the type of notice that shall be used for this purpose.  Id. § 20507(d)(2).  Further, subparagraph (d)(3)

provides that "a voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with this subsection." Id. § 20507(d)(3). Accordingly, Defendant admits that Subsection 20507(d)(3) prescribes that he may only correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with Subsection 20507(d). Otherwise, Defendant denies that local voting registrars are specifically obliged to carry out list maintenance duties under the NVRA or that Subsection 20507(d)(3) imposes any affirmative obligation to remove ineligible voters from voter registration lists.

15.    Defendant denies Plaintiff's allegation in Paragraph 15 that, "Section 8 of the NVRA also requires that Defendant "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program that purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" 52, U.S.C. § 20507(c)(2)(A)." Plaintiff misquotes and misconstrues the NVRA. Subsection 20507(c)(2)(A) contains what is known as the "90 Day Provision." It generally prescribes that a State shall *not* conduct any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters later than 90 days prior to the date of a primary or general election for Federal office. Id. § 20507(2)(A); see also Arcia v. Florida Sec'y of State, 772 F.3d 1335, 1345 (11th Cir. 2014) (holding that Florida program to systematically remove suspected non-citizens from the voter rolls within 90 days of a federal election violated the 90 Day Provision). Subsection 20507(c)(2)(A) does not impose an affirmative obligation to conduct a program to remove voters from lists of eligible voters.

Defendant admits that Subsection 20507(b)(1) mandates that, "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office-- (1) shall be uniform,

nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.)" Id. § 20507(b)(1).

16.    Defendant denies Plaintiff's allegation in Paragraph 16 of the Complaint that Subsection 20570(i)1 of the NVRA imposes an obligation on the Defendant to maintain records. Subsection 20507(i)(1) provides that, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." Id. § 20507(i)(1) (emphasis added). "State" means a State of the United States, not a county elections administrator. Id. § 20502(4). Accordingly, Subsection 20507(i)(1) does not impose an obligation on Defendant.

17.    Defendant denies Plaintiff's allegation in Paragraph 17 that, "Voter rolls maintained by the Defendant for Starr County contain more voters registered to vote than there are citizens eligible to vote residing in the county." Defendant admits that the Texas Secretary of State's Office has reported that Starr County had 30,198 registered voters. See Exhibit B attached hereto and incorporated by reference. However, Defendant denies Plaintiff's allegation that Starr County has a "citizen voting age population of only 27,976, according to the United States Census Bureau." For example, the U.S. Census Bureau has published population estimates for Starr County, indicating that in 2014 the total population was estimated to be 62,955, and 67 percent of the population was estimated to be 18 years and older. See Exhibit C attached hereto and incorporated by reference. Defendant does not admit that the U.S. Census Bureau population estimates for Starr County are accurate. Nonetheless, the U.S. Census Bureau information that Plaintiff claims to rely upon directly controverts its allegations regarding Starr

County's citizen voting age population. Particularly, the U.S. Census Bureau estimates indicate a 2014 voting age population of approximately 42,207. Accordingly, Defendant also denies Plaintiff's allegations that "more than 107 percent of living citizens old enough to vote are registered to vote in Starr County in 2016." Meanwhile, Defendant admits that lists of registered voters includes voters on the "suspense list" as detailed in Texas Election Code Section 15.081, and further admits Plaintiff's allegations that "[a]ccording to the Texas Secretary of State, "an individual on the suspense list is still a registered voter and has the same rights as a non-suspense list voter"" and that "[t]hese rights include the right to vote." A copy of the Secretary's webpage concerning voter registration, including the referenced discussion regarding the suspense list is attached hereto and incorporated by reference as Exhibit D.

18.     Defendant denies Plaintiff's allegation in Paragraph 18 of the Complaint that "Starr County has a longstanding problem maintaining plausible numbers of registrants on the rolls." Defendant admits that the Texas Secretary of State reported that in 2010 Starr County had 29,114 registered voters. See Exhibit B. However, as explained above, Defendant denies Plaintiff's allegation that Starr County has a citizen voting age population of 27,615. Accordingly, Defendant also denies Plaintiff's allegation that "approximately 105 percent of living citizens eligible to vote in Starr County were registered to vote there in 2010."

19.     Defendant admits Plaintiff's allegation in Paragraph 19 of the Complaint that the Texas Secretary of State reported that in 2012 Starr County had 30,627 registered voters. See Exhibit B. However, as explained above, Defendant denies Plaintiff's allegation that Starr County has a citizen voting age population of 27,615. Accordingly, Defendant also denies Plaintiff's allegation that "during the 2012 federal general election in Starr County about 110 percent of living citizens eligible to vote were registered."

20.    Defendant denies Plaintiff's allegations in Paragraph 20 of the Complaint for the reasons explained above.

21.    Defendant denies Plaintiff's allegations in Paragraph 21 of the Complaint.

22.    Defendant admits Plaintiff's allegation in Paragraph 22 of the Complaint that Plaintiff sent a letter dated December 23, 2015, to the Defendant.  Defendant denies Plaintiff's allegation that the letter was written on behalf of Plaintiff's "members and supporters who are registered to vote in the State of Texas."  The letter states only that it was made on behalf of the Plaintiff.  Defendant also admits that Plaintiff's allegations in Paragraph 22 provide quotations from the aforementioned letter.

