IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AMERICAN CIVIL RIGHTS UNION, | § | |
| in its individual and corporate capacities | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 7:16-cv-00103 |
| | § | |
| ELECTION ADMINISTRATOR | § | |
| RAFAEL R. MONTALVO, | § | |
| in his official capacity, | § | |
| *Defendant.* | § | |

## DEFENDANT RAFAEL R. MONTALVO'S FIRST AMENDED MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Starr County Elections Administrator Rafael R. Montalvo, (hereinafter "Defendant" or "Defendant Montalvo") files this First Amended Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted and Motion to Dismiss for Lack of Subject-Matter Jurisdiction ("First Amended Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1), respectively. Defendant offers the following:

### I.    Background

1.    Plaintiff American Civil Rights Union (hereinafter "Plaintiff" or "ACRU") filed their Original Complaint, Dkt. 1, on March 4, 2016. Plaintiff filed this lawsuit against Defendant Montalvo, in his official capacity as Starr County Elections Administrator. Plaintiff's Complaint seeks injunctive and declaratory relief for allegedly violating "Section 8" of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507. Plaintiff's principal allegation is that "Defendant has failed to make <u>reasonable efforts</u> to conduct voter list maintenance programs, in violation of

Section 8 of [the NVRA], 52 U.S.C. § 20507 and 52 U.S.C. § 21083(a)(2)(A)." Dkt. 1 at ¶ 30 (emphasis added).

2.      On April 6, 2016, Defendant Montalvo filed a motion to dismiss for lack of subject-matter jurisdiction and motion to dismiss for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Dkt. 6, ("Motion to Dismiss").

3.      On May 5, 2016, the Court held the initial pretrial conference.  The Parties addressed the Defendant's original Motion to Dismiss, and after considering the arguments of counsel, the Court orally denied said motion and ordered the parties to provide dates for a subsequent status conference.  On June 28, 2016, the Court held a status conference wherein the Parties again addressed Defendant's Motion to Dismiss.  During the hearing, Defendant informed the Court that it intended to file an amended motion to dismiss.  Accordingly, the court Ordered Defendant to file its amended motion to dismiss by July 15, 2016.  Therefore, Defendant now files this First Amended Motion to Dismiss.

## II.      Argument & Authorities

4.      Plaintiff's Complaint alleges that Defendant Montalvo violated section 20507 of the NRVA, 52 U.S.C. § 20507.  *See* Plaintiff's Complaint, Dkt. 1, at pgs. 9-10.  Additionally, Plaintiff's Complaint alleges that Defendant Montalvo violated section 21083 of the Help America Vote Act ("HAVA"), 52 U.S.C. § 21083.  *See id.* at ¶¶ 14, 31-32.  However, Plaintiff does not seek relief under HAVA or assert that HAVA provides a basis for the Court's jurisdiction.  *Cf. id.* at ¶ 3. Neither NVRA nor HAVA provide Plaintiff with standing or a private right of action against Defendant Montalvo.  Further, neither of these statutes provide the District Court with subject-matter jurisdiction over the Plaintiff's claims.  Therefore, Defendant Montalvo respectfully requests that the Court dismiss this lawsuit with prejudice.

## A.    National Voter Registration Act

5.    Section 20507 (a/k/a "Section 8") of the NVRA governs the administration of voter registration for elections for Federal offices.  It sets forth provisions applicable to the "State," which is defined to mean a State of the United States and the District of Columbia.  52 U.S.C. §§ 20507(a), 20502(4).  The Fifth Circuit has considered this provision of the NVRA and determined that the Act "centralizes responsibility in the state and in the chief elections officer, who is the state's stand-in".  Scott v. Schedler, 771 F.3d 831, 839 (5th Cir. 2014) ("…the NVRA speaks in terms of the responsibilities of "each state." … This choice of words reflects a policy choice that responsibility should be centralized rather than fragmented.") (citing Harkless v. Brunner, 545 F.3d 445, 452 (6th Cir.2008), at 452 ("[T]he entire Act ... speaks in terms of state responsibilities; what is noticeably missing is any mention of county, municipal, or other local authorities.")).

6.    Section 20507 includes several provisions that are relevant to state voter list maintenance programs, which is the subject of Plaintiff's lawsuit.  Those provisions are discussed immediately below.

7.    Subsection 20507(a)(3) regulates when a registrant may be removed from an official list of eligible voters.  It prohibits removal except: "(A) at the request of the registrant; (B) as provided by State law, by reason of criminal conviction or mental incapacity; or (C) as provided under [Subsection 20507(a)(4)]".  52 U.S.C. § 20507(a)(3) (emphasis added).

8.    Subsection 20507(a)(4) of the NVRA prescribes that "each State shall-- …conduct a general program that makes a **reasonable effort** to remove the names of ineligible voters from the official lists of eligible voters by reason of-- (A) the **death** of the registrant; or (B) a **change in the residence** of the registrant, in accordance with subsections (b), (c), and (d)."  Id. §

20507(a)(4) (emphasis added).  Notably, Subsection 20507(a)(4) does *not* create any obligation

for a state to conduct a program to remove the names of voters who may be ineligible by reason

of criminal conviction, mental incapacity, or lack of citizenship.

9.     Subsection 20507(b) places general limitations on programs to confirm voter

registration (e.g., programs to confirm that active voters' registration information is accurate).  It

provides as follows:

> Any State program or activity to protect the integrity of the electoral process by
> ensuring the maintenance of an accurate and current voter registration roll for
> elections for Federal office—
>
> (1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights
> Act of 1965 (42 U.S.C. 1973 et seq.); and
>
> (2) shall not result in the removal of the name of any person from the official list of
> voters registered to vote in an election for Federal office by reason of the person's
> failure to vote, except that nothing in this paragraph may be construed to prohibit a
> State from using the procedures described in subsections (c) and (d) to remove an
> individual from the official list of eligible voters if the individual--
>
>> (A) has not either notified the applicable registrar (in person or in writing)
>> or responded during the period described in subparagraph (B) to the notice
>> sent by the applicable registrar; and then
>> (B) has not voted or appeared to vote in 2 or more consecutive general
>> elections for Federal office.

Id. § 20507(b) (emphasis added).

10.     Subsection 20507(c) entitled "Voter removal programs" more specifically

addresses general State programs established to remove voters from the list of eligible voters as a

result of their death or change in residence.  Subsection 20507(c)(1) provides a safe harbor

regarding the type of general program required by Subsection 20507(a)(4).  Particularly,

Subsection 20507(c)(1) prescribes that:

> A State may meet the requirement of subsection [20507(a)(4)] by establishing a program under which—
>
> **(A)** change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and
>
> **(B)** if it appears from information provided by the Postal Service that—
>
> > **(i)** a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or
> >
> > **(ii)** the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.

Id. § 20507(c)(1) (emphasis added).

11.    Subsection 20507(c)(2)(A) limits *when* a state may conduct a general program to remove voters from the rolls due to an apparent change in residence or death. Particularly, it provides that "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." Id. § 20507(c)(2)(A) (emphasis added). This prohibition is often referred to as the "90-day" provision. *See e.g.*, Arcia v. Florida Sec'y of State, 772 F.3d 1335, 1345 (11th Cir. 2014) (holding that Florida program to systematically remove suspected non-citizens from the voter rolls within 90 days of a federal election violated the 90 Day Provision).

