**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | |
|---|---|
| AMERICAN CIVIL RIGHTS UNION, ) | |
| in its individual and corporate capacities, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 7:16-cv-00103 |
| ) | |
| ELECTION ADMINISTRATOR ) | |
| RAFAEL R. MONTALVO, ) | |
| in his official capacity, ) | |
| *Defendant*. ) | |
| ) | |
| _____ ) | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S**
**FIRST AMENDED MOTION TO DISMISS**

COMES NOW the Plaintiff American Civil Rights Union ("ACRU") and files this

Response in Opposition to Defendant's First Amended Motion to Dismiss (hereinafter

"Amended Motion"). (Dkt. 24.)

**SUMMARY OF ARGUMENT**

Defendant's Amended Motion, like his first motion to dismiss, is based on a faulty

premise that "the State of Texas and/or the Secretary [of State of Texas] are the *only parties* that

may be subject to a civil enforcement action." Amended Motion at 9 (emphasis added).  In order

to do so, Defendant downplays the responsibilities placed upon him by Texas law and the

National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501, *et seq*., ("NVRA"),

responsibilities the ACRU delineated in its Complaint. *See* Complaint, ¶ 12-13. The

overwhelming weight of authority supports the Plaintiff authority which Defendant

misconstrues.

Importantly, arguing that the Secretary of State has obligations under the NVRA is not the same thing as establishing that local election registrars have *no* obligations under the NVRA. They both do, and it is the obligations of the local election registrar alone at issue in this case. Texas law vests Defendant with the responsibility of conducting voter registration and voter roll maintenance of a character and scope that the Secretary of State does not share. Complaint, ¶ 12 (citing Tex. Elec. Code Ann. § 12.001, Tex. Elec. Code Ann. § 15.022(a), and Tex. Elec. Code Ann. § 31.043). ACRU's Complaint is based on the failure of Defendant to properly conduct the activities within his responsibility.

The ACRU's Complaint also seeks records solely within the possession of the Defendant. These list maintenance documents ACRU seeks concern *Defendant's* activities, not the State's. The State does not possess some of the requested records whatsoever. Therefore, the State cannot possibly be a proper party for the list maintenance document claims in this case, let alone the only party. Only the Defendant can provide the complete relief that ACRU is seeking.

Defendant's argument that ACRU's Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of standing because the ACRU did not send a statutory notice letter to the State of Texas or the Secretary of State also lacks merit. Defendant's argument contains an important factual error as ACRU *did* send a statutory notice letter to the Texas Secretary of State on the same day it sent the notice to Defendant. (*See* Exhibit A to Complaint, Dkt. 1-1.) Both letters were mailed 72 days before this action commenced, more than satisfying the statutory standing requirements.[1] In fact, the federal district court for the Western District of Texas found a nearly

---

[1] Pursuant to 52 U.S.C. § 20510(b), "A person who is aggrieved by a violation of [the NVRA] may provide written notice of the violation," and if, as relevant here, "the violation is not corrected . . . within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office," an action may be brought "in an appropriate

identical notice letter, sent by ACRU to the Zavala County voter registrar with a copy sent to the Secretary of State, to provide sufficient notice under the NVRA. *ACRU v. Martinez-Rivera*, Civil Action No. DR-14-CV-0026-AM/CW, 2015 U.S. Dist. LEXIS 177883 (W.D. Tex. Mar. 30, 2015) (hereinafter, *Martinez-Rivera*).

## STANDARD OF REVIEW

A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) "for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (internal citations omitted). Accordingly, first, a court "must accept as true all well pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff." *Id.* (internal citations omitted). Second, dismissal for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.*

While a complaint need not contain detailed factual allegations, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

---

district court for declaratory or injunctive relief with respect to the violation." (*See also*, Complaint ¶ 25.)

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## PROCEDURAL HISTORY OF THE CASE

Plaintiff ACRU is a "non-profit corporation…which promotes election integrity, compliance with federal election laws, government transparency, and constitutional government." (Plaintiff ACRU's Complaint, Dkt. 1, ¶ 4.) ACRU brought the present action under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501, *et seq.*, to enforce obligations of election officials to maintain accurate voter registration rolls.[2]  The registration rolls in Starr County have contained, and continue to contain, more voters registered to vote than there are citizens eligible to vote living in the county. (*See*, *e.g.*, *id.* ¶ 17.) ACRU named as Defendant Starr County Election Administrator Rafael R. Montalvo ("Defendant") because he is the official responsible for conducting list maintenance of the voter rolls in Starr County. (*See* Complaint, ¶¶ 13-16.)

Defendant responded to ACRU's allegations by filing a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on April 4, 2016. (*See* Defendant Rafael R. Montalvo's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Motion to Dismiss for Failure to State a Claim. (Dkt. 6.)) Plaintiff timely filed an opposition to Defendant's Motion. (Dkt. 11.)

The Court held the initial pretrial conference on May 5, 2016. After hearing from the parties on Defendant's Motion to Dismiss, the Court denied the Motion.

