IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| AMERICAN CIVIL RIGHTS UNION, in its individual and corporate capacities, <br><br> *Plaintiff*, <br><br> v. <br><br> ELECTION ADMINISTRATOR RAFAEL R. MONTALVO, in in his official capacity; and TEXAS SECRETARY OF STATE CARLOS H. CASCOS, in his official capacity <br><br> *Defendants*. | Civil Action No. 7:16-cv-00103 |

## FIRST AMENDED COMPLAINT

Plaintiff, by its attorneys, brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §20507.

1. Plaintiff seeks declaratory and injunctive relief to compel compliance with Section 8 of the NVRA. Specifically, Defendant Montalvo has violated Section 8 by failing to make a reasonable effort to conduct voter list maintenance programs in elections for federal office and by failing to produce records and data related to those efforts, as required by Section 8. Plaintiff seeks injunctive relief commanding Defendant Montalvo to permit inspections of election records, pursuant to 52 U.S.C. §20507(i). Plaintiff also seeks a declaratory judgment against Defendant Montalvo and injunctive relief requiring both Defendants to conduct and execute reasonable voter list maintenance programs in a manner that is consistent with federal law.

**Exhibit 1**

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, as the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. §20510(b), as the action seeks injunctive and declaratory relief under the NVRA.

3. Venue in this Court is proper under 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PLAINTIFF ACRU

4. Plaintiff American Civil Rights Union, Inc. ("ACRU") is a non-profit corporation, incorporated in the District of Columbia, which promotes election integrity, compliance with federal election laws, government transparency, and constitutional government. Plaintiff ACRU brings this action in its individual and corporate capacities and also on behalf of its members and supporters who are registered to vote in the State of Texas.

5. Plaintiff ACRU has individual members and supporters. Members and supporters enable the mission of ACRU and some make financial contributions to support this mission.

6. An essential and core mission of the Plaintiff is to foster compliance with federal election laws, promote election integrity and ensure that only eligible voters may participate in American elections so as prevent dilution of legitimate votes by illegal votes.

7. Plaintiff has members and supporters in the State of Texas. Plaintiff's members and supporters in the State of Texas are registered to vote in the State of Texas. These members and supporters share Plaintiff's interest in the accuracy and currency of official lists of eligible voters in the State of Texas, as the accuracy and currency of these lists directly affect their right to vote.

8.　　Defendant Montalvo's actions and omissions have injured and continue to cause injury to members and supporters of Plaintiff who are registered to vote in the State of Texas because he is undermining their confidence in the integrity of the electoral process and potentially diluting the effectiveness of their vote.

9.　　It is unlikely that any individual supporter would have the ability or the resources to take action to protect their individual interests or redress the injury to their right to vote absent collective action by Plaintiff.

10.　　Plaintiff itself has been and continues to be harmed by the failure of Defendant Montalvo to provide substantive responses to requests for election data and the right to inspect election records concerning the Defendant's voter list maintenance programs and activities, an issue of substantial public importance especially in an election year. Not only has the refusal of Defendant Montalvo denied Plaintiff the ability to obtain records and data about an issue of substantial public importance, but it also is preventing Plaintiff from analyzing such records and information and disseminating its findings to the public. Consequently, Defendant Montalvo is injuring the ability of Plaintiff to carry out its public interest mission.

11.　　As an integral part of its public interest mission, Plaintiff disseminates information about compliance by state and local officials with federal election statutes, including election integrity statutes. A central activity of the Plaintiff is to promote election integrity and compliance with federal and state statutes which ensure the integrity of elections. Defendant Montalvo's violation of NVRA has impaired and will impair Plaintiff from carrying out this public interest mission. Plaintiff itself has been harmed by Defendant Montalvo's noncompliance with the NVRA.

## DEFENDANT- ELECTION ADMINISTRATOR MONTALVO

12. The Defendant, Starr County Election Administrator Rafael R. Montalvo, is the county registrar of voters. As registrar, Defendant Montalvo has the power to conduct voter registration and voter roll maintenance, pursuant to Tex. Elec. Code Ann. § 12.001, Tex. Elec. Code Ann. § 15.022(a), and Tex. Elec. Code Ann. § 31.043.

