IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AMERICAN CIVIL RIGHTS UNION, | § | |
| in its individual and corporate capacities, | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 7:16-CV-00103 |
| | § | |
| ELECTION ADMINISTRATOR | § | |
| RAFAEL R. MONTALVO, in his official | § | |
| capacity; and TEXAS SECRETARY OF | § | |
| STATE CARLOS H. CASCOS, in his | § | |
| official capacity, | § | |
|     *Defendants.* | § | |

## DEFENDANT CARLOS H. CASCOS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................ii

TABLE OF AUTHORITIES ........................................................................iii

    I.      INTRODUCTION AND EXECUTIVE SUMMARY................................ 1

    II.    PROCEDURAL POSTURE.................................................................... 2

    III.   LEGAL STANDARD ............................................................................. 3

    IV.   RULE 12(B)(1) – FAILURE TO PROVIDE NOTICE ............................. 4

          A.    The NVRA's pre-suit notice requirement is jurisdictional. ......... 4

          B.    ACRU's notice to Defendant Montalvo did not identify any
               NVRA violations committed by the State of Texas. ..................... 5

          C.    ACRU's "notice" to Defendant Cascos is insufficient to confer
               jurisdiction in this Court. ............................................................ 6

    V.    RULE 12(b)(6) – FAILURE TO STATE A CLAIM. ................................ 9

    VI.   CONCLUSION ..................................................................................... 11

CERTIFICATE OF SERVICE ..................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Amacker v. Renaissance Asset Mgmt. LLC,*
    657 F.3d 252 (5th Cir. 2011) .................................................................. 10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................... 4, 11

*Ass'n of Cmty. Orgs. for Reform Now v. Miller,*
    129 F.3d 833 (6th Cir. 1997) .................................................................. 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................ 4, 10, 11

*Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council,*
    364 F.3d 269 (5th Cir. 2004) .................................................................. 3

*Exelon Wind 1, L.L.C. v. Nelson,*
    766 F.3d 380 (5th Cir. 2014) .................................................................. 3

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,*
    484 U.S. 49 (1987) .................................................................... 8

*Hooks v. Landmark Indus., Inc.,*
    797 F.3d 309 (5th Cir. 2015) .................................................................. 3

*In re Great Lakes Dredge & Dock Co. LLC,*
    624 F.3d 201 (5th Cir. 2010) .................................................................. 4

*Johnson v. United States,*
    502 F. App'x 412 (5th Cir. 2012) .................................................................. 3

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .................................................................... 3

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit,*
    369 F.3d 464 (5th Cir. 2004) .................................................................. 4

*Meyer v. Brown & Root Constr. Co.,*
    661 F.2d 369 (5th Cir. 1981) .................................................................. 10

*Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen,*
    152 F.3d 283 (4th Cir. 1998) .................................................................. 5

*Paolino v. JF Realty, LLC,*
    710 F.3d 31 (1st Cir. 2013) .................................................................. 8

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) .................................................................... 10

*Scott v. Schedler,*
  771 F.3d 831 (5th Cir. 2014) .................................................................... passim

**Statutes**

33 U.S.C. § 1365(b)(1)(A) .......................................................................... 8

40 C.F.R. § 135.3(a) .................................................................................. 9

52 U.S.C. § 20506 .................................................................................... 11

52 U.S.C. § 20507 .................................................................................. 2, 5

52 U.S.C. § 20507(a)(4) ....................................................................... 10, 11

52 U.S.C. § 20507(i) .................................................................................. 2

52 U.S.C. § 20510(b) ................................................................................. 6

52 U.S.C. § 20510(b)(1) ......................................................................... 1, 4

52 U.S.C. § 20510(b)(2) ............................................................................ 5

52 U.S.C. § 20510(b)(3) ............................................................................ 5

52 U.S.C. § 21083(a)(1)(A) ..................................................................... 11

52 U.S.C. § 21083(a)(2)(A) ..................................................................... 11

52 U.S.C. § 21083(a)(2)(A) ....................................................................... 2

Tex. Elec. Code § 18.065(a) .................................................................. 10

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................... 3-4

Defendant Carlos H. Cascos, in his official capacity as Texas Secretary of State ("Defendant Cascos"), respectfully files this Motion to Dismiss Plaintiff's First Amended Complaint.

