IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| AMERICAN CIVIL RIGHTS UNION, in its individual and corporate capacities, *Plaintiff*, <br><br> v. <br><br> ELECTION ADMINISTRATOR RAFAEL R. MONTALVO, in in his official capacity, and TEXAS SECRETARY OF STATE CARLOS H. CASCOS, in his official capacity. *Defendants*. | Civil Action No. 7:16-cv-00103 |

## PLAINTIFF ACRU'S RESPONSE TO DEFENDANT CASCOS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Plaintiff American Civil Rights Union (ACRU), in its individual and corporate capacities, respectfully files this Response to Defendant Secretary of State Cascos' (hereinafter "the Secretary") Motion to Dismiss Plaintiff's First Amended Complaint.

### I. DEFENDANT SECRETARY'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED.

In support of his motion to dismiss, the Secretary argues that Plaintiff has not alleged or provided a factual basis to support a National Voter Registration (NVRA) claim against the Secretary and that in the absence of an alleged cause of action against the Secretary by Plaintiff, a motion to dismiss Plaintiff's First Amended Complaint against Secretary should be granted. Dkt. No. 55 at 13-17. For numerous reasons as argued below, this contention is not meritorious and should be rejected by this Court.

**A. Since the requirements of Rule 20, F.R.Civ. P., are satisfied here, this Court is permitted to join Defendant Secretary, whether or not Plaintiff claims Defendant Secretary has violated the NVRA.**

Pursuant to Rule 20(a)(2), F.R. Civ. P., "Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted is against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." In addition, a defendant may be permissively joined under Rule 20(a)(3) even though that joined defendant may not be interested in defending "against all the relief demanded" by the plaintiff from other defendants in the action. *Id.* at (a)(3). In deciding whether to allow a party to be permissively joined under Rule 20, the Fifth Circuit Court of Appeals has held that district courts have broad discretion to allow or deny permissive joinder of parties; *Acevedo v. Allsup's Covenience Stores, Inc.*, 600 F3d 516, 521-22 (5th Cir. 2010), and further stated in *Acevedo*, quoting from *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966), that "the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."

This Rule 20(a) standard has been applied by this Court; *Exxon Mobil Corp. v. Starr Indem. & Liab. Co.*, 2014 U.S. Dist. LEXIS 115727 at *4-5 (S.D. Tex. 2014) (Rule 20's requirements satisfied and therefore defendant's motion for severance denied); and *K-Beech, Inc. v. John Does 1-41*, 2012 U.S. Dist. LEXIS 31803 at *6-17 (S.D. Tex. 2012) (permissive joinder denied where 41 defendants would have been joined). And the standard has been applied by other federal district courts in Texas as well. *See Gillespie v. Wells Fargo Home Mortgage*, 2011 U.S. Dist. LEXIS 159795 at *3-6 (W.D. Tex. 2011) (permissive joinder of defendant allowed); *Adrain v. Genetec Inc.*, 2009 U.S. Dist. LEXIS 86855 at *4-8 (E.D. Tex. 2009)

(permissive joinder of defendant allowed); and *Imperium (IP)Holdings, Inc. v. Apple, Inc.*, 2012 U.S. Dist. LEXIS 10333, * 7-8 (E.D. Tex. 2012). (Courts "have consistently held that transactions or occurrences satisfy the series of transactions or occurrences requirement of Rule 20(a) if there is some connection or logical relationship between the various transactions or occurrences.")

