IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AMERICAN CIVIL RIGHTS UNION, § | | |
| in its individual and corporate capacities, § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | Civil Action No. 7:16-CV-00103 | |
| § | | |
| ELECTION ADMINISTRATOR § | | |
| JOHN RODRIGUEZ, in his official § | | |
| capacity; and TEXAS SECRETARY OF § | | |
| STATE ROLANDO PABLOS, in his § | | |
| official capacity, § | | |
| *Defendants.* § | | |

## DEFENDANT TEXAS SECRETARY OF STATE ROLANDO PABLOS'S MOTION FOR SUMMARY JUDGMENT

Plaintiff American Civil Rights Union (ACRU), a non-profit organization that asserts claims on behalf of itself and its members, alleges that there are more registered voters than voting-age citizens in Starr County, Texas. ACRU contends this result is attributable to Starr County's failure to conduct a reasonable voter-list-maintenance program, as required by the National Voter Registration Act (NVRA). The group also complains that Starr County did not produce certain records when ACRU was investigating the County's voter-registration practices. ACRU asks the Court to declare that Starr County is violating the NVRA's list-maintenance provisions and enjoin the County from failing or refusing to comply with these statutory provisions.

The story is far different for Secretary of State Rolando Pablos. ACRU has acknowledged <u>it lacks any causes of action against the Secretary of State</u>, and its live

1

pleading does not allege any NVRA violations by Defendant Pablos or the State of Texas. ACRU instead maintains that the Secretary should remain a party to this suit because that is the only way for ACRU to obtain complete relief. But given the nature of ACRU's claims, its purported injuries can be redressed—if at all—by issuing the requested equitable relief against Defendant John Rodriguez, the Election Administrator for Starr County. As such, Defendant Pablos is not needed for any remedial purpose. There is no other basis to support Defendant Pablos's presence in this suit. Summary judgment should be entered in favor of Defendant Pablos on any claims that ACRU asserts against him.

## I.   BACKGROUND

This suit centers on Starr County's voter-registration rolls. According to ACRU, these lists contain more persons than voting-eligible citizens residing in Starr County. First Am. Compl. ¶ 23 (ECF No. 49). ACRU avers, for example, that in 2014, Starr County had 30,198 registered voters and 27,975 voting-age citizens (based on U.S. Census Bureau data). *Id.* ACRU alleges similar disparities for 2012 and 2010. *See id.* ¶¶ 24–25 (identifying 30,627 registered voters and 27,615 voting-age citizens in 2012, along with 29,114 registered voters and 27,615 voting-age citizens in 2010). These disparities, ACRU says, are due to Starr County's failure to perform a number of list-maintenance functions, including promptly removing from the rolls deceased voters, non-citizens, felons, duplicate registrants, and voters who have moved outside of Starr County. *See, e.g.*, Ex. A, Pl.'s Resps. to Def.'s First Set of Interrogs., Nos. 2–4; Ex. B, Pl.'s First Supplemental Resps. to Def.'s First Set of Interrogs., No. 6; *see*

*also* First Am. Compl. ¶ 26 (maintaining that Starr County's Election Administrator "is responsible for allowing this circumstance to occur and persist over the past several election cycles").

ACRU lodges two causes of action against Starr County. First, ACRU contends that Starr County has "failed to make reasonable efforts to conduct voter list maintenance programs in violation of Section 8 of NVRA, 52 U.S.C. § 20507 and 52 U.S.C. § 21083(a)(2)(A)." First Am. Compl. ¶ 37. Second, ACRU says that Starr County did not "substantively respond" to ACRU's written requests for data relating to certain programs and activities, in violation of 52 U.S.C. § 20507(i). *Id.* ¶ 42.

ACRU does not assert either of these claims against Defendant Pablos. Nor does ACRU identify any purported NVRA violations attributable to Defendant Pablos, any state official, or the State of Texas generally. *Id.* ¶¶ 18, 36–45. Indeed, ACRU has conceded that it lacks a cause of action against Defendant Pablos. *E.g.*, Pl.'s Resp. to Def.'s Mot. to Dismiss First Am. Compl. at 7 (ECF No. 57) ("Mot. Dismiss Resp."). ACRU asserts instead only that it has named Defendant Pablos "for purposes of obtaining complete relief against Defendant [Rodriguez]." First Am. Compl. ¶ 18.

## II. Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *id.*

at 252 ("mere existence of a scintilla of evidence" is insufficient to defeat summary judgment). When the burden of proof at trial lies with the nonmoving party, the movant is not required to present evidence to put the plaintiff's claims in issue. *Celotex*, 477 U.S. at 325; *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). Nor must the movant negate the elements of the nonmovant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2004). Instead, the movant need only "point[ ] out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the defendant-movant meets this obligation, the burden shifts to the plaintiff to produce competent evidence that demonstrates a genuine issue of material fact as to each element of every disputed claim. *Anderson*, 477 U.S. at 247–48, 256–57; *Tran Enters., LLC v. DHL Express (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010).