23.    Defendant denies Plaintiff's allegations in Paragraph 23 of the Complaint that Plaintiff's December 23, 2015, letter included any unconditional request to produce or make records available for inspection.  The letter indicated that, "[i]f you believe the information reported by the Election Assistance Commission (EAC) for 2014 or to the Secretary of State currently is inaccurate, please state the basis for the belief.  In particular, if the publicly available information cited above is no longer accurate, it would be helpful if you could provide [eleven categories of information and records]."  The letter did not make this conditional request pursuant to the NVRA. Nor did it identify what information from the EAC and Secretary of State it claimed to be referencing.  Defendant denies Plaintiff's allegation that the letter sought publicly available information "which would tend to indicate whether or not Defendant was in compliance with NVRA and other federal laws."

24.    Defendant denies Plaintiff's allegations in Paragraph 24 of the Complaint that Plaintiff's December 23, 2015, letter included any unconditional request to make records available for inspection under the NVRA.  The letter indicates that Plaintiff "would like to visit and meet with your office to discuss the possibility of implementing a plan which would cure

what appears to be a violation of Section 8 of the NVRA.  We are hopeful that full compliance with our request will make public inspection of your county's registration data unnecessary…If not, we would like to inspect your registration records at a time convenient to the responsible county officials prior to January 30, 2016."

25.     Defendant admits Plaintiff's allegations in Paragraph 25 of the Complaint.

26.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 26 of the Complaint concerning Plaintiff's alleged time and financial resources spent "in an effort to encourage citizens of Starr County to petition the Defendant to cure any violations of the NVRA."  Defendant denies Plaintiffs allegations that it "spent time and financial resources directly seeking a cure to voter rolls in Starr County which contain more registrants than eligible citizens who reside in Starr County."

27.   Defendant admits Plaintiff's allegations in Paragraph 27 of the Complaint that it initiated contact with Defendant in January 2016 to discuss the concerns raised by Plaintiff's above-referenced letter.  Defendant otherwise denies Plaintiffs allegations in Paragraph 27.

28.     Defendant admits Plaintiff's allegations in Paragraph 28 of the Complaint.

29.     Defendant denies Plaintiff's allegations in Paragraph 29 of the Complaint.

30.     Defendant reasserts his denials to the allegations contained in Plaintiff's re-alleged Paragraphs 1 through 28 of the Complaint as if those denials were fully stated herein.

31.     Defendant denies Plaintiff's allegations in Paragraph 31 of the Complaint.

32.     Defendant denies Plaintiff's allegations in Paragraph 32 of the Complaint.

33.     Defendant denies Plaintiff's allegations in Paragraph 33 of the Complaint.

34.     Defendant denies Plaintiff's allegations in Paragraph 34 of the Complaint.

35.     Defendant reasserts his denials to the allegations contained in Plaintiff's re-alleged Paragraphs 1 through 34 of the Complaint as if those denials were fully stated herein.

36.    Defendant denies Plaintiff's allegations in Paragraph 36 of the Complaint.

37.    Defendant denies Plaintiff's allegations in Paragraph 37 of the Complaint.

38.    Defendant denies Plaintiff's allegations in Paragraph 38 of the Complaint.

39.    Defendant denies Plaintiff's allegations in Paragraph 39 of the Complaint.

Plaintiff's Prayer for Relief does not contain allegations to admit or deny.

## B.  DEFENSES

Defendant asserts the following defenses:

(i)    Plaintiff has failed to state a claim upon which relief may be granted as to both Counts set forth in the Complaint;

(ii)    Plaintiff lacks constitutional standing as to both Counts set forth in the Complaint;

(iii)    Plaintiff lacks statutory standing under the NVRA or HAVA as to both Counts set forth in the Complaint;

(iii)    Plaintiff lacks organizational standing as to both Counts set forth in the Complaint;

(iv)    The NVRA does not provide Plaintiff with a private right of action against Defendant.

(v)    The NVRA does not provide the Court with subject-matter jurisdiction over the Plaintiff's claims.

(vi)    Plaintiff has not performed all conditions precedent that it was required to perform before filing suit.

(vii)    Plaintiff failed to comply with the mandatory pre-suit notice requirements of NVRA Section 20510;

(viii)    Plaintiff's alleged NVRA violations (as set forth in both Counts of the Complaint) are not ripe and/or moot; and

(ix)    Defendant asserts all other privileges and immunities available under federal and Texas law.