12.    Subsection 20507(d) sets forth additional provisions governing the manner in which names may be removed from voting lists due to a change in residence. Subsection 20507(d)(1) and (2) prohibit removal unless the registrant either, confirms in writing that the

registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, or: (i) the registrant is sent a notice by forwardable mail, with a postage prepaid and pre-addressed return card, on which the registrant may state his or her current address; (ii) the registrant failed to respond to the notice; and (iii) has not voted or appeared to vote in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice. Id. § 20507(d)(1), (2). Subsection 20507(d)(3) additionally provides that "[a] voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with this subsection." Id. § 20507(d)(3). Subsection 20507(d) does *not* authorize removal pursuant to a program barred by the 90-day prohibition.

13.    Subsection 20507(g) addresses the ineligibility of a registered voter by reason of criminal conviction in federal court. It provides that the U. S. Attorney will notify the chief State election official (i.e., Secretary of State) of conviction within the state. Id.§ 20507(g)(1). "The chief State election official shall notify the voter registration officials of the local jurisdiction in which an offender resides of the information received under this subsection." Id. § 20507(g)(5).

14.    Subsection 20507(i) concerns the public disclosure of State voter registration administration activities. It provides as follows:

(1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

(2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are

sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

Id. § 20507(i) (emphasis added)

15.    As explained above, the NVRA centralizes responsibility in the state and in the chief elections officer, who is the state's stand-in. Scott v. Schedler, 771 F.3d at 839. Accordingly, section 20509 prescribes that each State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under [the NVRA]. Id. § 20509. The Fifth, Sixth, and Eighth Circuits hold that a State's designated chief election official has the power to enforce the NVRA with respect to state agencies and thus plays an ongoing role in remedying NVRA violations. Scott v. Schedler, 771 F.3d at 839; Harkless v. Brunner, 545 F.3d 445, 449 (6th Cir.2008); United States v. Missouri, 535 F.3d 844 (8th Cir.2008) The State of Texas has designated the Secretary of State of the State of Texas ("Secretary") as the chief election officer of the State. Tex. Elec. Code § 31.001(a). The Secretary is also required by Texas law to maintain uniformity in the application, operation, and interpretation of the Texas Election Code and of Federal election laws. Id. § 31.003. In performing this duty, the Secretary must prepare detailed and comprehensive written directives and instructions relating to and based on election laws, and distribute these materials to the appropriate state and local authorities having duties in the administration of these laws. Id. Additionally, the Secretary is required to advise and assist local officials with regard to the application, operation, and interpretation of the election laws. Id. § 31.004. Further, the Secretary has authority to adopt regulations concerning the implementation of the NVRA. See id. § 31.007; 1 Tex. Admin. Code § 81.402. Moreover, the Secretary has general authority to take appropriate action to protect the voting rights of the citizens. Id. § 31.005. This includes the authority to order a person performing official functions in the

administration of any part of the electoral processes to correct the offending conduct, and to seek enforcement of such order through a temporary restraining order or a writ of injunction or mandamus. Therefore, the Secretary of State is this State's chief election official designated by the State of Texas to be responsible for the coordination and enforcement the State's responsibilities under the NVRA.

16.    Section 20510 of the NVRA governs the civil enforcement of that statute. It provides in pertinent part:

> **(a) Attorney General**
> The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter.
>
> **(b) Private right of action**
> **(1)** A person who is aggrieved by <u>a violation of this chapter</u> may <u>provide written notice</u> of the violation <u>to the chief election official of the State</u> involved.
>
> **(2)** <u>If the violation is not corrected</u> within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, <u>the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.</u>
>
> **(3)** If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).
>
> 52 U.S.C. § 20510 (emphasis added).

17.    The notice requirement for a private right of action in subsection 20510(b) is mandatory. <u>Scott v. Schedler</u>, 771 F.3d at 835. No standing is conferred if no proper notice is given. <u>Id.</u> (*citing* <u>Ga. State Conference of NAACP v. Kemp</u>, 841 F.Supp.2d 1320, 1335 (N.D.Ga.2012)).

18.    The purpose of the notice requirement is to give the State, through the Secretary of State, the opportunity to remedy NVRA violations. <u>Scott v. Schedler</u>, 771 F.3d at 839. As

explained above, the NVRA imposes obligations on the State of Texas, not local officials, and requires the designation of a chief State election official to be responsible for the coordination and enforcement of the State's responsibilities under that Act. Those provisions coupled with the provisions in Section 20510 requiring pre-suit notice to the State's chief election official establish that the State of Texas and/or the Secretary are the only parties that may be subject to a civil enforcement action. Accordingly, private causes of action for alleged NVRA violations must be brought against the State and/or its chief election official. *See* Scott v. Schedler, 771 F.3d at 839 (holding that Louisiana's Secretary of State, who was chief election official with authority to enforce the NVRA with respect to state agencies, and was thus properly subject to suit alleging state agencies violated NVRA); Voting for Am., Inc. v. Steen, 732 F.3d 382, 385 (5th Cir. 2013) (suit against Texas Secretary of State John Steen for alleged NVRA violations); Arcia v. Florida Sec'y of State, 772 F.3d 1335, (suit against Florida Secretary of State); Harkless v. Brunner, 545 F.3d at 453 (6th Cir. 2008) (holding that Secretary of State was proper party to sue for Ohio's alleged violations of the NVRA, in light of Ohio designating the Secretary as its chief election officer, and the plain language of the NVRA). Accordingly, a person may only bring a private cause of action alleging NVRA violations concerning an election in Texas for a federal office against the Texas Secretary of State (i.e., the party responsible for the coordination and enforcement the State's responsibilities under the NVRA). Consequently, in order to have standing for such a claim, a person must provide the Secretary with pre-suit notice pursuant to section 20510 of the NVRA.

19.    The NVRA is discrete from the Help America Vote Act. *See* 52 U.S.C §§ 20501 - - 20511 (NVRA); *cf.* id. §§ 20901 – 21145 (HAVA). The NVRA does not incorporate any violations of HAVA and does not authorize a private right of action for an alleged violation of

HAVA. *See* id. § 20510. Moreover, HAVA by its terms does not create a private right of action. Rather, that statute provides two mechanisms for remedying grievances: (1) a civil action brought by the Attorney General; and (2) in states receiving funds under HAVA, "[e]stablishment of State-based administrative complaint procedures," Id. §§ 21111, 21112(a). States that do not receive HAVA funds must either certify that they have a comparable administrative scheme or submit a detailed compliance plan showing "the steps the State will take to ensure that it meets the [statute's] requirements." Id. § 21112(b)(1)(B). The code sections containing these two procedures constitute a separate subchapter of HAVA titled "Enforcement." *See* id. §§ 21111, 21112.

20.    Section 21083 of HAVA generally provides that, "each State, acting through the chief State election official, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." Id. § 21083(a)(1)(A) (emphasis added). Subsection 21083(a)(2) includes provisions regarding the maintenance of the computerized statewide list. Particularly, it provides that, "[i]n general…The appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." Id. § 21083(a)(2)(A) (emphasis added). For purposes of removing the names of ineligible voters from the computerized list, section 21083 prescribes that the "State shall coordinate the computerized list with State Agency records" on felony status and deaths. Id. § 21083(a)(2)(A)(ii) (emphasis added). Subsection 21083(a)(2) generally provides that the removal of individuals from a state's computerized statewide voter registration list shall be done so in compliance with the NVRA (e.g., voters shall not be removed from a voting roll for a federal election unless they have either

confirmed their changed residence or failed to respond to a notice seeking to confirm eligible residency and have not voted in two consecutive general elections for federal office). *See* id. §§ 20507(d); 21083(a)(2), (a)(4)(A). Nevertheless, subsection 21083(a) of HAVA may not be construed to have any effect on the NVRA. Id. § 21145. Therefore, an alleged violation of section 21083(a) of HAVA does not create, or provide any grounds for, a private right of action under NVRA.