---

[2] List maintenance obligations and public record rights at issue in this case under 52 U.S.C. § 20507 are commonly referred to as "Section 8" obligations under the NVRA as they were contained in Section 8 of Pub. L. 103-31, May 20, 1993, 107 Stat. 77.

Defendant then filed his Answer to ACRU's Complaint on May 19, 2016. (Dkt. 18.) ACRU served its first set of discovery requests upon Defendant on June 7, 2016. (*See* Dkt. 22.) On June 28, 2016, this Court held a status conference where it again addressed Defendant's Motion to Dismiss and suggested Defendant file an amended Motion addressing specific areas of the Court's concern. (Status Conference Transcript, *ACRU v. Montalvo*, at 18:1-3 (June 28, 2016) (Dkt. 25.)). Defendant filed his Amended Motion on July 15, 2016. The Amended Motion, like the first Motion, seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Furthermore, although Defendant's Amended Motion does not address ACRU's members, at the June 28, 2016 Status Conference, this Court requested additional information regarding ACRU's members and supporters in the State of Texas in order to confirm ACRU's standing. (Status Conference Transcript, *ACRU v. Montalvo*, at 3:11-18, 22:17-20. (Dkt. 25.)) Therefore, ACRU provides an affidavit regarding its membership as Exhibit A hereto. ACRU has members in Texas, in Starr County, and in the state legislative district which includes Starr County.

## ARGUMENT

At its core, Defendant's Amended Motion is premised on his contention that the NVRA and the Help America Vote Act, 52 U.S.C. § 21083, (hereinafter "HAVA") do not "provide Plaintiff with standing or a private right of action against Defendant Montalvo." (Amended Motion at 2.) Therefore, Defendant contends, ACRU's Complaint against it should be dismissed because it "fails to invoke the Court's subject-matter jurisdiction under [the NVRA] and also fails to state a claim from which relief may be granted." (Amended Motion at 18.) Further, Defendant contends that ACRU lacks standing because it "failed to comply with the pre-suit

notice requirements of section 20510(b)." (*Id.*) Defendant supports his Amended Motion with cases brought under the NVRA against state election officials, cases that are readily distinguishable from the case at hand.

Defendant's Amended Motion should be denied because Defendant *is* a proper party and the Secretary of State is not required to be joined as a party. Actions under the NVRA may lie against local election officials because local election officials in Texas are responsible for carrying out list maintenance functions for which the state has no final responsibility or authority. Enjoining the Defendant will provide ACRU with the complete relief it seeks. Further, ACRU has more than satisfied the pre-litigation notice requirement as it sent a letter to *both* the Defendant *and* the Secretary of State well in advance of filing its suit and has communicated with the Secretary of State about the claims against the Defendant.

## I.      Election Administrator Montalvo is the Proper Defendant.

Under Defendant's interpretation of the NVRA, "private actions for alleged NVRA violations must be brought against the State and/or its chief election official." (Amended Motion at 18.) Accordingly, Defendant contends that ACRU's complaint "should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6)." (*Id.*) In support of his theory, Defendant relies upon a distinguishable Fifth Circuit case involving Louisiana's Secretary of State and also involving state agencies for failure of the state to implement an entirely distinct provision of the NVRA having nothing to do with maintaining accurate voter rolls, *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014). Defendant also attempts to distinguish a decision from the District Court for the Western District of Texas case rejecting the theory Defendant espouses here, *see Martinez-Rivera*.

First, establishing that the NVRA might contemplate liability for the Secretary of State does not mean that local election registrars cannot also be defendants in an NVRA action. Which party is proper is a mixed question of law and fact depending on the particulars of the plaintiff's complaint. In this case, Defendant is the proper party and enjoining him will redress ACRU's injuries.

### A.    Local Registrars Have Federal List Maintenance Obligations

As an initial matter, much of Defendant's Amended Motion downplays his role in voter roll list maintenance in describing the federal and state statutory backdrop for ACRU's claims.

Congress provided election officials flexibility to implement a generalized program to keep voter rolls clean. The NVRA requires covered officials to make a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters, and allows any aggrieved person to file suit to enforce the provision. Indeed, section 20507(d)(3) of HAVA provides that the "*voting registrar* shall correct an official list of eligible voters… ." *Id.* (emphasis added). In addition, HAVA specifically requires that "[t]he appropriate State or *local election official* shall perform list maintenance with respect to the computerized [state] list on a regular basis." 52 U.S.C. § 21083(a)(2)(A) (emphasis added.); *see also* Complaint, ¶ 14.[3] Failing to do so gives rise to a cause of action against either  state or local election officials, or both, depending on who is the most appropriate party. This case has separate claims pertaining to the list maintenance activities of the Starr County election administrator, as well as a claim seeking access to election records solely in his custody.

---

[3]  ACRU notes that there is a typographical error when quoting this statute in its Complaint. *Compare* Complaint ¶ 14 ("local election officials") *with* 52 U.S.C. § 21083(a)(2)(A) ("local election official").