13. Section 8 of NVRA requires Defendant Montalvo, in conjunction with Defendant-Secretary of State, to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant . . . ." 52 U.S.C. §20507(a)(4)(A)-(B).

14. Pursuant to 52 U.S.C. §20507(d)(3), local registrars such as the Defendant Montalvo are specifically obliged to carry out these list maintenance duties and remove ineligible voters from the rolls. "A voting registrar *shall* correct an official list of eligible voters in elections for Federal office in accordance with change of residence information . . . . *Id.*

15. Moreover, Defendant Montalvo has a federal obligation to maintain accurate and current voter rolls which contain the names of only eligible voters residing in Starr County. Federal law requires "local election officials [to] perform list maintenance with respect to the computerized [state] list on a regular basis." 52 U.S.C. §21083(a)(2)(A).

16. In addition to these federal statutory obligations, numerous Texas statutes vest the primary power to place eligible persons' names on the Starr County voter registration list and to remove ineligible names from that list solely upon Defendant Montalvo. For example,

.

(a).    Tex. Elec. Code Ann. § 13.071 requires the local registrar to review an application for registration to determine whether the applicant is eligible to register under the law.

(b).    Tex. Elec. Code Ann. § 15.022(a) mandates "[t]he registrar shall make the appropriate corrections in the registration records, including, if necessary, deleting a voter's name from the suspense list."

(c).    Tex. Elec. Code Ann. § 15.022(b) specifically requires the local registrar to, at least monthly, "request from the United States Postal Service any available information indicating address reclassifications affecting the registered voters of the county."

(d).    Tex. Elec. Code Ann. § 15.081 and § 16.032 direct that the local registrar maintains the suspense list for his or her county, and in appropriate circumstances the local registrar is empowered to cancel the registration of certain persons on the voter suspense list.

(e).    Tex. Elec. Code Ann. § 16.002 and § 16.033 direct that when a court of competent jurisdiction adjudicates a person mentally incompetent and an abstract of that judgment is forwarded to the local registrar, the registrar will send a notice to the voter that cancellation of voter registration will occur unless the registrant attends a notice of examination hearing conducted by the registrar and prevails at the hearing.

(f).    Tex. Elec. Code Ann. §16.003 provides that the local registrar makes the determination whether the information provided by the Department of Public Safety concerning the felony conviction of a person is sufficiently strong to remove that person from the local voter registration list. *See also* Defendant Montalvo's First Amended Motion to Dismiss, Exhibit C at Dkt. 24 at 33 of 37.

(g).     Tex. Elec. Code Ann. § 16.031 states that "[t]he registrar shall cancel a voter's registration immediately on receipt of: (1) notice . . . that the voter's residence is outside the county; (2) . . . that the voter is deceased . . . (3) of a final judgment of the voter's . . . mental incapacity without the right to vote, conviction of a felony" or other notices indicating that the voter has an address outside the state or county for voting purposes.

(h).     Tex. Elec. Code Ann. § 16.0332 states that "the registrar shall cancel the voter's registration" . . . "if a voter fails to submit to the registrar proof of citizenship" within 30 days of being mailed a notice requesting such proof after the voter is "excused or disqualified from jury service because of citizenship status . . . ."

(i).     Tex. Elec. Code Ann. § 16.035 directs that when the local registrar cancels a voter's registration, that cancellation is effective immediately.

(j).     Tex. Elec. Code Ann. § 16.061 states that once the local registrar cancels a voter's registration, the voter has a right to challenge that cancellation at a hearing before the local registrar. After the hearing, the registrar is to issue a decision in writing concerning the challenge. Tex. Elec. Code Ann. § 16.066

(k).     Tex. Elec. Code Ann. § 18.001 requires the Defendant to prepare the certified list of registered voters eligible to vote in upcoming elections. This list is the government record which is used to determine eligibility to cast a ballot in a Texas election.

(l).     Tex. Elec. Code Ann. § 18.003 requires the Defendant, "[f]or each election held in the county in a voting year[,]" to "prepare and furnish to the authority responsible for procuring election supplies a certified list of corrections," containing "(1) the name of each person for whom the information on a list of registered voters furnished under Section 18.001 or

6

18.002 has changed because of cancellation or correction; and (2) an indication that the person's registration has been canceled or the corrected registration information."