## I.    INTRODUCTION AND EXECUTIVE SUMMARY

Before filing suit under the National Voter Registration Act of 1993 ("NVRA"), a plaintiff must "provide written notice of the violation [of the NVRA] to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). This pre-suit notice requirement is jurisdictional. *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014).

In December 2015, Plaintiff American Civil Rights Union ("ACRU") sent a letter to Defendant Rafael R. Montalvo ("Defendant Montalvo"), the Starr County Elections Administrator, contending that Starr County was "in apparent violation of Section 8" of the NVRA. Plaintiff's First Amended Complaint ("Am. Compl."), Ex. A at 1 (ECF No. 49). The letter made no mention of any state-level NVRA violations, focusing exclusively on purported inaction by Defendant Montalvo in maintaining Starr County's voter registration rolls. Whatever can be said of ACRU's letter as it applies to claims against Defendant Montalvo, it does not suffice to notify Defendant Cascos that his agency—or any other agency or individual affiliated with the State of Texas—was acting in violation of the NVRA. This Court thus lacks jurisdiction to hear ACRU's claims against Defendant Cascos.

Even assuming ACRU could overcome the NVRA's jurisdictional bar for failing to provide sufficient pre-suit notice (it cannot), ACRU's claims against Defendant Cascos should be dismissed under Federal Rule of Civil Procedure 12(b)(6). ACRU

has not put forward a single allegation—not even a conclusory one—that the State of Texas (or any of its agencies) has violated the NVRA. Nor could ACRU clear this pleading hurdle even if it had tried to do so in its Amended Complaint. The entire premise of ACRU's suit is that Starr County—not Defendant Cascos or the State of Texas—has failed to comply with Section 8 of the NVRA. ACRU does not present any facts to establish otherwise. Its claims against Defendant Cascos should be dismissed under Rule 12(b)(6).

## II.    PROCEDURAL POSTURE

In its Amended Complaint, ACRU alleges that Defendant Montalvo has "failed to make reasonable efforts to conduct voter list maintenance programs in violation of Section 8 of the NVRA, 52 U.S.C. § 20507 and 52 U.S.C. § 21083(a)(2)(A)." Am. Compl. ¶ 37. ACRU also contends that Defendant Montalvo has not substantively responded to written requests for data with respect to programs and activities to ensure the accuracy of eligible voter lists, in violation of 52 U.S.C. § 20507(i). Am. Compl. ¶ 42. ACRU explains that it tried to reach a resolution with Defendant Montalvo before filing suit but these attempts were unsuccessful. *Id.* ¶¶ 33-35.

Defendant Cascos is named for the first time in the Amended Complaint. ACRU asserts that Defendant Cascos is "the designated State officer for the State of Texas concerning coordination of supervisory duties and responsibilities under the NVRA." *Id.* ¶ 18. According to ACRU, Defendant Cascos is named in the suit "for purposes of obtaining complete relief against Defendant Montalvo." *Id.* The Amended Complaint does not identify any purported NVRA violations that are attributable to

Defendant Cascos or the State of Texas. *Id.* ¶¶ 18, 36-45. Defendant Cascos now files this Motion, seeking his dismissal from this suit.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. When the court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). The party asserting federal jurisdiction bears the burden of proving jurisdiction exists. *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014). This requires, among other things, that a plaintiff have standing to assert its claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must demonstrate an injury-in-fact that is fairly traceable to the defendant's actions and likely to be redressed by a favorable decision. *Id.*; *Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 364 F.3d 269, 272 (5th Cir. 2004). A court can find subject-matter jurisdiction lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 502 F. App'x 412, 414 (5th Cir. 2012) (citation and internal quotation marks omitted). As such, the Court can consider ACRU's December 2015 letter to Defendant Montalvo in determining its jurisdiction.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper when a plaintiff's complaint fails to state a claim upon which relief can be granted. FED. R.

CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff cannot rely merely on "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Instead, the plaintiff's factual allegations "must be enough to raise a right of relief above the speculative level." *Twombly,* 550 U.S. at 555 (citation omitted). In ruling on a Rule 12(b)(6) motion to dismiss, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (citation and internal quotation marks omitted), but need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions," *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citations and internal quotation marks omitted).

## IV.    RULE 12(B)(1) – FAILURE TO PROVIDE NOTICE

### A.    The NVRA's pre-suit notice requirement is jurisdictional.

A critical component of the NVRA's remedial framework is the pre-suit notice requirement. This prerequisite states that a plaintiff "may provide written notice of the violation [of the NVRA] to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). The Fifth Circuit has explained that "[a]lthough notice is framed here as permissive rather than mandatory, other NVRA provisions indicate that notice is mandatory." *Schedler*, 771 F.3d at 835. As an illustration, "the NVRA provides that '[i]f the violation is not corrected within 90 days after receipt of [the]

4

notice . . . the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.'" *Id.* (quoting 52 U.S.C. § 20510(b)(2) (alterations in original)). Thus, a plaintiff lacks standing to pursue an NVRA claim "if no proper notice is given, since the 90-day period never runs." *Schedler*, 771 F.3d at 835 (citation omitted); *see also Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen,* 152 F.3d 283, 286 n.2 (4th Cir. 1998) ("Before suing for declaratory or injunctive relief under the [NVRA], a person must (in most cases) give the state's chief election official prior written notice of the alleged violation.").[1]

## B.    ACRU's notice to Defendant Montalvo did not identify any NVRA violations committed by the State of Texas.

Before filing this suit, ACRU sent a letter to Defendant Montalvo on December 23, 2015. It is replete with allegations that Starr County has violated Section 8 of the NVRA. Am. Compl., Ex. A at 1. Yet, ACRU says nothing about the State of Texas' role in any of those purported violations. *See id.* For example, the letter states:

- "[Y]our county has significantly more voters on the registration rolls than it has eligible living citizen voters – approximately 109 percent of eligible living citizens are registered to vote." *Id.*

- The United States Attorney General has failed to enforce the "list maintenance requirements of Section 8 of [the] NVRA," and ACRU "has therefore taken on the task of notifying you of your county's violation." *Id.* at 2.

- "It is our hope that your county will work quickly towards full compliance with 52 U.S.C. § 20507." *Id.*

---

[1] Notice is not required only if the violation "occurred within 30 days before the date of an election for Federal office." 52 U.S.C. § 20510(b)(3). ACRU does not advance any facts to demonstrate that this exception applies here.

- "Section 8 also requires your county office to make available for public inspection 'all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" *Id.* (citations omitted).

- "[W]e believe it is reasonable to expect your county's voter roll violations to be resolved before voting begins for the March 1, 2016 primary election and the November 2016 general election." *Id.* at 3.

Most critically, ACRU states in its letter that (1) it seeks a meeting with Defendant Montalvo "to discuss the possibility of implementing" a remedial plan to address Starr County's alleged Section 8 violation; and (2) the letter "serves as the statutory notice to your county, as required by 52 U.S.C. § 20510(b), prior to the commencement of any lawsuit in order to enforce provisions of" the NVRA. *Id.* at 2-3. The letter is not directed at the State of Texas—apart from copying the Secretary of State's Director of Elections—and does not identify any lack of NVRA compliance by the State.

## C.   ACRU's "notice" to Defendant Cascos is insufficient to confer jurisdiction in this Court.

The NVRA's notice requirement provides "states in violation of the Act an opportunity to attempt compliance before facing litigation." *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997). ACRU's December 2015 letter did not afford Defendant Cascos this opportunity. The letter focused entirely on Starr County's purported failure to comply with the NVRA. It made no reference to any obligations imposed on the State under Section 8 or explain how, if at all, the State was violating those obligations. And, most problematically, it did not give Defendant Cascos any context from which he could reasonably infer that the State needed to bring itself into compliance with the NVRA by performing any of his duties

6

differently. Yet, without this information, there was no way the State could determine what actions, if any, were needed to resolve the circumstances before ACRU filed suit.