As alleged in its First Amended Complaint, the Secretary in his official capacity is the "designated State officer for the State of Texas concerning coordination [of] supervisory duties and responsibilities under the NVRA and is named for purposes" of facilitating the obtainment of "complete relief against Defendant Montalvo." Dkt. No. at 12. Further, it is alleged that under provision ¶ 18.065(a) of the Texas Election Code Ann., which is entitled "Secretary of State to Monitor Registrar's Compliance," the Secretary is required to "monitor each [local] registrar for substantial compliance" with various portions of the Election Code that pertain to the maintenance of voter registration lists. *Id.* Moreover, in its prayer for relief, ACRU requests that this Court simply enjoin the Secretary "from failing to carry out any of the coordination and supervisory duties" that the Secretary has under either "Section 8 of the NVRA" or "under the Texas Election Code" that would help ensure that reasonable voter list maintenance is performed by Defendant Montalvo in Starr County. *Id.* at 18. In addition, the implausible number of persons who have been on Starr County's voter registration list from 2010 to 2014 is based, *inter alia*, upon data maintained by the Secretary that he disseminates to the public and which Plaintiff ACRU relied upon in making its calculations regarding statistically implausible number of registrants that are alleged in the First Amended Complaint. *Id.* at 13-14.

First, considering the interconnections, as described above, between the duties of the Secretary and Defendant Montalvo regarding list maintenance duties in Starr County, it is correct

3

to say that these two officials' duties are "arising out of the same transaction, occurrence, or series of transactions or occurrences." Rule 20(a)(2)(A). *See e.g., Imperium 2012 (IP) Holdings, Inc.* at * 7-8 (courts "have consistently held that transactions or occurrences satisfy the series of transactions or occurrences requirement of Rule 20(a), if there is some connection or logical relationship between the various transactions or occurrences.") Here, there is a substantial connection and logical relationship between the list maintenance duties of the Secretary and those of Defendant Montalvo in Starr County pertaining to what is being done, and not being done, that is resulting in a statistically implausible number of people being registered in that county.

Second, common questions of law and fact will arise in this case as to both Defendant Montalvo and the Secretary. For example, one of the central issues in this case will be what constitutes reasonable maintenance within the meaning of Section 8 of the NVRA in the context of the circumstances present in Starr County? And the fact that the Secretary might not be interested in contesting against "all the relief demanded" by Plaintiff against Defendant Montalvo (*e.g.*, such as whether Mr. Montalvo uses or should be required to use the National Change of Address data base maintained by the U.S. Postal Service to try to identify ineligible registrants on the list?) does not mean that the Secretary should not be permissively joined. *See* Rule 20(a)(3).

Therefore, the requirements of Rule 20(a)(2) are satisfied here, permissible joinder of the Secretary is appropriate, and the Secretary's motion to dismiss, Dkt. No. 55 at 13-17, made under Rule 12(b)(6) should be denied.

    **B. Defendant Secretary can be properly joined in this case pursuant to Rule 19(a), F.R. Civ. P. as well.**[1]

**Rule 19(a)(1)(A)**

Unlike Rule 20(a)'s permissive joinder previsions, Rule 19(a) applies to situations in which "Parties are Required to Be joined if Feasible." *Id.* The provisions of Rule 19 *pertinent* in this case states that a "person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party;"[2] *id.* at Rule 19(a)(1) "if in that person's absence, the court cannot accord complete relief among existing parties." *Id.* at Rule 19(a)(1)(A). *See Hood ex rel. Mississippi v. The City of Memphis*, 570 F.3d 625, 629-31 (5th Cir. 2009) (Tennessee joined as necessary party under Rule 19(a)(1) because in its absence complete relief could not accorded).

The U.S. Supreme Court has addressed the question of whether a person can be joined as a party under Rule 19(a) in an action where it is determined that the plaintiff has no cause of action against that particular party-defendant. In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), the federal government sued the Teamsters Union and a defendant-employer under Title VII of the Civil rights Act of 1964, alleging racial discrimination against black and Hispanic individuals. *International Brotherhood of Teamsters*, 431 U.S. at 328-29. In *International Brotherhood of Teamsters*, the Court ruled that Section 703(h) of the

---

[1] At the time ACRU moved to amend its complaint and to join Defendant Secretary, Plaintiff pointed to Rule 20 as the basis for the joinder. Dkt No. 46 at 3-4. Upon further reflection during the research and writing of this Response to Defendant Secretary's motion to dismiss, the undersigned have become convinced that Rule 19(a) is a separate and independent basis, in addition to Rule 20(a), for the joinder of the Secretary in this suit. Accordingly, Plaintiff request that the Court consider Plaintiff's arguments made herein that Rule 19(a), as well as Rule 20, is a separate justification for joining Defendant Secretary in this case.