To meet its burden on summary judgment, the plaintiff "must go beyond the pleadings and come forward with specific facts" demonstrating a genuine issue for trial. *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (citation and quotation marks omitted). Summary judgment is proper when the plaintiff's evidence is "merely colorable" or is not "significantly probative." *Anderson*, 477 U.S. at 249–50. The plaintiff cannot "avoid summary judgment by presenting 'speculation, improbable inferences, or unsubstantiated assertions.'" *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) (quoting *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012)). Nor is it sufficient for the plaintiff to

"show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III.   ARGUMENT AND AUTHORITIES

ACRU has not brought any causes of action against Defendant Pablos. Nor is there any basis for concluding that ACRU can only obtain complete relief on its claims challenging Starr County's voter-list-maintenance functions if Defendant Pablos remains a defendant. Defendant Pablos should be dismissed from this suit.

### A.   ACRU Has Not Asserted Any Claims Against Defendant Pablos.

Throughout this proceeding, ACRU has made clear that Starr County—not the Secretary of State or any other state official—is the sole focus of its claims. *E.g.*, First Am. Compl. ¶¶ 18, 21; Mot. Dismiss Resp. at 2–9. For example, ACRU has acknowledged:

- It does not "make[ ] claims that the Secretary in his official capacity has violated Section 8 of the NVRA." Mot. Dismiss Resp. at 7; *accord id.* at 8 n.4 (explaining that ACRU "does not allege that the Secretary violated the NVRA").

- Defendant Pablos is named as a party only to "obtain[ ] complete relief" against Starr County. First Am. Compl. ¶ 18.

- In seeking to retain Defendant Pablos as a party to this suit, ACRU relies on cases that ACRU interprets to permit the joinder of a party "even where the plaintiff does not have a cause of action against the particular defendant." Mot. Dismiss Resp. at 6.

- In its pre-suit letter to Starr County asserting that the County was failing to comply with the NVRA, ACRU made no similar contention about the State. *See generally* Ex. C. Every allegation was directed towards Starr County. *E.g., id.* at 2–3 (stating that the letter "serves as the statutory notice to *your county*, as required by 52 U.S.C. § 20510(b), prior to the commencement of any lawsuit in order to enforce provisions of" the NVRA (emphasis added)).

5

ACRU's focus on Starr County is unsurprising given the nature of its claims, which concern Starr County's failure to perform the list-maintenance functions required under Section 8 of the NVRA. Section 8 provides, in relevant part:

> [E]ach State shall . . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant . . . .

52 U.S.C. § 20507(a)(4). ACRU does not allege that the State of Texas has failed to "conduct a general program" for removing ineligible voters from registration rolls. Nor could it do so, as the State has adopted a comprehensive statutory framework for removal of ineligible voters. *See generally* TEX. ELEC. CODE § 16.001 *et seq*. This framework reflects that most of the responsibilities associated with the voter-removal process are assigned to local election officials like Defendant Rodriguez, while some limited functions are assigned to the Secretary of State. *See infra* pp. 6–9.

Critically here, the list-maintenance functions that ACRU challenges in this suit—*i.e.*, investigating, and subsequently removing from the registration rolls, any ineligible voters—are ultimately the responsibility of county election administrators and other local officials. Under Texas law, only local registrars are responsible for investigating voter eligibility—whether due to a change in residence, death, or otherwise—and canceling the registrations of ineligible voters. *See, e.g.*, TEX. ELEC. CODE § 16.031(a) (providing that "[t]he registrar shall cancel a voter's registration immediately on receipt of" notice that "the voter's residence is outside the county" or "that the voter is deceased," among other bases for canceling a voter's registration);

*id.* § 15.022(a) ("The registrar shall make the appropriate corrections in the registration records, including, if necessary, deleting a voter's name from the suspense list . . . ."); TEX. GOV'T CODE §§ 62.113, 62.114 (providing that certain information be provided by the clerk of the court relating to individuals excused or disqualified from jury service).

This approach is entirely consistent with NVRA's mandate for States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters." 52 U.S.C. § 20507(a)(4). And Texas's statutory framework appropriately reflects the role of local registrars in maintaining their voter-registration lists. *See, e.g.*, 52 U.S.C. § 20507(d)(3) (NVRA provision imposing on local registrars the duty to "correct an official list of eligible voters in elections for Federal office in accordance with change of residence information").

The Secretary of State cancels voters from the voter-registration rolls in only narrow instances. *First*, the Secretary of State cancels "strong match" deceased voters based on the list of deceased individuals that it receives pursuant to Section 16.001 of the Texas Election Code. *See generally* TEX. ELEC. CODE § 18.068. This occurs when the Secretary is able to "match" a deceased individual's full Social Security number, last name, and date of birth with information contained in the voter record. *See* 1 TEX. ADMIN. CODE § 81.6(a)(1). In these circumstances, the Secretary of State is not conducting any investigative work about individual voters. *See* TEX. ELEC. CODE § 18.068(a)–(c), (e). *Second*, the Secretary of State cancels voters who have remained on the "suspense list" for two general elections without voting. *See id.* § 16.032; Ex.