## C. CONDITIONS PRECEDENT

Plaintiff has not performed all conditions precedent that it was required to perform before filing suit. Plaintiff failed to comply with the pre-suit notice requirements of NVRA Section 20510.  Subsection 20510(b) directs private persons who are aggrieved by an alleged violation of the NVRA to direct written notice of the violation to the "chief State election official to be responsible for coordination of State responsibilities under [the NVRA]."  52 U.S.C. § 20509; see also id. § 20510(b).   The purpose of this notice requirement is to give the State an opportunity to remedy NVRA violations.  Scott v. Schedler, 771 F.3d 831, 839 (5th Cir. 2014). Accordingly, a private party is generally required to provide such written notice, and provide the chief State election official an opportunity to correct a violation.  52 U.S.C. § 20510(b)(2). Moreover, the notice must be specific with regard to the alleged violation so that the chief State elections officer has an opportunity to attempt compliance before facing litigation.  Scott v. Schedler, 771 F.3d at 836.

The notice requirement for a private right of action in subsection 20510(b) is mandatory. Scott v. Schedler, 771 F.3d at 835.  No standing is conferred if no proper notice is given. Id. (citing Ga. State Conference of NAACP v. Kemp, 841 F.Supp.2d 1320, 1335 (N.D.Ga.2012)). Therefore, compliance with the pre-suit notice requirements of NVRA Subsection 20510(b) is a condition precedent to a private right of action under the NVRA.

The State of Texas has designated the Secretary of State as the chief election officer of the State.  Tex. Elec. Code § 31.001(a).  Accordingly, Plaintiff was required to provide the Texas Secretary of State with written notice pursuant to NVRA Subsection 20510(b) as a condition precedent to filing the instant private civil action. However, Plaintiff failed to do so. Particularly, Plaintiff's Complaint alleges that Plaintiff addressed a letter dated December 23, 2015, to Defendant Montalvo notifying him that Starr County was in "apparent violation of

Section 8 of the [NVRA]". Complaint (Doc. 1) at ¶ 22. Further, Plaintiff's Complaint alleges that the aforementioned letter notified Defendant Montalvo that "a lawsuit may be brought against [Starr County] to assure compliance with the requirement of federal motor registration laws." Id at ¶ 25; see also Doc. 1-1 at pg. 2. Assuming these allegations are true, Plaintiff's Complaint negates that any pre-suit notice was provided to the chief election official of the State. Moreover, Plaintiff's aforementioned letter was too vague to provide either the Defendant or the Secretary of State with an opportunity to attempt compliance before facing litigation. Plaintiff's letter alleges that Starr County has more voters on its voter registration rolls than it has eligible living citizen voters, and requests the Defendant to comment on the accuracy of the unspecified information that Plaintiff claims it relied upon to make such an allegation. See Doc. 1-1 at pgs.1-2. Based upon its allegation regarding the numbers of Starr County eligible living citizen voters, Plaintiff's letter claims that Starr County "is in apparent violation of Section 8 of the [NVRA.]" Id. at pg.1. The letter fails to provide adequate information to ascertain the validity of Plaintiff's allegation regarding the population of eligible voters, fails to identify any act or omission that would constitute a violation of the NVRA, and thus fails to provide an opportunity to correct any alleged violation. Therefore, Plaintiff failed to comply with the mandatory pre-suit notice requirement in subsection 20510(b), has no standing to pursue this lawsuit, and thus has not performed all conditions precedent that it was required to perform before filing suit.

### D. ATTORNEYS' FEES AND COSTS

Defendant respectfully requests that the Court order the Plaintiff to pay Defendant for his reasonable attorney fees, including litigation expenses, and costs pursuant to 52 U.S.C.A. § 20510(c).

## E.  JURY DEMAND

Defendant asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## F.  PRAYER

WHEREFORE, Defendant prays for a judgment:

1.      Dismissing the complaint for want of jurisdiction and/or for failure to state a claim upon which relief can be granted; or alternatively

2.      Denying all relief requested by Plaintiff;

3.      Ordering that Plaintiff pay Defendant's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. 20510(c); and

4.      Granting Defendant all further relief that this Court deems just and proper.


                                    Respectfully submitted,


                                    */s/* James P. Allison
                                    James P. Allison
                                    SBN: 01090000
                                    Southern District Bar No.: 14665
                                    j.allison@allison-bass.com
                                    *Attorney in Charge*

                                    J. Eric Magee
                                    SBN: 24007585
                                    Southern District Bar No.: 33971
                                    e.magee@allison-bass.com

                                    Phillip Ledbetter
                                    SBN 24041316
                                    Southern District Bar No.: 1401529
                                    p.ledbetter@allison-bass.com

                                    **ALLISON, BASS & MAGEE, LLP.**
                                    A.O. Watson House
                                    402 W. 12th Street
                                    Austin, Texas  78701

(512) 482-0701
(512) 480-0902 Fax

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on the 19th day of May, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Eric Wiesehan
Wiesehan Law Firm, PLLC
P.O. Box 72093
McAllen, Texas 78504
Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com

H. Christopher Coates
Law Office of H. Christopher Coates
934 Compass Point
Charleston, South Carolina 29412
Tel: (843) 609-7080
curriecoates@gmail.com

J. Christian Adams
Kaylan L. Phillips
Public Interest Legal Foundation
209 W. Main Street
Plainfield, Indiana 46168
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org

*Attorneys for Plaintiff*

                                        */s/* James P. Allison
                                        James P. Allison