### B. Texas Election Code.

21.     Plaintiff's Complaint includes allegations concerning Defendant's obligations under Texas law. Accordingly, Defendant provides the following discussion regarding Texas laws addressing voter registration.

22.     The Texas Election Code includes numerous provisions that address voters' registration and cancellation, as well as the establishment and maintenance of official voter registration lists. To be eligible to register to vote in Texas, a person must: (1) be 18 years or older on election day; (2) be a United States citizen; (3) be a resident of the county where the application is submitted; (4) not be finally convicted of a felony or, if so, have completed the terms of the jail sentence, probation or parole; and (5) have not been declared by a court exercising probate jurisdiction to be either totally mentally incapacitated or partially mentally incapacitated without the right to vote. *See* Tex. Elec. Code § 13.001. Residence has been defined to be a place where a person's habitation is fixed, without any present intention of removing therefrom. It is lost by leaving the place where one has acquired a permanent home and removes to another place without any present intention to return to the former place of residence. Mills v. Bartlett, 377 S.W.2d 636, 637 (Tex. 1964); Prince v. Inman, 280 S.W.2d 779, 782 (Tex. Civ. App.--Beaumont 1955, no writ); McBeth v. Streib, 96 S.W.2d 992, 995 (Tex. Civ. App.--San Antonio 1936, no

writ); <u>In re Garneau</u>, 127 F. 677, 679 (7th Cir. 1904). To register to vote, a person submits an application either in person or by mail to the county voter registrar in the county in which the voter resides. Tex. Elec. Code § 13.002. The application must be in writing and signed by the applicant. <u>Id</u>.

23.     Section 13.144 of the Election Code prescribes that "[n]ot later than the 30th day after the date a voter registrar receives a voter registration application, the registrar shall deliver the original of an initial certificate: (1) in person to the applicant or the applicant's agent appointed under Section 13.003; or (2) by mail to the applicant. If delivery is by mail, the registrar shall send the certificate to the mailing address on the applicant's registration application." <u>Id</u>. § 13.144. Pursuant to Section 15.051(b), if an initial voter registration certificate delivered to the applicant by mail is returned to the registrar as undeliverable, the voter registrar will mail the voter a "Notice to Confirm Voter Registration Address." The contents of the notice are prescribed by the Election Code, and the design of the notice is generally prescribed by the Secretary of State. <u>See id</u>. § 15.052. This confirmation request will include an official response form for the voter to respond with. It must be pre-addressed for delivery to the registrar and have the postage pre-paid. Unlike voter registration certificates which are not forwardable, Section 15.051(c) requires the confirmation notice be forwarded to the voter's last known address. The voter has 30 days from the date the notice is mailed out to respond. If the voter fails to respond to this notice, the voter registrar is required under Section 13.146 to enter the voter's name on the "Suspense List" governed by subchapter 15(D) of the Election Code. The voter's response must be in writing, signed and must contain all of the information that a person includes on a regular application to register to vote. Once the response is received, the voter registrar reviews the response in the same manner as any other regular registration application and acts on it accordingly.

24.    Pursuant to Chapter 14 of the Texas Election Code, each county voting registrar in the state performs countywide mailings. New voter registration certificates ("renewal certificate") are mailed to each active voter in the county who is not on the Suspense List, in what the Secretary of State refers to as the "Mass Mail Out." *See* Tex. Elec. Code § 14.001. The renewal certificates are created and mailed out on or after November 15 but before December 6 of odd numbered years. The certificates are valid for two years. The renewal certificates are delivered by mail that is not forwardable. Section 14.024 of the Elections Code provides that when a renewal certificate is returned undelivered this will generally result in the voter being placed on a "Suspense List" not later than January 2 following the mailing. The voter will then be mailed a "Confirmation Notice" in accordance with Section 15.053 of the Election Code between January 1 and March 1 of each even-numbered year. The Confirmation Notice includes a warning that the voter's registration is subject to cancellation if the voter fails to confirm the voter's current residence either by notifying the registrar in writing or voting on a statement of residence before November 30 following the second general election for state and county officers that occurs after the date the confirmation notice is mailed. Id. § 15.052. If the voter fails to respond in accordance with Election Code Section 15.053, the voter's name remains on the Suspense List and they will not be included in the next Mass Mail Out. If on November 30 following the second general election for state and county officers that occurs after the date the voter's name is entered on the Suspense List a registered voter's name appears on the Suspense List, the registrar shall cancel the voter's registration unless the name is to be deleted from the list under Section 15.023. Id. § 16.032.

25.    In accordance with Section 21083 of the Help America Vote Act and Chapter 18(C) of the Texas Election Code, the Secretary of State has created a statewide computerized voter registration list that serves as the single system for storing and managing the official list of

registered voters in the state. The Secretary refers to it as the Texas Election Administration Management ("TEAM") System and/or the ElectioNet System. *See* http://www.sos.state.tx.us/elections/team/index.shtml, a copy of which is attached hereto and incorporated by reference as Exhibit A  The TEAM/ElectioNet System includes functionality for county and state election officials to access and utilize the voter registration database. Accordingly, Starr County has established an account with the Secretary of State so that it may access that functionality and utilize the statewide computerized voter registration list. *See e.g.*, https://teamrv-production.sos.texas.gov/ElectioNet/, a copy of which is attached hereto and incorporated by reference as Exhibit B.

26.    Under Election Code Section 16.001, county registrars of death and the Bureau of Vital Statistics are required to provide to the Secretary of State information relating to deceased residents of the State of Texas. Tex. Elec. Code § 16.001. The Election Code also requires the Secretary of State to obtain information on deceased residents from the Social Security Administration. Id.  Further, Section 16.001 authorizes the Secretary of State to obtain, "for purposes of determining whether a voter is deceased, information from other state agency databases relating to a voter that is the same type of information that the secretary of state or a voter registrar collects or stores for voter registration purposes." Id.

27.    Under Government Code Section 62.113, the court clerks who maintain the jury selection process for each county are required to send a list of each person that was excused or disqualified from jury service because that person is not a citizen of the United States to both the county's voter registrar and the Secretary of State. Tex. Gov't Code § 62.113. Court clerks are generally required to file such information with the Secretary of State electronically. Id.

28.    Under Section 18.068 of the Election Code, the Secretary of State is required to compare the information they receive from the Bureau of Vital Statistics, the Social Security Administration, and court clerks to the statewide voter registration list. Tex. Elec. Code § 18.068. After comparing the data from these different sources, the Secretary of State may be able to determine that an individual on the statewide registration list is deceased or ineligible to vote. Id. In determining which action is appropriate to take, the Secretary of State's office has established criteria used when confirming whether or not it is appropriate to cancel a registration, or when a county must further investigate an issue. Id. Based on the data received, the Secretary of State will determine whether or not a "strong" match or a "weak" match occurs with a current voter registration record. When a strong match occurs for a Starr County registered voter, the voter's registration is automatically canceled by the Secretary of State through the TEAM/ElectioNet System. Id. § 16.031(b). A weak match will result in the Secretary of State notifying the Defendant, through the TEAM/ElectioNet System, so that the voter's eligibility may be investigated by sending out a "Notice of Examination" or, in the case of a match based on deceased records, a "Verification of Voter Status." See id. § 16.033; http://www.sos.state.tx.us/elections/vr/index.shtml (a copy of which is attached hereto and incorporated by reference as Exhibit C). If the voter does not respond within 30 days, the voter registrar is generally required under Section 16.033(d) to cancel the voter's registration.