ACRU's Complaint pertains to Defendant's failures to properly maintain voter rolls, stating: (1) Defendant, as the person designated by Texas law to maintain voter rolls in Starr County, has a federal obligation to maintain accurate and current voter rolls which only contain the names of eligible voters residing in Starr County, (Complaint, ¶ 12-13); (2) Defendant must conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists; (*id*. ¶ 14), (3) voter rolls maintained by Defendant for Starr County contain more voters registered to vote than citizens residing in the county eligible to vote, (*id*. ¶ 17); (4) an implausible voter registration rate indicates that Defendant has failed to make reasonable efforts to conduct voter list maintenance programs, (*id*. ¶ 20); and (5) ACRU's members are aggrieved because of the potential for voter fraud and vote dilution, (*id*. ¶¶ 32, 37).

Defendant dismisses the obligations of HAVA as not relevant to the present action because HAVA does not confer a private right of action. (Amended Motion at 10.) ACRU does not dispute that HAVA lacks a private right of action but it does dispute that HAVA is not relevant. In judging whether the Defendant has a "reasonable" program for voter list maintenance, this Court may look at the federal obligations within HAVA, codified at 52 U.S.C. § 21083(a)(2)(A), which explicitly incorporate and expand obligations under the NVRA and speak to the reasonableness of Defendant's list maintenance program. *See FDA v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 133 (2000) ([T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand.").[4]  In HAVA, Congress spoke subsequently to the enactment of

---

[4]  Defendant refers to 52 U.S.C. § 21145 for the contention that "subsection 21083(a) of HAVA may not be construed to have any effect on the NVRA." (Amended Motion at 11.) But, section 21145 states that "nothing in this chapter may be construed to authorize or require conduct prohibited under any of the following laws, or to supersede, restrict, or limit the application of

the NVRA and refined federal list maintenance obligations for state, and importantly here, local officials.

### B.  All Authority Interpreting Section 8 Supports Plaintiff

Courts which have looked most carefully at the question of whether an action should lie under Section 8 of the NVRA against state or local election officials have supported Plaintiff's position.   Defendant cites a handful of cases for his contention that "private causes of action for alleged NVRA violations must be brought against the State and/or its chief election official." (Amended Motion at 9.) However, the fact that those cases *were* brought against the State and/or chief election official does not mean that all actions *must* likewise be brought against the State and/or chief election official.

A significant case, cited by Defendant in support of his motion, (Amended Motion at 7,) is *United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008). A proper reading of the case strongly supports Plaintiff's position here and the denial of Defendant's Amended Motion. The central finding of the case is that liability under Section 8 can lie against *either* state or local election officials depending on the unique facts and circumstances of list maintenance programs as well as state law dividing authority for list maintenance. To ACRU's knowledge, *Missouri* is the only court of appeals case involving a careful examination of the statutory construction of Section 8 of the NVRA regarding the question of state versus local liability for list maintenance violations. Plaintiff would respectfully suggest it should therefore carry significant persuasive weight.

There, the State of Missouri sought to *deflect* liability under the NVRA to the local entities, claiming that only the local election official was responsible, that the state official is not an appropriate party, and that the state had met its obligations under the NVRA. *Id.* at 849.

---

such laws." 52 U.S.C. § 21145. ACRU contends that HAVA expands upon provisions of the NVRA, which is not prohibited under subsection 21145 of HAVA.

Unlike Section 7 cases discussed below, which invariably involve state agencies conducting voter registration activities, in the *Missouri* case there was a claim under Section 8 alleging that voter rolls in some parts of Missouri exceeded 100% of eligible citizens, a claim like the one now before this Court. *Id*. at 847.

The court in the *Missouri* case analyzed the NVRA and noted that some "provisions envision delegation, and do not require the states to do more than delegate." *Id*. at 849. The Eighth Circuit explained that while the NVRA requires the state to conduct a general program of list maintenance, the state *may* delegate the *actual administration of voter rolls and maintenance to local election officials*. *Id*. ("By its plain language, this requirement envisions the states will actively oversee a general program wherein many of the duties not specifically assigned to the states may be delegated."). The Eighth Circuit acknowledged that determination of liability required a factual inquiry into the activities of the local officials. *Id*. at 851 (on remand, the lower court must "consider any lack of LEA [local election agency] compliance and determine whether any such noncompliance renders Missouri's effort to 'conduct a general program' unreasonable in removing the names of eligible voters.") The court suggested several remedies "if the district court determines a lack of LEA [local election agency] compliance renders Missouri's efforts to conduct a general program unreasonable." *Id*. In other words, liability under Section 8 could lie against *either* local registrars or the state, depending on the factual circumstances and state statutory delegation of maintenance duties. This dual liability structure of Section 8 is exactly why the United States District Court for the Western District of Missouri expected the United States to sue local election officials who fail to maintain the rolls, not the state. "Likewise, because the United States has the most interest in elections for federal office, it is reasonable for the State to expect the Department of Justice to pursue LEAs [local election agencies] who are

not complying with the NVRA." *United States v. Missouri*, 2007 U.S. Dist. LEXIS 27640, *23-24 (W.D. Missouri 2007.)