17. Defendant Montalvo, in his capacity as the local registrar in Starr County, is a necessary party-Defendant in this suit for purposes of according Plaintiff full declaratory and injunctive relief.

## DEFENDANT-SECRETARY OF STATE CASCOS

18. Pursuant to the NVRA, "[each State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." 52 U.S.C. §20509.  Defendant-Secretary Cascos (hereinafter "Secretary") is the designated State officer for the State of Texas concerning coordination of supervisory duties and responsibilities under the NVRA and is named for purposes of obtaining complete relief against Defendant Montalvo.

19. For example, Texas Election Code Ann. §18.065(a), which is entitled "Secretary of State to Monitor Registrar's Compliance," provides that the Secretary "shall monitor each registrar for substantial compliance with Sections 15.083 (requiring the registrar to deliver a valid copy of the county's suspense list of voters to the Secretary); with substantial compliance with 16.032 (requiring the registrar's cancellation of registration of voters on the county suspense list of voters following general elections);  and with substantial compliance with 18.061(requiring the local registrar to provide the Secretary "on an expedited basis the information necessary to maintain the registration list"); and substantial compliance with rules promulgated by the Secretary that implement "the statewide computerized voter registration list." [*Information in Parenthetical Added*].

20. If the Secretary determines that a registrar "is not in substantial compliance with Sections 15.083, 16.032, and 18.061 of the Election Code, or with rules adopted by the Secretary regarding "implementation of the statewide computerized voter registration list," the Secretary is directed to "deliver written notice of the noncompliance to the registrar," along with "an explanation of the action necessary for substantial compliance." Texas Election Code Ann. Section 18.065(b). In addition, pursuant to Texas Election Code Ann. Section 18.064, entitled "Sanction for Noncompliance," if it is determined by the Secretary that a local registrar is not in substantial compliance, "the registrar is not entitled to receive state funds for financing voter registration in the county."

21. Accordingly, the Secretary is a proper party-Defendant in this suit for purposes of according Plaintiff full injunctive relief.

## FACTUAL BACKGROUND

22. Pursuant to Section 8 of the NVRA, Defendants "shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ." 52 U.S.C. §20507(i)(1).

23. Voter rolls maintained by the Defendant Montalvo contain more voters registered to vote than there are citizens eligible to vote residing in the county. According to the Secretary's Office, in 2014 Starr County had 30,198 registered voters despite having a citizen voting age population of only 27,975, according to the United States Census Bureau. Thus, more than 107 percent of living citizens old enough to vote are registered to vote in Starr County in 2016. This 27,975 figure includes voters who are on the "suspense list." According to the Secretary, "[a]n individual on the suspense list is still a registered voter and has the same rights as a non-suspense

8

list voter." *See*, Voter Registration, http://www.sos.state.tx.us/elections/vr/index.shtml. These rights include the right to vote. *Id*.

24. Starr County has had longstanding problems maintaining plausible numbers of registrants on the rolls. According to the Secretary's Office, in 2010 Starr County had 29,114 registered voters despite having a citizen voting age population of only 27,615, according to the United States Census Bureau. Therefore, approximately 105 percent of living citizens eligible to vote in Starr County were registered to vote there in 2010.

25. According Secretary's Office, in 2012 Starr County had 30,627 registered voters despite having a citizen voting age population of only 27,615, according to the United States Census Bureau. Thus, during the 2012 federal general election in Starr County about 110 percent of living citizens eligible to vote were registered.

26. Defendant Montalvo is responsible for allowing this circumstance to occur and persist over the past several election cycles. By failing to implement a program which takes reasonable steps to cure these circumstances, Defendant Montalvo has violated Section 8 of NVRA and other federal list maintenance statutes.

27. The failure of Defendant Montalvo to comply with its obligations under federal voter registration laws has undermined the confidence of Texas' properly registered voters in the integrity of the voter registration rolls and, accordingly, has undermined the integrity of elections held across the State of Texas.