Nor does ACRU's December 2015 letter give any indication to a reasonable reader that voter roll maintenance problems exist throughout Texas. To the contrary, the letter alleges a national problem—*i.e.*, "[v]oter rolls across America have been discovered that contain substantial numbers of ineligible voters"—and then narrows the focus to Starr County. Am. Compl., Ex. A at 1. In doing so, ACRU makes no effort to identify Defendant Cascos as a responsible party for resolving the challenged voter roll issues. This is a critical defect in ACRU's notice. After all, there are 254 counties in Texas; the letter identifies only one county's alleged inaction. By linking its purported injury to Starr County's non-compliance, ACRU failed to put Defendant Cascos on notice that any voter roll problems were statewide in nature or otherwise redressable by the State.

*Schedler* is instructive on this point. There, two plaintiffs—the NAACP and Scott—brought suit under the NVRA against the Louisiana Secretary of State. 771 F.3d at 832. Scott did not provide pre-suit notice but maintained that the NAACP's notice to the state covered his claims. *Id.* at 835. The Fifth Circuit disagreed and concluded that Scott could not "piggyback on the NAACP's notice." *Id.* at 836. While Scott contended that he was not provided a voter registration form when applying for food stamps, the NAACP's notice alleged broad NVRA violations involving voter registration services and did not mention Scott or the issues that Scott raised in his complaint. *Id.* at 833, 836. What is more, after Louisiana learned of Scott's

allegations when he filed his complaint, it tried to provide Scott with voter registration forms—"'exactly [the] sort of compliance attempt' that 'pre-litigation notice was meant to encourage.'" *Id.* (alteration in original) (citation omitted). Scott thus had no basis for relief on his NVRA claims. So too here: ACRU relies on its December 2015 correspondence to assert claims against Defendant Cascos, but that letter provided no notice that the State was violating the NVRA in any manner. The lack of pre-suit notice is fatal to ACRU's claims against Defendant Cascos.

The same result would be true for other federal statutes where Congress has mandated that governmental entities receive a pre-suit chance to comply with their statutory obligations. Under the Clean Water Act, for instance, a citizen plaintiff "must give notice of the alleged violations to the state in which they occurred, the EPA Administrator, and the putative defendant(s)." *Paolino v. JF Realty, LLC*, 710 F.3d 31, 35 (1st Cir. 2013) (citing 33 U.S.C. § 1365(b)(1)(A)). The Supreme Court has explained that the Clean Water Act's notice requirement is primarily designed to give the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 60 (1987); *see also Paolino*, 710 F.3d at 37 (recognizing that the notice must "place the defendant in a position to *remedy* the violations alleged"). For that reason, regulations promulgated by the Environmental Protection Agency require the Clean Water Act notice to provide

> sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or

8

dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). Applying a similar standard here, there can be little question that ACRU's December 2015 letter provides inadequate notice to the State of Texas. The letter not only fails to identify any statutory provisions that Defendant Cascos violated, but it also does not specify any action—or inaction—that constitutes a violation of the NVRA and which is attributable to the State. *Id.*

Because ACRU's December 2015 letter did not provide sufficient pre-suit notice to Defendant Cascos under the NVRA, ACRU has no standing to assert any claims against Defendant Cascos. The Court lacks jurisdiction to consider those claims, and they should be dismissed.

## V.    RULE 12(b)(6) – FAILURE TO STATE A CLAIM

ACRU's Amended Complaint follows the same theme as its pre-suit notice. That is, ACRU articulates no factual basis to support a viable NVRA claim against Defendant Cascos. Dismissal is appropriate under Rule 12(b)(6).

The Amended Complaint is clear from the outset that it is Defendant Montalvo—not Defendant Cascos—who has purportedly violated Section 8 of the NVRA. *E.g.*, Am. Compl. ¶ 1. Indeed, ACRU acknowledges that Defendant Cascos is being named as a party only "for purposes of obtaining complete relief against Defendant Montalvo." *Id.* ¶ 18. In that vein, ACRU seeks a court order "[e]njoining the Secretary from failing to carry out any of [his] coordination and supervisory duties." *Id.*, Prayer for Relief ¶ 3. But the Amended Complaint does not offer a single allegation that Defendant Cascos has failed to discharge his duties under the NVRA.