[2] The Secretary is a person who is subject to service of process of this Court, and he does not contend otherwise in his motion to dismiss. The Secretary does contend, pursuant to Rule 12(B)(1), that he is not subject to the jurisdiction of this Court because Plaintiff has failed to give him proper notice as required by the NVRA. As argued below this contention is without merit as well, and therefore it does not bar the joinder of the Secretary.

Civil Right Act of 1964 immunized seniority systems from legal challenge under Title VII, and therefore the "union's conduct in agreeing to and maintaining the [seniority] system did not violate Title VII." *International Brotherhood of Teamsters*, at 356. Accordingly, the Court vacated the injunctive relief entered against the union, but the Court ordered that the "union will properly remain in this litigation as a defendant so that full relief may be awarded the victims of the employer's post-Act discrimination. Fed. Rule Civ. Proc. Rule 19(a)." *International Brotherhood of Teamsters* at 356, n. 43. *Accord, Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 399-400 (1982) (reaffirming the Supreme Court's holding on this point in *International Brotherhood of Teamsters*.)

Similarly, in *General Building Contractors Assoc. Inc., v. Pennsylvania*, 458 U.S. 375 (1982), contractors who operated "hiring halls," along with a union and employers, were found to have violated the prohibitions against intentional racial discrimination in Title 42 of the United States Code, Section 1981. *General Building* at 382-83. On appeal the Supreme Court reversed the liability finding against the contractors. *Id.* at 396-97. The Court then turned to the question of whether the contractors should remain in the case as party-defendants, and answered, stating,

> This is not to say that [contractor] defendants in the position of petitioners might not, upon an appropriate evidentiary showing, be retained in the lawsuit and even subjected to such minor and ancillary provisions of an injunctive order as the District Court might find necessary to grant complete relief to respondents from the discrimination they suffered at the hands of the Union.

*General Building* at 399. These Supreme Court rulings support the notion that under Rule 19(a), a party-defendant can be joined in a case even where the plaintiff does not have a cause of action against the particular defendant.

Although the Secretary does not cite it in his motion to dismiss, some of the language in *Vieux Carre Property Owners v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989)[3] tends to support the

6

proposition that a defendant may not be joined unless the plaintiff has a cause of action against that defendant. However, the ruling in *Vieux Carre* does not control here for several reasons. First, as explained above, Plaintiff is asking this Court to decide the joinder issue in this case based on the permissive joinder provisions of Rule 20(a), as well as under the required joinder provisions of Rule 19(a). *Vieux Carre* was decided under Rule 19(a), and that case therefore does not control the permissive joinder issue under Rule 20(a) in this case.

Second, the situation here is patently distinguishable from the circumstances in *Vieux Carre*. There, the plaintiff, a community organization of landowners in the area of New Orleans "popularly referred to as the French Quarter," filed suit against the U.S. Corps of Engineers and various other local governing commissions. *Vieux Carre* at 454. Plaintiffs sought *full* injunctive relief against all defendants to prohibit the construction of an aquarium and river park in the French Quarter area. *Id.* After a securitizing review of federal law regarding which defendants in *Vieux Carre* could be sued under the federal statutes plaintiff brought its action under, the Fifth Circuit concluded that plaintiff has no federal cause of action "against appellees other than the [Army] Corps," and on this basis, it rendered its ruling that all other defendants could not be properly joined. *Vieux Carre* at 458.