7

D, Dep. of Brian Keith Ingram, Director of Elections, Texas Secretary of State ("Ingram Dep."), at 71:5–11.[1] But, again, this does not involve any investigative work by the Secretary of State, who relies on the counties to have accurately reported the voters who voted. Ingram Dep. at 71:16–24. And, more importantly, ACRU does not challenge any of the removal functions that the Secretary of State performs (limited as they are).

In all other instances, local election officials are responsible for removing individuals from the voter-registration rolls. For example, the Texas Election Code requires the Secretary of State to obtain certain information about deceased residents and non-citizens from other governmental entities for purposes of list maintenance. But these provisions command the Secretary of State to pass on the information to the local voter registrars so that local officials can conduct an investigation, or the provisions require the information to be sent to both the Secretary of State and local voter registrars directly. *See, e.g.*, TEX. ELEC. CODE §§ 16.001(c), (d), 18.068; TEX. GOV'T CODE § 62.113. The Texas Election Code also requires the Secretary of State to notify each county's voter registrar when "a voter on the registration list has more than one registration record on file based on a strong match." TEX. ELEC. CODE § 18.0681(d). It is ultimately the voting registrar's responsibility, however, to take action to merge the duplicate records or initiate the confirmation process for determining a voter's correct residence. *Id.*

---

[1] Each county's suspense list is maintained by the local voter registrar and contains the names of voters whose addresses are known by the registrar to be incorrect, including through the return of a voter registration card as undeliverable. *See, e.g.*, TEX. ELEC. CODE § 15.081.

ACRU's requested relief proves the point that the goal of this lawsuit is to compel Starr County to make changes to its voter-list-maintenance program. *See, e.g.*, First Am. Compl. at 13. With respect to Defendant Pablos, ACRU asks only that he be enjoined from "failing to carry out any of the coordination and supervisory duties that he is required to do under either Section 8 of the NVRA or under the Texas Election Code that would help ensure that reasonable list maintenance of the voter rolls *is performed by Defendant Montalvo.*" *Id.* (emphasis added). Not only is this an impermissible "obey-the-law" injunction, *see Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981), but, unlike ACRU's allegations against Starr County, it also is untethered to any actions or omissions on the part of Defendant Pablos.

Because ACRU has not alleged, and there is no basis for finding, that Defendant Pablos or the State has failed to meet their NVRA obligations, summary judgment is proper.

### B. ACRU Can Obtain Its Requested Relief Without Defendant Pablos's Presence in This Suit.

Nor should Defendant Pablos remain in this suit simply because ACRU says he is necessary for "complete relief." For one thing, merely claiming that Defendant Pablos is needed for remedial purposes does not relieve ACRU from having to allege a plausible cause of action against Defendant Pablos over which this Court has jurisdiction. *Cf. Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989) ("[I]t is implicit in [Federal Rule of Civil Procedure] 19(a) itself that before a party will be joined as a plaintiff it must have a cause of

action against the defendants, and before it will be joined as a defendant the plaintiff must have a cause of action against it." (citations omitted)).

In any event, even if it *could* be proper to keep Defendant Pablos as a party to this suit for remedial purposes, there is no support for doing so here. As discussed above, ACRU alleges that Starr County officials have failed to perform certain obligations pertaining to the County's voter-registration rolls. First Am. Compl. ¶¶ 22–35. In doing so, ACRU identifies federal and state statutory provisions addressing the responsibility of local election officials with respect to voter list maintenance. *E.g.*, *id.* ¶¶ 12–16. If the Court rules that Starr County has violated Section 8 of the NVRA, an order enjoining Defendant Rodriguez "from failing or refusing to comply with the voter registration list maintenance requirements" of Section 8, *id.* at 13, will redress the only injuries that ACRU has alleged in this suit. Defendant Pablos is thus not a necessary or proper party to any eventual relief that the Court may issue.

## IV.   CONCLUSION

The Court should grant summary judgment in favor of Defendant Pablos on any claims that ACRU asserts against him.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Division Chief, General Litigation Division

/s/   *Adam N. Bitter*
ADAM N. BITTER
Tx. State Bar No. 24085070
Southern District of Texas No. 2167538
MICHAEL R. ABRAMS
Tx. State Bar No. 24087072
Southern District of Texas No. 2513900
Assistant Attorneys General
Office of the Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 475-4055; Fax: (512) 320-0667
adam.bitter@oag.texas.gov
michael.abrams@oag.texas.gov

*Counsel for Defendant Rolando Pablos, in his official capacity as Texas Secretary of State*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of March 2018, the foregoing *Defendant Texas Secretary of State Rolando Pablos's Motion for Summary Judgment* was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorney(s) and/or parties of record, via the CM/ECF service and/or via electronic mail.

/s/   *Adam N. Bitter*
ADAM N. BITTER
Assistant Attorney General