29.    Under Section 18.062 of the Election Code, the Secretary of State is also required to "cooperate with other states and jurisdictions to develop systems to compare voters, voter history, and voter registration lists to identify voters whose addresses have changed" in order "[t]o maintain the statewide voter registration list and to prevent duplication of registration in more than

one state or jurisdiction." Id. § 18.062. A system developed under Section 18.062 must comply with the NVRA. Id.

30.  Pursuant to Election Code Section 16.003, on a weekly basis, the Department of Public Safety ("DPS") is required to prepare and deliver to the Secretary of State, an abstract of final judgment for individuals, aged 18 and older that were convicted of a felony. Tex. Elec. Code § 16.003. The Secretary of State will compare this list to the statewide voter registration list to determine whether or not there are any matches. Id. § 18.068. The Secretary of State considers all matches under this category as "weak" matches and they are referred to the appropriate county for the local voter registrar to further investigate. *See* http://www.sos.state.tx.us/elections/vr/index.shtml, a copy of which is attached hereto and incorporated by reference as Exhibit C. Accordingly, the Defendant receives information concerning these "weak" matches through the TEAM /ElectioNet System, and is then required to mail out a "Notice of Examination" in accordance with Section 16.033 of the Election Code. The voter has 30 days from the date the Notice is mailed out to respond to the Notice, or Defendant will cancel the voter's registration. Id. § 16.003(b).

31.  It should also be noted that the NVRA provides that, "[o]n the conviction of a person of a felony in a district court of the United States, the United States attorney shall give written notice of the conviction to the chief State election official". 52 U.S.C. § 20507(g)(1). Upon information and belief, the Secretary of State handles such notices from the United States attorney in the same manner as abstracts of felony convictions received from DPS, and thus federal convictions identified by the United States attorney are referred by the Secretary of State to the appropriate county through the TEAM/ElectioNet System for the local voter registrar to further investigate by mailing a Notice of Examination.

32.     As explained above, the Secretary of State is required to maintain uniformity in the application, operation, and interpretation of the Texas Election Code and of Federal election laws. Tex. Election Code § 31.003.  In performing this duty, the Secretary must prepare detailed and comprehensive written directives and instructions relating to and based on election laws, and distribute these materials to the appropriate state and local authorities having duties in the administration of these laws.  Id.  Additionally, the Secretary is required to advise and assist local officials with regard to the application, operation, and interpretation of the election laws.  Id. § 31.004. Further, the Secretary of State is this State's chief election official designated by the State to be responsible for the coordination and enforcement of the State's responsibilities under the NVRA.  Id. § 31.001(a); 52 U.S.C. § 20509; Scott v. Schedler, 771 F.3d at 839.  Moreover, the Secretary has general authority to take appropriate action to protect the voting rights of the citizens. Id. § 31.005.  This includes the authority to order a person performing official functions in the administration of any part of the electoral processes to correct the offending conduct and to seek enforcement of such order through a temporary restraining order or a writ of injunction or mandamus.  Therefore, the Secretary of State is the party responsible for election administration and voter registration list maintenance duties under both the Texas Election Code and the NVRA.

### C.     Plaintiff's Complaint Should Be Dismissed.

33.     Plaintiff's lawsuit should be dismissed because: (i) Plaintiff has not alleged a cognizable claim over which the Court has subject-matter jurisdiction; (ii) Plaintiff failed to state a claim upon which relief can be granted; and (iii) Plaintiff lacks standing.

34.     Plaintiff's Complaint seeks injunctive and declaratory relief under the NVRA and asserts that this Court has jurisdiction pursuant to section 20510(b) of that Act and 28 U.S.C. §

1331. *See* Complaint, Dkt. 1, at ¶ 2. Plaintiff seeks no relief under the Constitution or any other federal law authorizing a civil action. Accordingly, Plaintiff only claims jurisdiction under the NVRA. See id. However, Plaintiff has not alleged a cognizable claim over which the Court has subject-matter jurisdiction and has failed to state a claim upon which relief can be granted, because Plaintiff has no standing or private right of action under the NVRA against the Defendant. As explained above, private actions for alleged NVRA violations must be brought against the State and/or its chief election official. *See e.g.,* Scott v. Schedler, 771 F.3d at 839. Plaintiff's lawsuit was not brought against the State of Texas or its Secretary of State. Rather, Plaintiff sued the Starr County Elections Administrator, who it also identified as the Starr County registrar of votes. See Plaintiff's Complaint, Dkt. 1, at ¶ 12. Because the NVRA does not authorize a private right of action against county officials, Plaintiff's lawsuit fails to invoke the Court's subject-matter jurisdiction under that statute and also fails to state a claim from which relief may be granted. As explained above, Plaintiff's allegation that Defendant violated section 21083(a) of HAVA likewise fails to provide the Court with subject matter jurisdiction or any basis to state a claim for relief which can be granted. The NVRA does not authorize a private cause of action for an alleged HAVA violation. Further, HAVA does not create a private right of action. Moreover, the U.S. Supreme Court has vacated a temporary restraining order directing Ohio's Secretary of State to update the state's voter registration database, having concluded that the plaintiffs were not sufficiently likely to prove that HAVA section 303 (now section 21083) gave them a private right of action. Brunner v. Ohio Republican Party, 555 U.S. 5, 5-6 (2008). Therefore, Plaintiff's lawsuit should be dismissed pursuant to Fed. R. Civ. P 12(b)(1) and (6).

35.     Plaintiff's lawsuit should also be dismissed because Plaintiff failed to comply with the pre-suit notice requirements of section 20510(b). Plaintiff initiated this lawsuit without

providing the requisite notice to the Texas Secretary of State. Particularly, Plaintiff's Complaint alleges that Plaintiff sent a letter dated December 23, 2015, to Defendant Montalvo notifying him that Starr County was in "apparent violation of Section 8 of the [NVRA]". Id. at ¶ 22. Further, Plaintiff's Complaint alleges that the aforementioned letter notified Defendant Montalvo that "a lawsuit may be brought against [Starr County] to assure compliance with the requirement of federal motor registration laws." Id at ¶ 25; *see also* Dkt. 1-1 at pg. 2. Assuming these allegations are true, Plaintiff's Complaint negates that the requisite pre-suit notice was provided to the chief election official of the State. The pre-suit notice requirement for a private right of action in subsection 20510(b) is mandatory. Scott v. Schedler, 771 F.3d at 835. No standing is conferred if no proper notice is given. Id. (*citing* Ga. State Conference of NAACP v. Kemp, 841 F.Supp.2d 1320, 1335 (N.D.Ga.2012)). Consequently, Plaintiff failed to comply with the mandatory requirement in subsection 20510(b) which is a statutory prerequisite to suit, and thus has no standing to pursue this lawsuit. Scott v. Schedler, 771 F.3d at 835 (holding that failure to provide such pre-suit notice is fatal to a plaintiff's suit under the NVRA); Broyles v. Texas, 618 F. Supp. 2d 661, 692 (S.D. Tex. 2009), *aff'd,* 381 F. App'x 370 (5th Cir. 2010) (granting Rule 12(b)(6) motion to dismiss NVRA claim because plaintiff failed to comply with pre-suit notice requirement). Therefore, Plaintiff's lawsuit should be dismissed pursuant to Fed. R. Civ. P 12(b)(6). Id.; *see also* Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n.2 (5th Cir. 2011) (holding dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)).