In fact, the Eighth Circuit rejected the United States "policy plea" to find that Section 8 of the NVRA should only be enforced against state officials, a position even less extreme than Defendant's claim that *only* the state may be a defendant. Instead of arguing that Section 8 mandates cases only against the state, a position that if accepted would have defeated Missouri's defense *per se*, the United States asked the court "to hold Missouri responsible for enforcement because it will be much more difficult for the federal government to enforce the NVRA against individual LEAs [local election agencies]." *Id.* at 851 n.3. According to the Eighth Circuit,

> This plea fails to recognize (1) the federal government has taken enforcement actions directly against the LEAs [local election agencies] in the past; (2) after one or two LEAs [local election agencies] are held liable others are more likely to fall in line without lengthy litigation; and (3) it is not the place of the courts to "rework" a statute to simplify enforcement when Congress could have written the legislation differently. This is a policy decision for Congress. We decline to shift this cost and burden to the states without clear direction from Congress.

> *Id.*

The Eighth Circuit noted the "plain language of the NVRA provides a right of enforcement to only two categories of plaintiffs--the United States and '[a] person who is aggrieved by a violation of [the NVRA].' … The State of Missouri would not necessarily be a 'person . . . aggrieved by' a violation of the NVRA." *Id.* at 851 (citations omitted). Failure of local election officials to comply with Section 8 is confined to merely being "relevant to determining whether or not Missouri" (or Texas) is complying with Section 8. *Id.* Put another way, if Texas were a defendant in this case, failures by the Starr County register would be a drop in a very large bucket as to whether Texas itself was failing to comply with Section 8 overall

across the state of Texas. The NVRA gives states no power to order the compliance of local officials.

Previously, the district court in the *Missouri* case rejected the argument that Section 8 of the NVRA gives the state the power to order local election registrars to comply with the NVRA. The "[c]ourt, however, does not believe that Congress intended the NVRA to alter the longstanding division of authority between county and statewide officials. It would be radical for this Court to find such an intent absent clear direction, which is not present here." *United States v. Missouri* 2006 U.S. Dist. LEXIS 32499, *20 (W. D. Missouri, 2006).[5] Section 8 of the NVRA does not give Texas officials the authority to enforce the requirements of the NVRA against local election officials. This power was specifically rejected as part of the NVRA in *United States v. Missouri*, 535 F.3d at 851, *supra*.

This understanding of the court's decision in *Missouri* is bolstered by an opinion from the same U.S. District Court issued six months later in *ACORN v. Scott*, No. 08-CV-4084-NKL, 2008 U.S. Dist. LEXIS 101778 (W.D. Mo. Dec. 17, 2008). There, the plaintiffs sought declaratory and injunctive relief against several agency heads and local officials pursuant to Section 7 of the NVRA. *Id*. at *3-4. The local officials filed a "Motion to Compel Joinder of the Secretary of State as an Additional Party Defendant." *Id.* at *2-3. The court denied the motion, finding that "Plaintiffs have made no claims against the Secretary; their Complaint does not

---

[5] Texas and Missouri have other similarities which weigh against Defendant's motion. For example, pursuant to state law, state authorities are distinct from local registrars. Unlike Section 7 obligations on state agencies to register voters, "[t]he 116 local election authorities in Missouri are not employees of the Secretary of State's office nor do they answer to the directives of that office." *United States v. Missouri* 2006 U.S. Dist. LEXIS 32499, *22. Just as in Texas, "[a]lmost all of them are independently elected public officials." *Id.* Thus, the district court was unwilling to read Section 8 as giving state election officials functional power to order local officials to maintain voter rolls. These findings were not disturbed by the Eighth Circuit. *Missouri,* 535 F.3d 844, 851 n. 3.

allege that she has failed to fulfill her responsibilities under the NVRA or Missouri's statutes, and it requests no relief from her." *Id.* at *7. Regarding the impact of *Missouri*, the court in *ACORN* noted that:

> The Eighth Circuit's opinion in that case recognized that "Missouri could not be [held] responsible for enforcement of the NVRA against local election authorities," even though local election authorities' noncompliance was relevant to a determination of whether the State had fulfilled its own obligations under the NVRA to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters[.]" *Id.* at 847-848, 851. This Court and the Eighth Circuit *recognized in that case that direct actions by local prosecutors and the U.S. Government against local election authorities for violations of the NVRA were available*. *Id.* at 851, 851 n.3. Here, ACORN and O'Neal are suing the local election authorities, not the Secretary of State, for their alleged violations of Section 7 of the NVRA.

*ACORN v. Scott*, No. 08-CV-4084-NKL, 2008 U.S. Dist. LEXIS 101778, at *5-6 n.1 (emphasis added.)