28. On December 23, 2015, Susan Carleson, the President of the ACRU, writing on behalf of ACRU and its members and supporters who are registered to vote in the State of Texas, sent a statutory notice letter to Defendant Montalvo notifying him that Starr County was in violation of federal voter registration laws. (Attached as Exhibit A.) The notice letter informed

the Defendant Montalvo that "your county is in apparent violation of Section 8 of the National Voter Registration Act based on our research." (Exhibit A at 1.) The letter explained that, "[b]ased on our comparison of publicly available information published by the U.S. Census Bureau and the federal Election Assistance Commission, your county is failing to comply with Section 8 of the NVRA." *Id*. The letter, *inter alia*, stated: "[i]n short, your county has significantly more voters on the registration rolls than it has eligible living citizen voters." *Id*. A copy of the letter was also forwarded to the Secretary. (Exhibit A at 2).

29. The December 23, 2015 letter also sought a variety of publicly available information which would tend to indicate whether or not Starr County was in compliance with NVRA and other federal laws. (Exhibit A at 2.) Among the data requested were current registration data, the numbers of voters purged pursuant to maintenance obligations, the number of notices sent to inactive voters, the number of voters removed due to criminal conviction, and the most recent number of registered voters. *Id*.

30. The December 23, 2015 letter also requested that the Defendant Montalvo make available for public inspection all records concerning "the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency" of official lists of eligible voters, explaining that the Defendant was required to make such records available under Section 8 of the NVRA. *Id*., (quoting 52 U.S.C. § 20507(i)).

31. The December 23, 2015 letter also stated that a lawsuit may be brought to ensure compliance with the requirements of federal voter registration laws. (Exhibit A at 2.)

32. The Plaintiff has spent considerable time and financial resources in an effort to encourage citizens of Starr County to petition the Defendant Montalvo to cure any violations of

the NVRA and also spent time and financial resources directly seeking a cure to voter rolls in Starr County which contain more registrants than eligible citizens who reside in Starr County.

33. In January 2016, the ACRU initiated contact with Defendant Montalvo in an effort to remedy the failure to reasonably maintain the voter rolls. Prior to filing this action, the ACRU expended considerable time, energy, and monetary costs to encourage the implementation of a systemic effort to clean the Starr County registration records.

34. A representative of the Plaintiff traveled to Starr County in January 2016 and met with the Defendant Montalvo to discuss areas of concern, potential remedial efforts, and requested current registration numbers.

35. Plaintiff's pre-filing efforts to cure the defects in registration rolls through requesting the implementation of a systemic process of list maintenance failed because Defendant would not agree to adopt additional remedial procedures suggested by the Plaintiff.

## COUNT I

### (Violation of the NVRA: Failure to Conduct List Maintenance)

36. Plaintiff re-alleges paragraphs 1 through 35 as if fully stated herein.

37. Defendant Montalvo has failed to make reasonable efforts to conduct voter list maintenance programs in violation of Section 8 of NVRA, 52 U.S.C. §20507 and 52 U.S.C. §21083(a)(2)(A).

38. Plaintiff has suffered an irreparable injury as a direct result of the violation of Section 8 of the NVRA and 52 U.S.C. §21083(a)(2)(A). This failure to comply with the NVRA has aggrieved Plaintiff by impairing its essential and core mission of fostering compliance with federal election laws, promotion of election integrity and avoiding vote dilution when ineligible

voters participate in elections. This failure to comply with the NVRA has caused the Plaintiff pecuniary injury.

39. Plaintiff's members and supporters in Texas will continue to be injured by these violations of Section 8 of the NVRA because confidence in the legitimacy of elections in Texas will be undermined and burden their right to vote unless and until Defendant Montalvo is enjoined from continuing to violate the law.

40. Plaintiff has no adequate remedy at law.

## COUNT II

### (Violation of the NVRA: Failure to Produce Records and Data)

41. Plaintiff re-alleges paragraphs 1 through 40 as if fully stated herein.

42. Defendant has failed to substantively respond to Plaintiff's written request for data and failed to provide records to Plaintiff concerning Defendant Montalvo's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters for Starr County, in violation of Section 8 of the NVRA, 52 U.S.C. §20507(i).

43. Plaintiff has suffered an irreparable informational injury as a direct result of Defendant Montalvo's violation of Section 8 of the NVRA because the Plaintiff does not have the data and records requested. The NVRA confers upon Plaintiff an individual right to information, and by denying that information to Plaintiff, Defendant Montalvo caused a concrete injury to Plaintiff.