9

*See Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011) ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation and internal quotation marks omitted)). Nor does ACRU otherwise state any facts that would "nudge[ ]" its NVRA claims against Defendant Cascos "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.[2]

At its core, ACRU asks for an "obey-the-law" injunction that is unmoored to any specific actions that Defendant Cascos has undertaken (or failed to undertake). That is plainly impermissible. *See Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) ("A general injunction which in essence orders a defendant to obey the law is not permitted."). Having failed to allege any facts that would allow it to proceed against Defendant Cascos, ACRU's claims should be dismissed.

That ACRU has not stated a viable NVRA claim against Defendant Cascos is unsurprising. Section 8 requires, in relevant part:

> [E]ach State shall . . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant . . . .

52 U.S.C. § 20507(a)(4). Other federal law mandates that each State "implement . . . a single, uniform, official, centralized, interactive computerized statewide voter

---

[2] In its Amended Complaint, ACRU identifies provisions of the Texas Election Code requiring Defendant Cascos to monitor local registrars' compliance with certain voter registration functions. *E.g.*, Am. Compl. ¶ 19 (citing TEX. ELEC. CODE § 18.065(a)). Whatever the precise scope of Defendant Cascos' obligations under the Texas Election Code, though, they offer no basis for the Court to issue the requested injunctive relief here. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

registration list defined, maintained, and administered at the State level," and further provides that "[t]he appropriate State or local election official shall perform list maintenance with respect to the computerized state list on a regular basis." Help America Vote Act ("HAVA"), 52 U.S.C. § 21083(a)(1)(A), (a)(2)(A). This suit targets one county's maintenance of its voter rolls. ACRU does not plead that the State of Texas has failed to "conduct a general program" for removing ineligible voters from registration rolls or that the State has violated any other NVRA provisions. 52 U.S.C. § 20507(a)(4). Likewise, although ACRU references certain list maintenance duties held by state and local election officials under HAVA, Am. Compl. ¶¶ 15, 37-38, it makes no effort to contend that the State has failed to comply with HAVA in any way.

In short, ACRU has not alleged sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. All claims against Defendant Cascos should therefore be dismissed.[3]

## VI.   CONCLUSION

The Court should dismiss ACRU's claims against Defendant Cascos and grant any further relief, in law or equity, to which he is justly entitled.

---

[3] *Schedler* is not to the contrary. In that case, the Fifth Circuit concluded that the NAACP had standing to pursue a claim against the Louisiana Secretary of State for violating Section 7 of the NVRA—a provision that requires states to offer voter registration opportunities at offices that provide public assistance or that provide programs offering services to individuals with disabilities. 771 F.3d at 838-40; *see* 52 U.S.C. § 20506. The Fifth Circuit reasoned that the Louisiana Secretary of State possessed "the authority to enforce the NVRA with respect to state agencies." 771 F.3d at 838. To grant this Motion to Dismiss, the Court need not decide the extent to which that rationale applies to claims like those asserted here—*i.e.*, that local officials have failed to perform their responsibilities under Section 8 of the NVRA. It only has to conclude that ACRU has not offered any facts to state a plausible Section 8 claim against the State. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Nothing in *Schedler* alters ACRU's pleading obligations.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Division Chief, General Litigation Division


/s/  *Adam N. Bitter*
ADAM N. BITTER
Tx. State Bar No. 24085070
Southern District of Texas No. 2167538
MICHAEL R. ABRAMS
Tx. State Bar No. 24087072
Southern District of Texas No. 2513900
Assistant Attorneys General
Office of the Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 475-4055; Fax: (512) 320-0667
adam.bitter@oag.texas.gov
michael.abrams@oag.texas.gov

**Counsel for Defendant Carlos H. Cascos, in his official capacity as Texas Secretary of State**

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of December, 2016, the foregoing *Defendant Carlos H. Cascos' Motion to Dismiss Plaintiff's First Amended Complaint* was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorney(s) and/or parties of record, via the CM/ECF service and/or via electronic mail.

/s/  *Adam N. Bitter*
ADAM N. BITTER
Assistant Attorney General

13