In this case, however, Plaintiff ACRU neither makes claims that the Secretary in his official capacity has violated Section 8 of the NVRA, nor does Plaintiff seek broad injunctive relief against the Secretary of the kind sought against Defendant Montalvo. *Cf.,* the specific

---

[3] The undersigned's understanding is that it is counsel's duty to identify case authority found in research that is arguably applicable to issues in the instant case regardless of whether opposing counsel has brought that authority to the Court's attention. Regarding the ruling in *Vieux Carre,* that is what Plaintiff's counsel is doing here.

allegations and broad prayers for relief against Defendant Montalvo; *see* Dkt. No. 46 at 8-12, 13-15,16-18 *with* the very limited prayers for relief made against the Secretary that are requested to ensure that complete relief in this case be granted. *See* Dkt. No. at 12-13, 8. Viewed in this light, the relief Plaintiff seeks against the Secretary is the type of "such minor and ancillary provisions of an injunctive order as the District Court might find necessary to grant complete relief." *General Building*, 458 U.S. at 399. Certainly, the relief requested by Plaintiff here is not the type of full injunctive relief sought in *Vieux Carre* against all the defendants who were dismissed there.[4]

**Rule 19(a)(1)(B)(i)**

In addition to the joinder of the Secretary being appropriate under Rule 19(a)(1)(A), joinder is also appropriate under Rule19(a)(1)(B), which states that a party must be joined if *"that person claims an interest relating to the subject of the action* and is so situated that disposing of the action in the person's absence may" have certain consequences.[5] (emphasis

---

[4] In its opinion in *Vieux Carre,* the Fifth Circuit does not discuss or cite to the language in the above-cited U.S. Supreme Court decisions in *General Building, International Brotherhood of Teamsters and Zipes* that allows for the joinder, in some circumstances, of a party-defendant against whom the plaintiff does not have a cause of action. In pointing this out and in making the above-mentioned argument that distinguish the instant case from the situation in *Vieux Carre*, Plaintiff is *not* arguing that this Court should not follow existing Fifth Circuit case law articulated in *Vieux Carre*. Instead, it is simply contending that a reading of *Vieux Carre*, in conjunction with the holdings in *General Building, International Brotherhood of Teamsters* and *Zipes* (all of which predate *Vieux Carre* and none of which has been overruled to date), supports a ruling by this Court that the relief sought here is the type of "minor and ancillary" relief that Rule 19(a) permits, notwithstanding the fact that Plaintiff does not allege that the Secretary violated the NVRA. See *General Building* at 399.

[5] Those consequences are that the party's absence may: "as a practical matter impair or impede the [absentee] person's ability to protect the interest; *see* Rule 19(a)(1)(B)(i), or "leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Rule 19(a)(1)(B)(ii). At the very least, the requirement in 19(a)(1)(B)(i) is satisfied here. Quite simply, without the joinder of Defendant Secretary, his

added) Earlier in this case the State of Texas[6] filed an Amicus Curiae Brief In Partial Opposition to Defendant Montalvo's Amended Motion to Dismiss. *See* DKt. No. 33-1 at 2. Therein, Texas claimed that it "has a substantial interest" in "ensuring that elections are administered in accordance with applicable state and federal laws." *Id.* The State then argued that in "[r]ecognizing that interest," it was submitting its amicus brief "to address the responsibilities" that local and state officials in Texas have "relating to the maintenance of voter registration rolls." *Id.* This Court can rely on that interest to join the Secretary as a Defendant. *See Ohio Valley Environmental Coalition, Inc. v. Hobet*, 717 F.Supp.2d 541, 2010 U.S. Dist. LEXIS 143998, *62, n. 14 (S.D. W Va. 2010) (one way to demonstrate that absent party has interest is to show that party has "claim[ed] an interest in the litigation itself;"). This interest militates strongly in favor of joining the Secretary, pursuant to Rule 19(a)(1)(B)(i).

In conclusion, the Secretary may be joined under both the required joinder provisions of Rule 19(a)(1)(A) and (B)(i), and therefore Secretary's motion to dismiss under Rule 12(b)(6) for failure to state a claim on the basis that Plaintiff has no cause of action against the Secretary should be denied.