**D.     Del Rio District Court's Nonbinding Decision in ACRU's Zavala County Case**

**Does Not Support Plaintiff's Instant Lawsuit**

36.     In response to Defendant's original Motion to Dismiss, Plaintiffs filed the Response in Opposition to Defendant's Motion to Dismiss ("Response"), Dkt. 11.  Plaintiff's Response relied in large part upon an order issued by the U.S District Court for the Western District of Texas, Del Rio Division, in another NVRA lawsuit filed by the Plaintiffs against the Zavala County voting registrar. *See* Response at pg. 2 (*citing* <u>Am. Civil Rights Union v. Martinez-Rivera</u>, No. DR-14-CV-0026-AM/CW, 2015 WL 10818661 (W.D. Tex. Mar. 30, 2015)).   However, Plaintiff's reliance on said order is misplaced.

37.     In the aforementioned Zavala County case, the defendant sought dismissal under Rule 12(b)(1) "because the Plaintiff can demonstrate neither organizational nor associational standing under Article III" and under Rule 12(b)(6) "because: (1) ACRU did not fulfill the NVRA's notice requirement before filing suit and (2) the Complaint fails to allege specific acts by the Defendant that amount to a violation of the NVRA." <u>Id</u>. at *2.  The Del Rio District Court denied defendant's motion.  With regard to the Zavala County Defendant's Rule 12(b)(1) motion challenging ACRU's Article III standing, the defendant argued that ACRU was required to join the Secretary of state as a defendant because she lacked authority to implement a program under the NVRA to remove ineligible voters from voting rules, and thus was not in a position to redress the alleged injury and therefore she was not a proper party in an action brought pursuant to Section 8 of the NVRA.  <u>Id</u>. at *6-8.  The Court acknowledged that the Fifth Circuit held in <u>Scott v. Schedler</u> that the Texas Secretary of State is a proper party to an NVRA suit.  <u>Id</u>. at *8 (<u>citing</u> <u>Scott v. Schedler</u>, 771 F.3d at 833).  Nevertheless, the Court indicated it was unwilling to dismiss the Complaint on standing grounds for failure to join the Secretary of State in the absence of a holding

that the Secretary was a *necessary* party. Id. The Del Rio District Court's decision is inapposite, nonbinding, and erroneous.

38.     In the instant lawsuit, Defendant has not filed a motion (thus far) challenging Plaintiff's organization or associational standing under Article III.     Accordingly, the aforementioned portion of Del Rio District Court's order is inapposite to the Defendant's First Amended Motion to Dismiss.   Nevertheless, it must be noted that the Court's decision not to dismiss the Complaint on standing grounds for failure to join the Secretary of State was erroneous. With all due respect to the Del Rio U.S. District Court, it was incorrect to conclude that Section 20510(b) of the NVRA and the Fifth Circuit's holding in Scott v. Schedler do not establish that the Secretary of State is the necessary defendant in an NVRA action.   As the Fifth Circuit clearly explained, the entire NVRA speaks in terms of the responsibilities of "each state" and thus centralizes that responsibility, and the requirement that the chief election official receive pre-suit notice only makes sense if he or she is the party through which the NVRA is enforced. Scott v. Schedler, 771 F.3d at 839.   The error in the Del Rio District Court's unwillingness to acknowledge that the Secretary of State is the necessary party for NVRA lawsuits is now evidenced by Plaintiff's efforts to pursue piecemeal litigation against various local voting registrars of its choosing including: the instant lawsuit; Plaintiff's lawsuit versus the Terrell County voting registrar[1]; as well as other Texas counties that Plaintiff's counsel has alluded to during status conferences.   As explained above, the NVRA dictates that any state program to protect the integrity of the electoral process shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of

---

[1] Plaintiff's Terrell County NVRA lawsuit was styled, American Civil Rights Union, in its individual and corporate capacities, Plaintiff v. Sheriff/Tax Assessor-Collector William "Clint" McDonald, in his official capacity as voter registrar; Civil Action No. 2:14-CV-12-AM-CW; In the United District Court for the Western District of Texas Del Rio Division.

1965. *See* 52 U.S.C. § 20507(b); *see also* Tex. Elec. Code § 31.003 ("The secretary of state shall obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code."). Accordingly, it was error for the Del Rio Court to conclude that the Secretary of State was not a necessary party. Therefore, the Del Rio Court's nonbinding order was both inapposite to the issues presented by Defendant's First Amended Motion to Dismiss and erroneous, and thus does not support the Plaintiff's instant lawsuit.

39.     With regard to the Zavala County Defendant's Rule 12(b)(6) motion, it sought dismissal on the basis that ACRU's pre-suit notice letter "was too vague to provide notice of an NVRA violation because the "circumstance"—voter rolls containing more names than there are citizens eligible to vote—is not an NVRA violation." Am. Civil Rights Union v. Martinez-Rivera, WL 10818661, at \*10. Accordingly, the Del Rio Court's Order did not consider whether ACRU had failed to comply with the pre-suit notice requirement by sending such notice to, and threatening suit against, a county voting registrar, rather than the Secretary of state. See id. Defendant's First Amended Motion, meanwhile, seeks dismissal of the Plaintiff's Complaint because it failed to provide pre-suit notice to the chief election official of the State, as required by Section 20510 of the NVRA. Consequently, the Del Rio District Court's discussion of the pre-suit notice requirement is inapposite and thus does not support the Plaintiff's instant lawsuit. Moreover, to the extent the Del Rio District Court assumed without deciding that the pre-suit notice requirement may be satisfied by sending such notice to a county voting registrar, this was error. As explained above, the Del Rio Court erroneously concluded that the Secretary of State was not a necessary party to ACRU's Zavala County lawsuit. Therefore, as explained above, the Del Rio District Court's nonbinding order was both inapposite to the issues presented by Defendant's First

Amended Motion to Dismiss and erroneous, and thus does not support the Plaintiff's instant lawsuit.

### III.    Conclusion

40.    Plaintiff's lawsuit should be dismissed because: (i) Plaintiff has not alleged a cognizable claim over which the Court has subject-matter jurisdiction; (ii) Plaintiff failed to state a claim upon which relief can be granted; and (iii) Plaintiff lacks standing. Plaintiff has no private right of action, and the Court has no subject-matter jurisdiction against Defendant Montalvo for any alleged violations of the NVRA or HAVA. Further, Plaintiff failed to comply with the NVRA's pre-suit notice requirement, and thus has no standing. Therefore, Plaintiff's lawsuit should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

### IV.    Prayer

41.    For these reasons, Defendant requests that the Court grant this motion to dismiss for lack of subject-matter jurisdiction and motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and deny all relief requested by the Plaintiff.