Here, Defendant is the custodian of the information sought. The Defendant is the entity responsible for conducting reasonable list maintenance activities in Starr County and keeping records of the same. Therefore, Defendant's Amended Motion should be denied.

## C. Defendant's Argument Was Also Rejected by U.S. District Court for the Western District of Texas.

The Western District of Texas squarely addressed the issues before this Court in *Martinez-Rivera*. Defendant argues that this "decision is inapposite, nonbinding, and erroneous." (Amended Motion at 21.) Defendant's attempts to distinguish or ignore the decision should be rejected.

In *Martinez-Rivera*, the ACRU filed a lawsuit against the Zavala County voting registrar pursuant to the *same* Section 8 statutory provisions now before this Court. Defendant there, as here, alleged that the ACRU failed to sue the proper party, namely the Secretary of State. *See Martinez-Rivera*, 2015 U.S. Dist. LEXIS 177883 at *21. The district court in *Martinez-Rivera*

13

assessed the responsibilities of the voter registrar for maintaining the voter rolls and found that
"[b]y fulfilling these duties, the county tax assessor-collectors enable the Texas Secretary of
State to maintain accurate and current voter registration rolls, as mandated by the NVRA. *See* 52
U.S.C.§ 20507." *Id.* at *23.  In other words, effective list maintenance by local election officials
is a condition precedent to the state maintaining clean rolls. Without adequate list maintenance
by local registrars, including the Defendant Montalvo, Texas statutes do not provide the statutory
powers necessary for the state to maintain the rolls effectively. Defendant claims that at least
portions of *Martinez-Rivera* is "inapposite" because "Defendant has not filed a motion (thus far)
challenging Plaintiff's organization or associational standing under Article III." (Amended
Motion at 21.) But, Defendant follows by stating that "[n]evertheless, it must be noted that the
Court's decision not to dismiss the Complaint on standing grounds for failure to join the
Secretary of State was erroneous." (*Id.*)

In so noting, the Defendant contends that the *Martinez-Rivera* court erred in its
interpretation of the *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014), decision. (*See* Amended
Motion at 21.) Specially, the *Martinez-Rivera* court considered the *Scott* case, which is relied
upon by Defendant here, and rejected its application to the present case by stating the following:

> [T]he *Scott* court did not say that the Secretary of State is a necessary party to an
> NVRA suit. The NVRA itself is also silent on the subject of necessary parties. *See*
> 52 U.S.C. § 20510(b). In the absence of a holding to the contrary, this Court is
> unwilling to dismiss the instant Complaint on standing grounds for failure to join
> the Secretary of State. *As previously noted, the Tax Assessor-Collector has
> certain obligations under the NVRA as the designated voter registrar and state
> official.* If the Defendant has failed to meet her obligations, ACRU can bring a
> civil suit against her.

*Martinez-Rivera*, 2015 U.S. Dist. LEXIS 177883 at *24 (emphasis added).

Defendant claims that *Martinez-Rivera* court's error in allowing a case against a local
registrar to continue "is now evidenced by Plaintiff's efforts to pursue piecemeal litigation

14

against various local voting registrars of its choosing," referencing the present lawsuit, a 2014 lawsuit involving Terrell County, and "other Texas counties that Plaintiff's counsel has alluded to during status conferences." (Amended Motion at 21.) First, as a practical matter, the fact that ACRU has now brought three cases against three separate counties in a state comprised of 254 counties does not raise concerns about piecemeal litigation, especially when a consent decree against one defendant was entered by the United States District Court for the Western District of Texas, and a settlement was reached in the other case.[6] Second, as is evidenced by the fact that one of the cases resulted in a consent decree, ACRU's claims are redressible by the local election officials. Third, and most importantly, a small number of Texas counties are likely failing in their list maintenance obligations and the Secretary of State is nearly powerless to do anything about it. The Secretary has limited authority over local registrars when it comes to the practical mechanics of list maintenance and the investigation of potentially inaccurate voter rolls.

The *Missouri* and *Martinez-Rivera* analysis of similar circumstances by two separate courts is logically sound and consistent with the NVRA and federal list maintenance obligations. No contrary authority exists regarding Section 8 obligations. Both cases faced the same question: Defendants sought to escape liability because the plaintiff arguably sued the wrong governmental entity, and in both cases, the court sided with the plaintiff's choice while recognizing that Section 8 permits either to be sued depending upon the circumstances in each case. Obviously both decisions are not binding authority on this Court, but the only authorities which have

---

[6] It bears more than passing mention that in both the *Martinez-Rivera* and *ACRU v. Sheriff/Tax Assessor-Collector William "Clint" McDonald*, Case No. 2:14-cv-00012-AM (W.D. Tex.) cases discovery revealed astonishing list maintenance failures by local officials, and not state officials, such as failing to remove a registrant who died in 1944 in one county and failing to remove registrants who moved away as long as they promised to support the registrar in the registrar's next election, among other facts. The intensely local nature of list maintenance weighs strongly against granting Defendant's motion.

examined the question have sided with the Plaintiff's position here. Therefore, Defendant's arguments to the contrary should be rejected.