44. Plaintiff will continue to be injured by Defendant Montalvo's violations of Section 8 of the NVRA unless and until Defendant Montalvo is enjoined from continuing to violate the law.

45. Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

1. Declaring that Defendant Montalvo is in violation of Section 8 of the NVRA;

2. Enjoining Defendant Montalvo from failing or refusing to comply with the voter registration list maintenance requirements of Section 8 of the NVRA in the future;

3. Enjoining the Secretary from failing to carry out any of the coordination and supervisory duties that he is required to do under either Section 8 of the NVRA or under the Texas Election Code that would help ensure that reasonable list maintenance of the voter rolls is performed by Defendant Montalvo;

4. Ordering Defendant Montalvo to substantively respond to Plaintiff's written request for records concerning his implementation of programs and activities to ensure the accuracy and currency of Starr County's voter registration list.

5. Ordering Defendants to pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. §20510(c); and

6. Granting Plaintiff further relief that this Court deems just and proper, including potential preliminary injunctive relief to ensure that the 2016 Texas statewide election is not conducted in Starr County using voter rolls with ineligible registrants.


Dated: September 23, 2016

                                              Respectfully submitted,

For the Plaintiff ACRU:

                                              /s/ Eric Wiesehan
                                              Eric Wiesehan
                                              Wiesehan Law Firm, PLLC
                                              P.O. Box 720938
                                              McAllen, TX 78504

Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com

H. Christopher Coates*
LAW OFFICE of H. CHRISTOPHER COATES
934 Compass Point
Charleston, South Carolina 29412
Tel: (843) 609-7080
curriecoates@gmail.com

J. Christian Adams*
Kaylan L. Phillips*
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org

*Admitted Pro Hac Vice*

# The American Civil Rights Union

*"Protecting the civil rights of all Americans."*

www.theacru.org

**Founder**
Hon. Robert B. Carleson (1931-2006)

**Policy Board**
Hon. Edwin Meese III
Hon. William Bradford Reynolds
Amb. Curtin Winsor, Jr.
Dr. Walter E. Williams
Hon. Charles J. Cooper
Hon. J. Kenneth Blackwell
J. Christian Adams
Hans von Spakovsky
Christopher Coates

**Members Emeritus**
Hon. Linda L. Chavez
Hon. Kenneth Y. Tomlinson
Judge Robert H. Bork
Dean Kenneth W. Starr
Dean J. Clayburn LaForce, Jr.
Dr. James Q. Wilson

**Board of Directors**
Susan A. Carleson, Chairman
Hon. Edwin Meese III
Wendy Borcherdt LeRoy
Morton C. Blackwell
David A. Leedom

Susan A. Carleson, President
Christopher Coates, General Counsel
Mike Korbey, Managing Director

December 23, 2015

VIA FEDERAL EXPRESS

Rafael Rodolfo Montalvo
Elections Administrator
Starr County
100 N. FM 3167
Ste. 206
Rio Grande City TX 78582

Dear Mr. Montalvo:

I am writing on behalf of the American Civil Rights Union (ACRU) to notify you that your county is in apparent violation of Section 8 of the National Voter Registration Act based on our research.

The ACRU is a nonpartisan, nonprofit organization dedicated to protecting the civil rights of all Americans by publicly advancing a Constitutional understanding of our essential rights and freedoms. As part of that mission, we work to improve the integrity of American elections by promoting and protecting the rights of legally qualified voters regardless of political party.

Voter rolls across America have been discovered that contain substantial numbers of ineligible voters, resulting in the possible disenfranchisement of legally eligible voters via ballot dilution that threatens to subvert the nation's electoral process.

Based on our comparison of publicly available information published by the U.S. Census Bureau and the federal Election Assistance Commission, your county is failing to comply with Section 8 of the NVRA. Federal law requires election officials to conduct a reasonable effort to maintain voter registration lists free of dead voters, ineligible voters and voters who have moved away. *See* 52 U.S.C. §§ 20503 and 20507.

In short, your county has significantly more voters on the registration rolls than it has eligible living citizen voters - approximately 109 percent of eligible living citizens are registered to vote.