## II. DEFENDANT SECRETARY'S RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF JURISDICTION SHOULD BE DENIED.

---

interest in contending that the local registrars, but not the Secretary of State, are legally responsible for list maintenance activities, required by Section 8 of the NVRA, will be "impair[ed]or impede[d]." Since the sub-paragraphs of Rule 19(a)(1)(B)(i) and (a)(1)(B)(ii) are written in the disjunctive, the satisfaction of one sub-paragraph is sufficient.

[6] There is no legal difference between action by the State of Texas and action by the Texas Secretary of State in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

9

The Secretary contends that the pre-suit notice letter sent in this case did not satisfy the NVRA's pre-suit notice requirements, and therefore this Court lacks jurisdiction over the Secretary and the Amended Complaint against him should be dismissed. Dkt. No. 55 at 8-9. As shown below, this argument is also without merit.

A. **ACRU's notice letter placed the Secretary on sufficient notice that Starr County was not complying with the reasonable list maintenance requirements of Section 8 of the NVRA.**

On December 23, 2015, Susan A. Carleson, Chairman and CEO of the ACRU, sent a notice letter addressed to Defendant Montalvo and with a "cc" copy to "The Hon. Carlos Cascos, Texas Secretary of State." Dkt. No. 46 at 20-23. There is no dispute regarding receipt of the notice letter because the Secretary does not claim that a copy of the letter was not received by his office. The letter which is approximately two and one-half pages in length explained to the Secretary, as well to Defendant Montalvo, that in Starr County the number of persons on the registration list "was significantly more . . . than it has eligible living citizens." *Id.* at 23. ACRU went on in the letter to point out that "approximately 109% of eligible living citizens" are registered to vote in Starr County, a voter registration rate which is obviously statistically implausible, and it claimed that this information suggested that voter registration in Starr County "is in apparent violation of Section 8" of the NVRA. *Id.* at 20. Notwithstanding this notice letter to the Secretary, he nevertheless argues that he did not receive sufficient notice of a Section 8 violation. Dkt. No. 55 at 6-9. This contention is not meritorious and should be rejected by this Court.

To begin with the Secretary has established legal responsibilities under both federal and Texas law regarding the maintenance of voter registration lists in Texas. As the State's chief election official, 52 U.S.C. ¶ 20509, he has the duty to coordinate supervisory duties and

10

responsibilities for the State under the NVRA. Dkt. No. 46 at 12. Moreover, he has specific supervisory duties regarding voter registration maintenance under the Texas Election Code. *Id.* at 12-13. And as a statewide official, the Secretary is presumed to know the federal and state laws that specifically apply to his duties regarding voter list maintenance, and it is not the purpose of a NVRA notice letter to explain that law to the Secretary.[7]

There is no case authority in the precedents cited by the Secretary, or any other case authority for that matter, that suggests or requires the Plaintiff to specifically describe in the notice letter why a statistically implausible registration rate in one of Texas's county would not signal a possible violation of Section 8's list maintenance requirements. Neither is there any authority that the NVRA notice requirements require the sender of the notice to advise the official, such as the Secretary here, what corrective actions he or she should take to rectify the situation. The importance of the notice requirement in the NVRA is that information about such things as implausible registration rates be brought to the Secretary's attention, so that he in his discretion can take official corrective action, if he deems it appropriate, prior to the time he can be sued. *See Ass'n of Cmty. Orgs. for Reform Now ('ACORN") v. Miller*, 129 F3d 833, 838 (6th Cir. 1997) (the purpose of the notice requirement is to provide states an opportunity to achieve compliance before litigation is filed); and *American Civil Rights Union v Martinez-Rivera*, Civ. Action No.

---

[7] For example, the Secretary contends that the ACRU's notice letter, "focused entirely on Starr County's purported failure to comply with the NVRA. It made no reference to any obligations imposed on the State under Section 8 or explain[ed] how, if at all, the State was violating those obligations. And, most problematically, it did not give Defendant Cascos any context from which he could reasonably infer that the state needed to bring itself into compliance with NVRA by performing any of his duties differently." Dkt. No. 55 at 10-11.