Respectfully submitted,

James P. Allison
SBN: 01090000
j.allison@allison-bass.com

J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com

Phillip L. Ledbetter
SBN 24041316
p.ledbetter@allison-bass.com

ALLISON, BASS & MAGEE, L.L.P.
A.O. Watson House
402 W. 12th Street
Austin, Texas  78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Eric Wiesehan
Wiesehan Law Firm, PLLC
P.O. Box 72093
McAllen, Texas 78504
Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com

H. Christopher Coates
Law Office of H. Christopher Coates
934 Compass Point
Charleston, South Carolina 29412
Tel: (843) 609-7080
curriecoates@gmail.com

J. Christian Adams
Kaylan L. Phillips
Public Interest Legal Foundation
209 W. Main Street
Plainfield, Indiana 46168
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org

*Attorneys for Plaintiff*

James P. Allison

# EXHIBIT A

**TEXAS SECRETARY OF STATE**

**CARLOS H. CASCOS**

Don't have a photo ID for voting? **Election Identification Certificates** are available from **DPS offices**.

Note - Navigational menus along with other non-content related elements have been removed for your convenience. Thank you for visiting us online.

# Texas Election Administration Management (TEAM) System



### What Is the TEAM System?

On October 29, 2002, President Bush signed HR 3295, the Help America Vote Act ("HAVA"). This federal legislation created many new mandates for state and local governments. One of the key provisions is that each "...state shall implement a uniform, official, centralized, interactive, computerized statewide voter registration list defined, maintained, and administered at the State level." The **Texas Election Administration Management (TEAM) system** is Texas' fulfillment of that mandate.

The TEAM system is a web-based, robust, secure, HAVA compliant system that meets HAVA requirements, with additional functions supporting election management, election night reporting, ballot certification and canvassing, and county jury wheel needs. New technologies such as document imaging and Geographic Information System (GIS) components will also be available. The TEAM system replaced the (non-HAVA compliant) Texas Voter Registration System (TVRS) in operation since 1996.

### What does the TEAM System Offer?

Key features of the TEAM System include functionality for county and state election officials to maintain voter registration records, administer elections in all jurisdictions, execute and report election results. Additional features include jury wheel selection support from validated voter registrations, and a public voter website.

# EXHIBIT B



Texas Election Administration Management System

Texas Secretary of State

**Login**

Username:

Password:

Login    Clear

*ElectioNet*

Service and Information ... Reformed

TEAM 1.0

**TEAM SERVER1-35**

Privacy, Security and Accessibility | USA.gov | © 2016 PCC Technology Group. All Rights Reserved

# EXHIBIT C

Voter Registration

Don't have a photo ID for voting? **Election Identification Certificates** are available from **DPS offices**.

--------------------------------------------------------------------------------

Note - Navigational menus along with other non-content related elements have been removed for your convenience. Thank you for visiting us online.

# Voter Registration

Under Section 13.001 of the Texas Election Code[1], to be eligible to register to vote[2] in Texas, a person must:

1. Be 18 years or older on election day,
2. Be a United States citizen,
3. Be a resident of the county where the application is submitted,
4. Not be finally convicted of a felony or, if so, have completed the terms of the jail sentence, probation or parole, and
5. Have not been declared by a court exercising probate jurisdiction to be either totally mentally incapacitated or partially mentally incapacitated without the right to vote.

To register to vote, Section 13.002 requires that a person submit an application either in person or by mail to the county voter registrar in the county in which the voter resides. The application must be in writing and signed by the applicant[3].

Once a voter registrar receives an application, the voter registrar will review it to determine whether it is properly completed and whether the person is eligible for registration under the law[4]. The registrar has seven days to determine whether to reject or accept an application[5]. If the application is rejected, the registrar has to notify the applicant in writing within two days of the reason for rejection[6]. If the application is accepted, the voter registrar prepares a voter registration certificate for the voter that contains the applicant's county election precinct number and registration number[7]. The registration becomes effective on the 30th day after the date the application is submitted to the registrar or the date the applicant turns 18 years old, whichever is later[8]. Under Section 13.144, the voter registrar is then required to mail or deliver the voter's registration certificate to the voter at the mailing address on the applicant's registration application no later than 30 days after the registrar receives the application[9].

The Secretary of State, as set out in Section 18.061, is required to implement and maintain a statewide, computerized voter registration list that serves as the single system for storing and managing the official list of registered voters in the state. The list must contain the name and registration information of each voter registered in the state, assign a unique identifier to each registered voter, and be available to any election official in the state through immediate electronic access[10].

Under State law, each voter registrar is required to provide the Secretary of State with an updated list of registered voters in their county[11]. This is how the statewide list was created, and how it is maintained. And once registered, a voter remains a registered voter on this list until a qualifying event occurs that causes removal from the list.

To maintain the integrity of the state's voter registration records, State law requires both the Secretary of State and the local voter registrar to regularly review the voter registration lists and compare them with information received from other government agencies to ensure that the state is maintaining an accurate

Case 7:16-cv-00103   Document 24   Filed on 07/15/16 in TXSD   Page 31 of 37

list[12]. Voter registrars work to verify the accuracy of the lists on a regular basis.

Under State law, when the Secretary of State or the local voter registrar receives the following items, they are required to cancel a voter's registration:[13]

1. Notice that the voter resides in a county outside the county they are registered in[14].
2. Notice that a voter is deceased[15]
3. An abstract of final judgment regarding the voter's mental incapacity to vote.
4. An abstract of final judgment regarding a voter's felony conviction.
5. Notice that a voter is not a citizen of the United States[16].

To ensure that properly registered voters are not removed from registration lists, the State of Texas has come up with a process to verify whether or not a registered voter is eligible to vote. In addition, State law also provides a process for local voter registrars to investigate and verify a voter's eligibility when the voter registrar is given information that would call that voter's eligibility into question[17].

## Strong Matches v. Weak Matches

In determining which action is appropriate to take, the Secretary of State's office established criteria used when confirming whether or not it is appropriate to cancel a registration, or when a county must further investigate an issue. Based on the data received, the reviewing authority will determine whether or not a "strong" match or a "weak" match occurs with a current voter registration record. When a strong match occurs, the voter's registration is automatically canceled. A weak match will result in the voter registrar investigating the voter's eligibility by sending out a "Notice of Examination" or, in the case of a match based on deceased records, a "Verification of Voter Status."[18] "Strong match" and "weak match" criteria are described below:

**See Cancelation of Deceased Voter Registration**

**See Cancelation due to Felony Conviction**

Collapse All | Expand All

## 1. Cancelation due to residing outside of county of original application

When a voter moves outside of the county in which he or she originally registered to vote, the voter registrar automatically cancels the voter's registration in accordance with Section 16.031(a)(1). There are three circumstances that call for cancelation under these circumstances

1. After a voter moves to a new county and fills out a registration application to change the voter's registration, the voter registrar will give written notice to the voter's previous county of the voter's change in address. In the notification, the registrar will include the voter's name, former residence address, and, if known, former registration number[19].
2. The voter notifies the voter registrar that there has been a change in information relating to the voter's residency in that county[20]. This notification can be made by sending in a registration certificate or registration application with the correct information[21].
3. A voter's response to a confirmation notice indicating the voter is no longer living within the county he or she is registered in[22].

## 2. Cancelation of Deceased Voter Registration

There are four ways deceased records are obtained in order to compare these records to the lists of registered voters.