Finally, it is no help to the Defendant that Congress spoke to the "States" in some provisions of the NVRA when, under Texas law, Defendant has the primary responsibility for and functional control of maintaining Starr County voter rolls, not Texas officials. The Complaint details these numerous state statutory obligations for list maintenance, that fall solely on the Defendant, not the state. (Complaint, ¶¶ 12-13.) Under Texas law, the Defendant performs the duties of the "registrar," Tex. Elec. Code Ann. § 31.043, including the responsibility of maintaining the voter rolls, Tex. Elec. Code Ann. § 15.022(a). Stunningly, Defendant highlights many of his responsibilities in his Amended Motion. (*See* Amended Motion at 12 (discussing Defendant's role in voter registration and confirmation); at 13 (discussing mailings conducted by Defendant); at 13-14 (discussing Defendant's use of the Texas Election Administration Management ("TEAM") system); at 15-16 (discussing Defendant's role in investigating the eligibility of voters).) It is important to note that the Secretary of State lacks expansive functional authority over most list maintenance functions, including investigating lower confidence potential matches of dead or ineligible registrants.

One example that Defendant seems to have overlooked, but that was specifically pressed in ACRU's Complaint ¶ 12, is Tex. Elec. Code Ann. § 15.022, which is entitled "Correction of Registration Records," and which provides the following obligations:

> (a)  *The registrar shall* make the appropriate corrections in the registration records, including, if necessary, deleting a voter's name from the suspense list:
> (1)  after receipt of a notice of a change in registration information under Section 15.021;
> (2)  after receipt of a voter's reply to a notice of investigation given under Section 16.033;
> (3)  after receipt of any affidavits executed under Section 63.006, following an election;

16

(4) after receipt of a voter's statement of residence executed under
Section 63.0011;
(5) before the effective date of the abolishment of a county election
precinct or a change in its boundary;
(6) after receipt of United States Postal Service information indicating an
address reclassification;
(7) after receipt of a voter's response under Section 15.053; or
(8) after receipt of a registration application or change of address under
Chapter 20.
(b) At least monthly, *the registrar shall* request from the United States Postal
Service any available information indicating address reclassifications affecting the
registered voters of the county.

Tex. Elec. Code Ann. § 15.022 (emphasis added). These are list maintenance functions which do

not fall on the Secretary of State, but rather on the Defendant. *See also* Exhibit C, Amended

Motion at 30-37 (Texas Secretary of State's memorandum on voter registration which indicates

that the local voter registrar makes the final determinations regarding a multitude of list

maintenance activities.)

### D. Defendant's Discovery Responses Demonstrate that Defendant, and Not State Officials, Is the Proper and Necessary Party Here.

Defendant's discovery responses support Plaintiff's position that the local registrar

carries out the mechanics of list maintenance. For example,

1. "If the Defendant receives information from the Starr County Clerk or Secretary of
State listing individuals disqualified from jury duty due to citizenship state, State law
requires *the Defendant* to deliver to each registered voter on the list, a written notice
by forwardable mail requiring the voter to submit proof of United States
Citizenship…The voter has 30 days from the date the notice is mailed out to
respond…or *the Defendant* will cancel the voter's registration." Defendant's
Responses to Plaintiff's First Set of Requests for Admission at 5 (emphasis added)
(attached as Exhibit B.)

2. "If the Defendant receives information from the Starr County Clerk listing individuals
disqualified from jury duty due to non-residence in the County, State law requires *the
Defendant* to send those persons a notice that the person is being placed on the
County's suspense list of registered voters…" *Id.* (emphasis added).

3.  "Pursuant to Texas Election Code *each county* in the state performs countywide mailings…" Defendant's Responses to Plaintiff's First Set of Interrogatories to Defendant at 3 (attached as Exhibit C.) (emphasis added).

4.  "Defendant acknowledges that a *county elections administrator* has obligations under the Election Code that may result in the correction of records or removal of names from the voter registration lists for individuals who have moved." *Id*. at 4. (emphasis added).

5.  "Section 15.022 addresses the efforts *Defendant* may take to correct registration records…" *Id*. at 5. (emphasis added).

6.  Further describing Defendant's responsibilities regarding investigating "weak" match information. *Id*. at 8-9.

Therefore, Defendant's responses to Plaintiff's First Set of Requests for Admission and First Set of Interrogatories unquestionably confirm that Defendant, and not state officials, is responsible for a multitude of list maintenance activities. This action was brought because the Defendant has maintained, over the course of many years, corrupted voter rolls containing the names of more registrants than who, according to publicly-available data, are eligible to vote. (Complaint ¶¶ 17-20.) Section 8 of the NVRA exists to remedy this very circumstance, *id*. ¶¶ 14-15, and enjoining the Defendant will redress ACRU's claim.