**PLAINTIFF'S EXHIBIT A**

3213 Duke Street, #625    Alexandria, VA 22314    Phone: 877.730.ACRU (2278)    Fax: 703.566.2322    E-mail: info@theacru.org

The Attorney General of the United States may enforce the list maintenance requirements of Section 8 of NVRA to ensure that ineligible voters are not participating in the political process, but he has failed to do so. The ACRU has therefore taken on the task of notifying you of your county's violation.

This letter serves as the statutory notice to your county, as required by 52 U.S.C. § 20510(b), prior to the commencement of any lawsuit in order to enforce provisions of Section 8 of the National Voter Registration Act 52 U.S.C. § 20507.

It is our hope that your county will work quickly towards full compliance with 52 U.S.C. § 20507. If not, according to the federal statute, a lawsuit under the NVRA may be filed twenty (20) days after the receipt of this notice by a private party since the NVRA contains a private right of action to enforce the provisions of the statute. For any lawsuits initiated by a private party, an award of attorney's fees, expenses and costs incurred are available under 52 U.S.C. §20510(c).

If you believe the information reported by the Election Assistance Commission (EAC) for 2014 or to the Secretary of State currently is inaccurate, please state the basis for that belief. In particular, if the publicly available information cited above is no longer accurate, it would be helpful if you could provide:

   (a) up-dated registration data since the publication of the 2015 EAC report;

   (b) records obtained from Texas's district court clerks, United States District Court clerks or other sources regarding individuals who were ineligible to serve on juries because of a lack of American citizenship;

   (c) the number of ineligible voters purged by category (e.g., dead, duplicate, ineligible) and by date;

   (d) the source agency that provided the identifying information of the purged deceased;

   (e) the date of the deceased data, meaning how fresh the deceased data was that was provided by third-party agencies;

   (f) the number of notices sent to inactive voters since the publication of the EAC report including the date, scope and contents of any countywide mailing to all registered voters;

   (g) the names of the staff in your office responsible for conducting list maintenance obligations;

   (h) the number of ineligible voters removed for criminal conviction, if applicable, and the date of the most recent dataset containing criminal convictions against which you compared voter lists, including communications with other agencies regarding criminal convictions;

   (i) the total number of voters registered in your county as of the date of your response;

   (j) any records indicating the use of citizenship or immigration status for list maintenance activities, including but not limited to the SAVE database; and

   (k) all list maintenance records including federal voter registration forms containing citizenship eligibility questionnaires.

Section 8 also requires your county office to make available for public inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i). *See also, Project Vote v. Long*, Slip Op. 11-1809 (4th Cir. June 12, 2012) (NVRA requires local election officials to provide voter registration data to the public).

We would like to visit and meet with your office to discuss the possibility of implementing a plan which would cure what appears to be a violation of Section 8 of the NVRA.

We are hopeful that full compliance with our request will make a public inspection of your county's registration data unnecessary; and we are particularly hopeful that the data contained in your response might demonstrate that reasonable voter list maintenance is currently being performed in your county. If not, we would like to inspect your registration records at a time convenient to the responsible county officials prior to January 30, 2016.

Since steps necessary to ensure that only eligible voters are on the rolls will not involve significant effort or cost, we believe it is reasonable to expect your county's voter roll violations to be resolved before voting begins for the March 1, 2016 primary election and the November 2016 general election.

Thank you for your time and attention to this matter. Please feel free to call to arrange a convenient time to discuss and arrange an inspection by contacting me at the below phone number or email.

Sincerely,

Susan A. Carleson
Chairman / CEO
American Civil Rights Union

703.566.2696
Susan.Carleson@theacru.org


CC: The Hon. Carlos Cascos
Texas Secretary of State
P.O. Box 12060
Austin, TX 78711-2060
Email: KIngram@sos.state.tx.us

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2016, I caused the foregoing to be filed with the United States District Court for the Southern District of Texas via the Court's CM/ECF system, which will serve all registered users.

Dated: September 23, 2016

     /s/  Eric Wiesehan
Eric Wiesehan SBN 24084094
Southern District Bar No.: 1690807
Wiesehan Law Firm, PLLC
P.O. Box 720938
McAllen, TX 78504
Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com