What the Secretary is claiming is required here is not a sufficient notice letter under the NVRA, but a legal brief that would inform the reader of the applicable legal standards and advise the reader what remedial action, if any, he should take. The notice requirements of the NVRA do not require such, and the Secretary is simply wrong as a matter of law in contending that they do.

DR-14-CV-0026-AM/CW (W.D. Tex. 2015), Dkt. No. 40[8] at *19 (letter that informs officials that there is a statistically implausible high number of persons on voter list is sufficient to give officials "enough information to diagnose the problem"). The December 23, 2015 notice letter did that in no uncertain terms when it informed the Secretary that Starr County likely had more registrants on its voter list than age-eligible citizens residing in the county.

B. **Case authority and other arguments by the Secretary on the notice requirement issue are not persuasive.**

The Secretary's reliance on, *Scott v. Schedler,* 771 F.3d 831 (5th Cir. 2014) is misplaced. *See* Dkt. No.55 at 8, 11-12. In *Scott*, one of the plaintiffs - - Mr. Scott - - gave no notice whatsoever to defendant-Louisiana Secretary of State that he had not been given an opportunity to register at a public service office; *Scott* at 835, but plaintiff-NAACP did give notice generally that such has occurred at public service offices in the State. *Id.* On appeal, Scott claimed that he did not have to give notice personally because NAACP had given notice. *Id.* The Fifth Circuit rejected Scott's argument, stating that "Scott's failure to provide notice is fatal to his suit," since Scott could not "piggyback" on the NAACP's notice. *Id.* at 836. In this suit, there is only one Plaintiff and two Defendants. Plaintiff ACRU gave notice to both Defendants by sending its notice letter to both Defendants, and therefore Plaintiff here is not trying to "piggyback" off anyone else's notice letter.

The Secretary complains that the December 23, 2015 notice letter was defective because it did not give notice to the Secretary that "voter roll maintenance problems exist throughout Texas." Dkt. No. 55 at 11. The Secretary then goes on to claim that "ACRU failed to put [him] on notice that any voter roll problems were statewide in nature or otherwise redressable by the State." Such an argument misses the point. As the undersigned have informed this Court at oral

---

[8] This docket number citation is from the *Martinez-Rivera* case.

argument on several occasions, ACRU believes that a limited number of Texas' 254 counties have a problem similar to the situation that exists in Starr County. ACRU has filed suit in two other counties in Texas - - Terrell and Zavala - - and those suits have resulted in a consent decree and a settlement respectively. At present ACRU has notice letters out to eight other counties that appear to have list maintenance problems similar what exist in Starr County, *i.e.*, an implausibly high registration rate. Therefore, based on the information Plaintiff has at present, it would be reckless on its part to write a notice letter to the Secretary claiming that a "statewide problem" exists, and ACRU has not done so.

In the Starr County notice letter, the absence of a claim of a "statewide problem" in no way made the contents of the notice letter defective to the Secretary. Nothing in the statutory language of the NVRA or any precedents decided thereunder remotely suggest that to give sufficient notice under the NVRA to the chief election officer of a state, the party sending the notice letter must inform the state official that the problem he is giving notice about is "statewide" in nature. Such an argument would mean that the list maintenance guarantees of Section 8 of the NVRA would not be applicable to the chief election officials unless they were of a statewide nature. Such an argument is illogical on its face.[9]

Finally, although he does not argue directly that it is a ground for finding the December 23 notice letter insufficient, the Secretary does note that the letter his office received was a copy of the letter addressed to Defendant Montalvo. Dkt. No. 55 at 10. In that regard there is nothing in the statutory language of the NVRA or any decisional precedents under the NVRA that says, or even remotely suggests, that an otherwise sufficient notice letter under the NVRA is rendered

---

[9] *Query*: If the only Section 8 issues that the Secretary is in any way responsible for are "statewide" Section 8 issues, then why would notice have be given to the Secretary in cases that focuses on just one county, such as the instant case?