1. Each month, as required by Section 16.001, the clerk charged with maintaining deceased records prepares an abstract of each of death certificate that has been issued that month for deceased individuals that are 18 years of age or older and a resident of the state of Texas. The local registrar of death then files these abstracts with (1) the voter registrar of each of the deceased individual's county of residence and (2) the Secretary of State.
2. The clerks for all of the courts that have probate jurisdiction must prepare an abstract of death for each application for probate of a will, administration of a decedent's estate, determination of heirship proceedings, and affidavits under Chapter 137 of the Probate Code and file these abstracts with (1) the voter registrar of each of the deceased individual's county of residence and (2) the Secretary of State.
3. In addition, under Section 16.001, the Bureau of Vital Statistics is required to provide to the Secretary of State all information it has relating to deceased residents of the State of Texas. The Election Code also requires the Secretary of State to obtain information on deceased residents from the Social Security Administration. Under Section 18.068, the Secretary of State is required to compare the information they receive from the Bureau of Vital Statistics and the Social Security Administration, to the statewide voter registration list. After comparing the data from these different sources, the Secretary of State may be able to determine that an individual on the statewide registration list is deceased.
4. A voter registrar may have personal knowledge that a voter is deceased or may receive notice in the form of a sworn statement from a person related within the second degree of consanguinity or affinity that an individual is deceased[23].

The voter registrar will also compare the information received from these sources to see whether or not there are any matching voting registration records. Upon making a determination that there is a match, one of two actions can occur: (1) The voter's registration will be canceled, if a strong match occurs, in accordance with State law[24] or, (2) the voter registrar will mail out a verification letter to the voter to further investigative the issue[25] as in the case of a weak match.

**Strong Match**

A strong match occurs when two voter records have: (1) the same last name, (2) same date of birth, and (3) all nine numbers in the person's social security number match. When this occurs, the voter's registration is canceled in accordance with Section 16.031(b)(4).

**Weak Match**

A weak match occurs when two voter records have either: (1) the same nine numbers in the person's social security number and the same date of birth, or (2) the last four numbers in the social security number match and the same date of birth. In a weak match, there does not have to be a match on a voter's name. When this occurs, the voter registrar is required by State law to mail out, by forwardable mail, a verification letter to the voter[26].

The verification letter informs the voter of the potential match and asks the voter to respond to the verification request within 30 days to prevent cancelation of his registration[27]. The verification letter must also be mailed to the mailing address on the voter's registration application and to any new address of the voter that the registrar knows of[28]. If the voter does not respond within 30 days, the voter registrar is then required under Section 16.033(d) to cancel the voter's registration.

## 3. Cancelation due to Mental Incapacity

The courts that have jurisdiction to adjudicate a person's mental capacity, prepare an abstract of final judgment for individuals[29]:

1. 18 years or older, residents of the state of Texas and are determined to be totally mentally incapacitated or partially mentally incapacitated;
2. 18 years or older, residents of the state of Texas, whose mental capacity is completely restored; or
3. Modifying the guardianship of a person 18 years of age or older to include the right to vote.

The court clerk files each abstract with the voter registrar of each individual's county of residence by the 10th day of the month after the abstract was prepared[30]. Upon receiving information determining an individual is incapacitated, the voter registrar sends out a "Notice of Examination" in accordance with Section 16.033. The voter has 30 days from the date the Notice is mailed out to respond to the Notice, or the registrar will cancel the voter's registration[31]. Upon receiving notification that the person's mental capacity is restored or the guardianship has been modified to include the right to vote, then the voter registrar would be able to process any application submitted by the individual.

## 4. Cancelation due to Felony Conviction

A person who is finally convicted of a felony is not eligible to register to vote. However, under Section 11.002, once a felon has successfully completed his or her punishment, including any term of incarceration, parole, supervision, period of probation, or has been pardoned, then that person is immediately eligible to register to vote. A person may continue to vote pending an appeal of his conviction, provided he meets the other eligibility requirements. Section 13.001(c) notes that "a person is not considered to have been finally convicted of an offense for which the criminal proceedings are deferred without an adjudication of guilt." For more information on the effects of a felony conviction on the registration process, please refer to our Effect of Felony Conviction on Voter Registration memo.

Pursuant to Section 16.003, on a weekly basis, the Department of Public Safety (DPS) is required to prepare and deliver to the Secretary of State, an abstract of final judgment for individuals, aged 18 and older that were convicted of a felony. The Secretary of State will compare this list to the statewide voter registration list to determine whether or not there are any matches. All matches under this category are considered "weak" matches and are referred to the appropriate county for the local voter registrar to further investigate.

### Weak Match

The criteria used in these matches are as follows:

1. Last/Former Name, First Name, Texas Drivers License Number
2. Last/Former Name, First Name, Social Security Number (9 digits)
3. Last/Former Name, First Name, Social Security Number (4 digits)
4. Texas Drivers License Number, Date of Birth

When the local voter registrar receives a list of these "weak" matches, they are required to mail out a "Notice of Examination" in accordance with Section 16.033. The voter has 30 days from the date the Notice is mailed out to respond to the Notice, or the registrar will cancel the voter's registration.

If the voter was incorrectly matched as having a felony conviction, responding to the Notice in a timely fashion and providing the appropriate information is sufficient for preventing cancelation of a person's voter registration. However, please be advised this does not clear any errors in the Department of Public Safety's records. If a person has been incorrectly identified as a felon, please refer to Criminal History Error Resolution for more information on how to clear errors on DPS records.

## 5. Cancelation due to Citizenship

Under Section 62.113 of the Government Code, the court clerks, who maintain the jury wheel for each county, are required to send both the voter registrar of their county and the Secretary of State a list of each person that was excused or disqualified from jury service because that person is not a citizen of the United

States. They must do so by the third business day of the month.

Once the registrar receives the list of individuals disqualified from jury duty due to citizenship status, State law requires the registrar to deliver to each registered voter on the list, a written notice requiring the voter to submit proof of United States Citizenship in the form of one of the following: (1) certified copy of the voter's birth certificate, (2) United States passport, or (3) citizenship papers[32].

The notice must be mailed to the mailing address on the voter's registration application and to any new address of the voter that the registrar knows of[33]. The voter has 30 days from the date the notice is mailed out to respond to the notice, or the registrar will cancel the voter's registration[34]. If the voter responds with the appropriate documentation, the voter registrar must also keep a copy of the proof of citizenship the voter supplied on file with the voter's original registration application[35]. If the voter does not respond, or the voter does not provide the appropriate documentation to establish citizenship, the voter's registration is canceled as required by State law[36].

## Cancelation due to Residency Issues

Pursuant to Section 15.051(b), if an initial voter registration certificate delivered to the applicant by mail is returned to the registrar as undeliverable, the voter registrar will mail the voter a "Notice to Confirm Voter Registration Address." This confirmation request will include an official response form for the voter to respond with[37]. It must be pre-addressed for delivery to the registrar and have the postage pre-paid[38]. Unlike voter registration certificates which are not forwardable, Section 15.051(c) requires the confirmation notice be forwarded to the voter's last known address. The voter has 30 days from the date the notice is mailed out to respond[39].

The voter's response must be in writing, signed and must contain all of the information that a person includes on a regular application[40] to register to vote[41]. The voter should use the form provided. If, however, the original form is no longer available, then as long as the voter responds in writing and the response contains the required information, then the voter registrar will accept it[42]. Once the response is received, the voter registrar reviews the response in the same manner as any other regular registration application and acts on it accordingly[43]. After the voter registrar makes a determination on the voter's registration status, the voter registrar is required to keep the voter's response on file with the voter's original application[44].

If the voter fails to respond to this notice, the voter registrar is required under Section 13.146 to enter the voter's name on the suspense list.