### E.  The Fifth Circuit Decision Relied Upon by Defendant Is Distinguishable.

As in his first Motion to Dismiss, Defendant primarily relies upon a Fifth Circuit decision for its contention that Texas is the only proper defendant. *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014). However, the case is distinguishable for two very weighty reasons.

First, in *Scott*, the court was presented with Louisiana's implementation of an entirely different provision of the NVRA related to voter registration at state social service agencies, not the failure of a Texas county to reasonably maintain voter rolls. *Scott* involved a challenge pursuant to Section 7(a)(6) of the NVRA, which "requires [] voter registration agencies to provide all applicants with declination forms." *Id*. at 840. Under Section 7, state agencies are

designated as voter registration offices. It is a provision squarely and exclusively aimed at state governments, not at local governments. In *Scott*, the Louisiana Secretary of State sought to have the claim dismissed against it, arguing in part that "neither the NVRA nor Louisiana law provide[d] his office with the authority to enforce the NVRA" and, therefore, the plaintiffs' claims were not redressible. *Id*. at 838. The Fifth Circuit disagreed with the Louisiana Secretary of State's interpretation of Section 7, finding that he did have the power to enforce compliance with the NVRA with respect to state agencies. *Id*. at 838-39. This case is a case under Section 8, not a case under Section 7, of the NVRA. The two provisions are entirely distinct in topic, function and object. Section 7 is a voter registration obligation aimed at facilitating the registration of unregistered individuals who seek services from state government. Section 8, the law at issue in this case, is a list maintenance obligation aimed at removing ineligible registrants on rolls maintained by local officials in Texas.

Second, *Scott* did not address whether a plaintiff *must* name the Louisiana Secretary of State as a necessary party but, rather, whether enjoining the Secretary of State would redress the plaintiffs' concerns. In fact, below, the plaintiffs in *Scott* sought to enjoin two state agencies as well as the Secretary of State. *Scott v. Schedler*, 2013 U.S. Dist. LEXIS 9302, at *3-4 (E.D. La. January 22, 2013).[7] Specifically, as to the Secretary of State, "the injunction [sought] to require the [Secretary of State] to properly coordinate and direct voter registration agencies to develop uniform rules, regulations, forms, and instructions." *Id*. at *15. Here, replacing Defendant with the Secretary of State would not redress ACRU's injuries. As is explained above, ACRU claims that Defendant has failed to conduct reasonable list maintenance and failed to provide records

---

[7] The agencies did not appeal the injunction against them. *Scott*, 771 F.3d at 833.

and data in Defendant's possession, all claims that are redressible by injunctive relief against Defendant.[8]

Defendant also cites to the Sixth Circuit decision in *Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008) which, similar to *Scott*, concerned a challenge pursuant to Section 7 of the NVRA, not Section 8. *Id*. at 446. Again, Section 7 relates to obligations to conduct voter registration at state agencies.  Also, like *Scott*, the court considered whether the Ohio Secretary of State is a proper party, and not whether he should be the *only* party. *Id.* at 451-55. In fact, the court also found that Director of the Department of Job and Family Services for the State of Ohio was a proper party. *Id*. at 458. Thus, *Harkless* is not authority that supports Defendant's position.

### F.  ACRU Complied with the NVRA's Notice Requirement.

Defendant's allegation that ACRU failed to satisfy the NVRA's notice requirement of 52 U.S.C. § 20510(b) is also without merit for two reasons.

First, as is stated above, ACRU *did* send the requisite statutory notice to both Defendant and the Texas Secretary of State on December 23, 2015. (Dkt. 1-1 at 3 (copying Texas Secretary of State.)) Defendant wholly ignores this fact.

Second, Defendant is the most appropriate party to receive notice. Notices sent under the NVRA should be directed to the offending official who has the power to remedy the violation. The Defendant, not the Secretary of State, is the official in charge of maintaining Starr County's voter rolls and is the custodian of records sought by the ACRU.

---

[8] Another Fifth Circuit case cited by Defendant, *Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013), also does not support its Amended Motion. That case involved a challenge to "Texas's law regulating volunteer deputy registrars." *Id*. at 385. The challengers argued that the state laws were preempted by the NVRA. The court rejected that argument and found that the laws do not conflict. *Id*. at 400.

The ACRU's detailed, three-page, single-spaced letter notified Defendant that Starr County was in violation of Section 8 of the NVRA and advised Defendant that a lawsuit may be brought to ensure compliance with the requirements of the law. (Dkt. 1-1.) The legislative history of the NVRA "indicate[s] that Congress structured the notice requirement in such a way that notice would provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Ass'n of Community Orgs. For Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997). ACRU's letter did just that. Further, prior to filing this lawsuit, a representative of ACRU met with Defendant in order to discuss potential remedial efforts. Plaintiff's efforts failed, because Defendant did not agree to adopt remedial procedures suggested by the Plaintiff. (*See* Complaint, ¶¶ 28-29.)