13

insufficient, because it was addressed to a local official (local registrar here) and notice was given to a state official (the Secretary here) by the sending of a "cc" copy to that state official. Again, the pertinent point is to notify the appropriate official(s) so that they may attempt to correct the alleged violation before they are sued. *See Scott v. Schedler* at 836. That was done here and the Secretary's motion to dismiss for insufficient notice should be denied.

### III.  DEFENDANT SECRETARY OTHER POINTS AND AUTHORITIES ARE WITHOUT MERIT

The Secretary argues that Plaintiff ACRU is asking for a "obey-the-law" injunction that is not permitted, citing *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981). In its Amended Complaint, Plaintiff points to both federal and state law provisions governing the Secretary's coordination and supervisory duties and responsibilities pertaining to voter list maintenance in Starr Country. Dkt. No. 46 at 12-13. In the Prayer for Relief section of the Amended Complaint, Plaintiff requests injunctive relief against the Secretary that will prohibit him from "failing" to carry out his responsibilities that "would help ensure that reasonable list maintenance of the voter rolls is performed by Defendant Montalvo." *Id.* at 18. In comparison with the injunctive relief sought against Defendant Montalvo, the relief sought against the Secretary in these circumstances is, as it should be, "minor and ancillary" in nature. But it is also sufficiently specific and does not constitute a generalized "obey-the-law" injunction. Therefore, the ruling in *Meyer* does not call for the dismissal of the Amended Complaint as requested by the Secretary.

The Secretary's reliance upon the ruling in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *see* Dkt. No. 55 at 14, n. 2, is also misplaced. *Pennhurst* involved the issue of "whether a federal court may award injunctive relief against state officials on the basis of *state law*." *Pennhurst*, 465 U.S. at 91 (emphasis added). The Supreme Court in *Pennhurst* held that

14

"when a federal court instructs state officials on how to conform their conduct to state law", that "such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment" promise of sovereign immunity to the states. *Id.* at 106. In pointing to the various sections of the Texas Election Code; Dkt. No. 46 at 12-12,18, in its Amended Complaint, Plaintiff is in no way asking this Court to render a judgment on whether the Secretary is acting in violation of the various portions of the Texas Election Code. Moreover, there is no suggestion by the Secretary that he has some unusual interpretation of those Election Code sections that would be different than the plain language in those sections indicate. *See* Dkt. No. 55 at 14, n.2 ("whatever the precise scope of Defendant Cascos' obligations under the Texas Election Code"). The two causes of action set forth in the Amended Complaint are both against Defendant Montalvo, and they are based on the NVRA and not Texas law. Dkt. No. 46 at 16-17. In pointing to those portions of the Texas Election Code in the Amended Complaint, Plaintiff is only attempting to join the Secretary for minor and ancillary relief for the purpose, *inter alia*, "of obtaining complete relief against Defendant Montalvo." *Id.* at 12, 18. Therefore, the holding in *Pennington* is not a basis for dismissing Plaintiff's Amended Complaint.

## IV. CONCLUSION

For the aforementioned reasons, it is respectfully submitted that this Court should deny the Secretary's motion to dismiss the First Amended Complaint and grant any further relief, in law or equity, to which Plaintiff ACRU is justly entitled.

Respectfully submitted this 22 day of December, 2016,

_____
Eric Weisehan
Wiesehan Law Firm, PLLC
P.O. Box 720938

McAllen, TX 78504
Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com

H. Christopher Coates*
LAW OFFICE of H. CHRISTOPHER COATES
934 Compass Point
Charleston, South Carolina 29412
Tel: (843) 609-7080
curriecoates@gmail.com

J. Christian Adams*
Kaylan L. Phillips*
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
kphillips@publicinterestlegal.org

* *Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2016, I caused the foregoing to be filed with the United States District Court for the Southern District of Texas via the Court's CM/ECF system, which will serve all registered users.

_____
Eric Wiesehan
Wiesehan Law Firm, PLLC
P.O. Box 720938
McAllen, TX 78504
Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com