## The Suspense List

The suspense list, as detailed in Section 15.081, is a list maintained by the voter registrar of each county that contains the names of (1) voters that failed to respond to the confirmation notice[45], (2) voters whose renewal certificate was returned to the registrar as undeliverable[46], and (3) those individuals that were excused or disqualified from jury service because they were not a resident of that county[47], state on the juror summons notice that the individual no longer resides in the county, or whose jury summons were returned to the district clerk as undeliverable.

An individual on the suspense list is still a registered voter and has the same rights as a non-suspense list voter. If a suspense list voter lives in the same residence, shows up at the same precinct location, shows proof of identification and fills out a statement of residence[48], then the individual will be able to vote, and the voter's name will be removed from the suspense list. If the voter has moved to a different residence located in the same county, the voter will also fill out a Statement of Residence and be permitted to vote,

provided the voter is living in the political subdivision or territory covered by that election[49]. The Statement of Residence will be used to update the voter's registration and remove the voter's name from the suspense list. If the suspense list voter has moved outside of the county, the voter will be given the option to vote provisionally in accordance with Section 63.011.

If a voter's name is still on the Suspense list on November 30th following the second general election for state and county officers that occurs after the date the voter's name is entered on the suspense list, then the voter registrar is required by State law to cancel the voter's registration[50].

## When Cancelation Occurs

### Cancelation is effective immediately[51].

Under 16.035, when a voter's registration is canceled, it is effective immediately. When the registrar cancels a voter's registration, the voter registrar must enter the date of cancelation and the reason for cancelation on the registration application and duplicate registration certificate as well as make any other necessary corrections in the registration records[52].

Section 16.036 requires a voter registrar to send written notice within 30 days of cancelation to the voter informing him that his registration has been canceled. The notice must be mailed to the address on the registration application and any other known address of the voter. State law requires that the notice contain the date of cancelation, the reason for cancelation and an explanation of the voter's right to challenge the explanation and appeal the registrar's decision[53].

A voter can cancel his own registration by submitting to the registrar a signed, written, request for cancelation[54]. Once a request is received, the registrar must cancel the voter's registration effective immediately[55].

## Challenge of Cancelation

A person whose voter registration is canceled should contact the local county voter registrar. If the voter registrar determines that the cancelation was made in error, the voter registrar has the ability to immediately reinstate the voter's registration status. If the voter registrar finds that the cancelation was made in accordance with the law, then the voter has the right challenge the cancelation at a hearing before the voter registrar[56]. To challenge a cancelation, a voter must file a written, signed request for a hearing with the registrar[57]. Upon filing a request for a hearing, the registrar will automatically reinstate the challenging voter's registration pending the outcome of the challenge[58].

Section 16.064 outlines the procedures for requesting a hearing. Once a request for a hearing is filed, the registrar must have a hearing within 10 days of the initial request, unless the person that requested the hearing asks for a later date. The registrar must provide notice to the voter of the date, time, and place for the hearing within two days of the request being filed[59]. The person requesting the hearing may either appear in person to offer his evidence or he may file an affidavit with the registrar before the hearing begins[60].

After hearing and reviewing the evidence or arguments offered by the challenger, the voter registrar must promptly issue a written decision in the case and deliver the decision to the voter[61]. If the registrar determines that the registration should not have been canceled, the registration that was reinstated when the voter initiated the challenge will remain[62]. If the registrar determines that the registration should be canceled, then the registrar must cancel the registration on the 31st day after the registrar's decision is issued[63]. A copy of the decision must be kept on file with the challenging voter's duplicate registration

certificate[64].

## Reinstatement

If a voter registrar receives information after the date of cancelation that the voter's registration should not have been canceled, the registrar must reinstate it immediately[65].

If the registrar receives a statement of residence that was executed by a voter at an election before the date the voter's registration was required to be canceled, the registrar must reinstate the registration[66]. If it is discovered that the voter was canceled during the biennial suspense purge and the voter has voted in an election after being placed on the suspense rolls, then the voter registrar should reinstate the voter. In such cases, it is probable that no Statement of Residence was requested of the voter, which was why the voter's information was not previously updated.

Immediately upon reinstatement, the registrar must deliver written notice of reinstatement to the voter. The written notice must include the date of and reason for the reinstatement[67].

1. Unless otherwise specified, all references are to the Texas Election Code ("Code").
2. Tex. Elec. Code § 13.001
3. Tex. Elec. Code § 13.002
4. Tex. Elec. Code § 13.071
5. Tex. Elec. Code § 13.071
6. Tex. Elec. Code § 13.073
7. Tex. Elec. Code § 13.142
8. Tex. Elec. Code § 13.143
9. Tex. Elec. Code § 13.144
10. Tex. Elec. Code § 18.061(b)
11. Tex. Elec. Code § 18.061 (c)
12. Tex. Elec. Code § 18.068 AND §16.031
13. Tex. Elec. Code § 16.031 – list not exclusive – (other reasons include, registered in other state, submitted FPCA, disqualified through election contest)
14. Tex. Elec. Code § 15.021 AND Tex. Elec. Code. § 13.072(b).
15. Tex. Elec. Code § 16.001(a) and (b)
16. Tex. Elec. Code § 16.0332
17. Tex. Elec. Code § 16.033
18. Tex. Elec. Code § 16.033
19. Tex. Elec. Code § 13.072 (b)
20. Tex. Elec. Code § 15.021
21. Tex. Elec. Code § 15.021 (b)
22. Tex. Elec. Code § 15.053
23. Tex. Elec. Code § 16.031 (b)(2) and (3)
24. Tex. Elec. Code § 16.031 (b)
25. Tex. Elec. Code § 16.033
26. Tex. Elec. Code § 16.033
27. Tex. Elec. Code § 16.033
28. Tex. Elec. Code § 16.033 (b)
29. Tex. Elec. Code § 16.002
30. Tex. Elec. Code § 16.002
31. Tex. Elec. Code § 16.033
32. Tex. Elec. Code § 16.0332
33. Tex. Elec. Code § 16.0332
34. Tex. Elec. Code § 16.0332
35. Tex. Elec. Code § 16.0332
36. Tex. Elec. Code § 16.0332 (b)
37. Tex. Elec. Code § 15.051(b)
38. Tex. Elec. Code § 15.052
39. Tex. Elec. Code § 15.053
40. Tex. Elec. Code § 13.002
41. Tex. Elec. Code § 15.053
42. Tex. Elec. Code § 15.053

43. Tex. Elec. Code § 13.072
44. Tex. Elec. Code § 15.053
45. Tex. Elec. Code § 15.081(a)(1)
46. Tex. Elec. Code § 15.081 (a)(2)
47. Tex. Gov't Code § 62.114
48. Tex. Elec. Code § 63.0011
49. Tex. Elec. Code § 63.0011 (b)
50. Tex. Elec. Code § 16.032
51. Tex. Elec. Code § 16.035
52. Tex. Elec. Code § 16.034
53. Tex. Elec. Code § 16.036
54. Tex. Elec. Code § 16.0331
55. Tex. Elec. Code § 16.0331
56. Tex. Elec. Code § 16.061
57. Tex. Elec. Code § 16.062
58. Tex. Elec. Code § 16.063
59. Tex. Elec. Code § 16.065
60. Tex. Elec. Code § 16.064
61. Tex. Elec. Code § 16.066
62. Tex. Elec. Code § 16.066
63. Tex. Elec. Code § 16.066
64. Tex. Elec. Code § 16.066
65. Tex. Elec. Code § 16.037
66. Tex. Elec. Code § 16.037
67. Tex. Elec. Code § 16.038