Defendant appears to rely entirely on the omission of the words "voting registrar" or "local election official" from the notice provisions of 52 U.S.C. § 20510(b) claiming that notice must be sent to the state election official.  (Amended Motion at 22.) Given the concurrent obligations on local officials throughout the NVRA, and the delegation of responsibilities to the Defendant, as indicated in Texas law and further confirmed by Defendant's discovery responses and the Texas Secretary of State's memorandum on voter registration that Defendant attached to its Amended Motion, Defendant proffers an absurd interpretation of the notice provisions of 52 U.S.C. § 20510(b). Throughout the NVRA, concurrent obligations on local election officials are imposed. The NVRA does not inventory in every instance the list of obliged parties, as it also does not do in the notice provisions of 52 U.S.C. § 20510(b). Nevertheless, even if "local official" or "voter registrar" is not listed as obliged party in every section under the NVRA, the NVRA unquestionably obligates local officials, including Defendant, to comply with the terms.

Notably, the Western District of Texas found that a nearly identical letter from the ACRU to the Zavala County voter registrar survived a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Martinez-Rivera*, 2015 U.S. Dist. LEXIS 177883 at *29. As here, the ACRU's letter was addressed to the Zavala County voter registrar and copied the Texas Secretary of State. As here, the letter provided the proper statutory citations underpinning the alleged violations, set forth the organization's concerns that "Zavala County 'has significantly more voters on the registration rolls than it has eligible live voters[,]'" and "urged the recipient to work toward full compliance with the NVRA, warning that the failure to do so could result in a lawsuit and citing the provision of the NVRA that allows a private party to bring suit." *Id*. As in *Martinez-Rivera*, the ACRU's letter to Defendant "gives the Defendant enough information to diagnose the problem. At that point it was the Defendant's responsibility to attempt to cure the violation." *Id*. at *30.

Defendant claims that its argument regarding the adequacy of the pre-notice letter was not before the *Martinez-Rivera* court because the defendant there only raised concerns regarding the letter being too vague but, even if it did decide the issue Defendant now raises, it was erroneously decided. (Amended Motion at 22.) As to the first part, it is a strain to see how the *Martinez-Rivera* court's analysis of a substantially-similar letter does not address Defendant's concerns. As to whether the court erred, Defendant's interpretation of the proper party to receive notice is overly narrow and incorrect. Defendant's interpretation of the statute would misdirect notices away from the party most responsible for compliance with the particular provision of the NVRA (local officials) and toward state parties which do not have the primary responsibility to maintain the voter registration list in Starr County and are not custodians of the voting records for Starr County.

The district court in another NVRA case, *Project Vote v. Long*, 752 F.Supp.2d 697, (E.D. Va. 2010), *aff'd*, 682 F.3d 331, (4th Cir.2012), refused to apply an absurd result in interpreting the language of the NVRA. In *Project Vote*, the local registrar was found to be subject to the record keeping obligations of the NVRA. There, the plaintiff initially sent a public information request for election records to the local election official. After the local election official refused to provide the information, a representative of the state election official, *sue sponte*, sent a communication to plaintiff agreeing with the denial. *Id.* at 699-700. Thereafter, plaintiff asked the state to amend state guidelines which formed the basis of the denial of the plaintiff's request. *Id*.

> In this case at bar, as in *Public Citizen* and *Akins*, the NVRA provides a public right to information. There is no dispute that the plaintiff has been unable to obtain the Requested Records, which, in its view of the law, the NVRA requires the defendants to make publicly available. Moreover, the NVRA specifically provides a private right of action to any person who is aggrieved by a violation of the Public Disclosure Provision.

*Id.* at 703.  The Defendant's interpretation of the NVRA that notice letters should be directed to a state official who in not responsible for the maintenance of the records nor has control of the records sought, and when no state policies are challenged, should be rejected.

## CONCLUSION

For the reasons stated above, Defendant's Amended Motion should be DENIED.

Respectfully submitted,

For the Plaintiff ACRU:
Dated: August 4, 2016

 /s/  Eric Wiesehan
Eric Wiesehan SBN 24084094
Southern District Bar No.: 1690807
Wiesehan Law Firm, PLLC
P.O. Box 720938
McAllen, TX 78504
Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com

H. Christopher Coates*
LAW OFFICE of H. CHRISTOPHER COATES
934 Compass Point
Charleston, South Carolina 29412
Tel: (843) 609-7080
curriecoates@gmail.com

J. Christian Adams*
Kaylan L. Phillips*
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org

*Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2016, I caused the foregoing to be filed with the

United States District Court for the Southern District of Texas via the Court's CM/ECF system,

which will serve all registered users.


Dated: August 4, 2016

       /s/  Eric Wiesehan
       Eric Wiesehan SBN 24084094
       Southern District Bar No.: 1690807
       Wiesehan Law Firm, PLLC
       P.O. Box 720938
       McAllen, TX 78504
       Tel: (956) 207-2795
       Fax: (866) 311-5445
       wiesehanlaw@gmail.com