IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AMERICAN CIVIL RIGHTS UNION, | § | |
| in its individual and corporate capacities | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 7:16-cv-00103 |
| | § | |
| ELECTION ADMINISTRATOR | § | |
| JOHN RODRIGUEZ, in his official capacity; | § | |
| and TEXAS SECRETARY OF STATE | § | |
| CARLOS CASCOS, in his official capacity, | § | |
| *Defendants*. | § | |

## **DEFENDANT JOHN RODRIGUEZ'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Starr County Elections Administrator John Rodriguez, ( "County Defendant") files this Motion for Summary Judgment. In support hereof, County Defendant offers the following:

### I.　FACTS

Plaintiff American Civil Rights Union ("Plaintiff" or "ACRU") filed their Original Complaint on March 4, 2016. Plaintiff filed this lawsuit against County Defendant[1], in his official capacity as Starr County Elections Administrator. Doc. 1. Plaintiff's Complaint sought injunctive and declaratory relief for allegedly violating "Section 8" of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507. Plaintiff's principal allegation is that "Defendant has failed to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of

---

[1] Plaintiff originally named former Starr County Elections Administrator Rafael Montalvo as the Defendant. Doc. 1. However, after this suit was filed, Mr. Montalvo died. *See* Doc. 68. Defendant Rodriguez was subsequently appointed Starr County Elections Administrator. For the sake of clarity, this motion will refer to Defendants Montalvo and Rodriguez, collectively, as "County Defendant". Since Mr. Montalvo was the Elections Administrator when this suit was filed, Mr. Montalvo will be referenced by name concerning events where he was present at certain meetings with ACRU representatives and the notice letter was addressed to Mr. Montalvo.

the NVRA, 52 U.S.C. § 20507 and 52 U.S.C. § 21083(a)(2)(A)." Doc. 49 at ¶ 36. Plaintiff seeks a declaration that Starr County is violating the National Voter Registration Act, an order enjoining Starr County from such a violation, production of documents that show the accuracy of the county voting rolls, and attorney fees.

Plaintiff claims that County Defendant violated Section 8 of the NVRA by failing to maintain an accurate voting role. Specifically, Plaintiff makes two allegations. First, that County Defendant failed to make reasonable efforts to conduct a voter list maintenance program in violation of Section 8 of NVRA, 52 U.S.C. §20507 and 52 U.S.C. §21083(a)(2)(A), based on the allegation that Starr County has more registered voters than citizens of legal voting age. Second, that County Defendant failed to provide copies of documents requested by the Plaintiff in their notice letter, dated December 23, 2015, and at a subsequent in-person meeting on January 27, 2016 with ACRU representative John Mashburn.

At a prior hearing, this Court ruled that the Texas Secretary of State is a necessary party to this litigation and the Secretary of State is a co-defendant in this case. Docs. 46-49. Starr County's voting rolls are maintained by the Texas Secretary of State as part of a shared computerized voting roll. The county assists the State in the maintenance of the voter registration system, but the Secretary of State is the State Elections Administrator and is responsible for implementing a "reasonable program," as defined by the NVRA. No party has alleged that the State's program is unreasonable.

## II.   ARGUMENT

### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(c), summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988). Fed. R. Civ. P. 56(e)

provides, in part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party. Fed. R. Civ. P. 56(e)(2).

Summary judgment is precluded under Fed. R. Civ. P. 56(c) when the dispute is genuine and the disputed facts might affect the outcome of the suit. *Id.*; *Speaks*, 838 F.2d at 1438-39. To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A summary judgment movant who does not bear the burden of proof at trial may meet its initial burden of establishing that there is no genuine issue of material fact merely by pointing out the absence of evidence supporting the nonmoving party's case. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-719 (5th Cir. 1995).

Once the moving party has carried that burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *See Exxon Corp. v. Baton Rouge Oil & Chem. Workers Union*, 77 F.3d 850, 853 (5th Cir. 1996); *Stults*, 76 F.3d at 656. The party opposing summary judgment cannot establish a genuine issue of material fact by resting on the allegations made in his pleadings without setting forth specific facts establishing a genuine issue worthy of trial. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied* 506 U.S. 825 (1992). "Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Id.*

**B. Count I should be dismissed because Plaintiff has not incurred an injury and lacks standing:**

"The plaintiff has the burden to clearly and specifically set forth facts sufficient to satisfy Art. III standing requirements." *Sierra Club v. Morton,* 405 U.S. 727, 731-32 (1972). The test for determining if an organization has standing to sue on its own behalf is the same as that which applies to an individual. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). That standard requires that the plaintiff demonstrate that he suffered an 'injury in fact,' that the injury is traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999); *Scott v. Schedler*, 771 F.3d 831, 836–37 (5th Cir. 2014). An association is entitled to sue on its own behalf if it proves a "drain on its resources" resulting from counteracting the effects of the violation. *Fowler*, 178 F.3d at 360. For example, if an organization dedicates resources to register voters outside of a DMV office because a state is failing to register people who renew their driver's license, that is an injury that provides standing to sue. *Id*.

To demonstrate standing, a plaintiff must point to specific summary judgment evidence showing that it was directly affected by the alleged NVRA violations. *Fowler,* 178 F.3d at 357. An alleged injury must be (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Id*. at 358. "[A]n organization cannot obtain standing to sue in its own right as a result of self-inflicted injuries, i.e., those that are not 'fairly traceable to the actions of the defendant.'" *Id., quoting Bennett v. Spear*, 520 U.S. 154, 162 (1997).

1. **Plaintiff Lacks an Injury caused by Defendant**

In this case, Plaintiff claims that it expended resources (and incurred an injury) outside of its normal, day to day operations. Doc. 49 at ¶¶ 38, 39, 43, 44. However, part of the Plaintiff's daily activities and regular course of business is to review the number of registered voters in a

county and compare that to the census data of the county. *See* Tab A, Deposition of ACRU President Susan Carleson at 27:2-12. Mrs. Carleson stated that Plaintiff obtained a nationwide study from one of its experts in this case, Steven Camarota ("Camarota"). *Id.* at 26:2-21; *see also* Docs. 94 and 96. Based on this report, Plaintiff identified Starr County as a county with more registered voters than number of eligible voters. Tab A at 26:2-21. Any costs associated with a nationwide analysis of counties and their levels of voter registration were incurred as part of Plaintiff's regular course of business and are not injuries that provide standing.

Plaintiff cannot argue that the cost of preparing Camarota's national report was caused by County Defendant because Plaintiff did not hire Camarota to prepare the report. Tab A at 20:6-21:20. Plaintiff was given this report by a third party. *Id*. This was not an "injury in fact" because it is not an injury caused by County Defendant's violation of the law—it is a cost incurred due to the day to day activities of the organization (if there was any cost to Plaintiff at all). *See Fowler,* 178 F.3d at 359. The Plaintiff must prove that it has spent resources to combat the alleged violations of the NVRA (outside of the costs of this lawsuit) caused by County Defendant. The essential question for the Court is: did the ACRU lose resources it could have dedicated to another purpose because of the County Defendant's alleged failure to enforce the NVRA. *Georgia State Conference of N.A.A.C.P. v. Kemp*, 841 F. Supp. 2d 1320, 1336 (N.D. Ga. 2012). The answer is no, as admitted by Mrs. Carleson at her deposition and as shown below. Tab A at 68:13-69:4.

The NVRA requires a plaintiff to provide written notice of the alleged violation to the chief election official of the state involved. 52 U.S.C. § 20510(b)(1). In the context of standing pursuant to 52 U.S.C. § 20510(b), "failure to provide notice is fatal." *Schedler,* 771 F.3d at 836. If the alleged violation is not corrected within 90 days <u>after receipt of a notice</u>, a party may file suit. 52 U.S.C. § 20510(b)(2). In this case, Plaintiff's alleged injury is that it expended money to get Starr

County to "clean up their rolls." *Id.* at 73:13-16. Prior to filing this suit, Plaintiff states that it incurred costs from two sources—placing an advertisement in the local newspaper and sending a representative, John Mashburn, to Starr County to meet with Defendant Rodriguez and his predecessor, Mr. Montalvo. *Id.* at 31:7-19; 67:14-69:4; *See also* Tab B, receipts related to advertisement and travel costs. However, neither of these expenses qualifies as an injury in fact because they were self-inflicted costs and are not fairly traceable to the actions of County Defendant.

First, the advertisement was ordered on the same day that Plaintiff mailed its notice letter to County Defendant. Tab A at 65:2-67:17; Tab B at 1-2. Plaintiff mailed its first letter to County Defendant on December 23, 2015. Tab A at 65:2-67:17. On the same day, Plaintiff ordered an advertisement in the Starr County Town Crier. *Id.* This advertisement was ordered before County Defendant received Plaintiff's notice letter. Therefore, the cost of the advertisement is not an injury in fact because it was not a cost incurred as a result of County Defendant's failure to respond to Plaintiff's notice letter. The cost of the advertisement was a cost incurred <u>before</u> the Defendant could have any knowledge of the alleged violations. This was a self-inflicted cost designed to provide Plaintiff an "injury" and a disingenuous attempt to create standing. It was not an injury in fact, it was a contrivance. *Int'l Acad. of Oral Med. & Toxicology v. The U.S. Food & Drug Admin.*, 195 F. Supp. 3d 243, 258 (D.D.C. 2016) (spending money to further an advocacy mission does not by itself constitute an injury to the organization sufficient to create standing.). The cost of the advertisement was also not necessary to remedy an alleged NVRA violation by County Defendant. *Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994). The advertisement served no purpose that diverged from Plaintiff's regular course of business. Tab A at 68:13-69:4.

Second, the cost incurred by sending John Mashburn to meet with Defendant Rodriguez and Mr. Montalvo was also self-inflicted and is not an injury in fact. After receiving Plaintiff's notice letter, Mr. Montalvo called Susan Carleson to discuss her concerns. Tab A at 61:18-63:14. Instead of talking to Mr. Montalvo without incurring any cost (Montalvo placed the call to Carleson and Plaintiff did not incur long distance call charges), Mrs. Carleson stated that she would send Mr. Mashburn to Starr County to discuss the letter in person. Plaintiff now claims that the cost of Mashburn's travel was necessitated by County Defendant's failure to correct the alleged NVRA violations. However, that cannot be true because it was Plaintiff's choice to incur the costs and County Defendant was not even afforded an opportunity to comply with Plaintiff's notice letter before Mashburn was sent to Starr County. *Conservative Baptist Ass'n of Am., Inc. v. Shinseki*, 42 F. Supp. 3d 125, 131 (D.D.C. 2014) (An organization cannot manufacture the injury necessary to maintain a suit. An organization's costs of litigation or investigation in anticipation of litigation is a self-inflicted budgetary choice that cannot qualify as an injury in fact for purposes of standing.). On the telephone call, Mr. Montalvo was not dismissive of the Plaintiff and offered to discuss the issue. Tab A at 61:18-63:14. Plaintiff instead <u>chose</u> to send Mr. Mashburn in person, thus incurring another contrived "injury" to provide standing. This injury was self-inflicted and does not provide standing. *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (An organization cannot manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit.).

The Fifth Circuit considered this issue in *ACORN v. Fowler*. *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 359 (5th Cir. 1999). In *Fowler*, the Fifth Circuit held that the plaintiff's claim that it expended resources monitoring Louisiana's implementation of the NVRA was insufficient to provide standing. The plaintiff in *Fowler* failed to show that its

"injuries" relating to monitoring the State of Louisiana were outside of its normal, day-to-day operations. "These general allegations of activities related to monitoring the implementation of the NVRA fail to confer standing on ACORN to bring this lawsuit on its own behalf." *Id*. As noted above, Plaintiff's normal day-to-day operations include researching counties who have more registered voters than eligible voters. This is part of the Plaintiff's mission and purpose.[2] It is not an injury caused by County Defendant. Mere interest in a problem is not sufficient by itself to render the organization "adversely affected" or "aggrieved." *Sierra Club v. Morton*, 405 U.S. at 739. Every alleged cost and injury incurred by Plaintiff was self-inflicted. The cost of placing an advertisement prior to sending the notice letter and the cost of travel for Mr. Mashburn were not necessary costs to address an NVRA violation. Plaintiff incurred these costs for the sole purpose of creating a false pretense to support its claim of standing. Therefore, they are not injuries in fact and Plaintiff lacks standing because they cannot show any injury.

2. **Plaintiff's Claims cannot be redressed by the Court under the NRVA**

Plaintiff has not pled or articulated an injury that can be remedied under the NRVA. During her deposition, Susan Carleson was asked repeatedly what Plaintiff's objectives were in filing this suit. Tab A at 70:8-75:2. Carleson was unable to articulate a single answer to this question, other than to say: "We want clean voter rolls." *Id*. at 71:9-10. She could not formulate a single specific task that Plaintiff will request that this Court order County Defendant to perform. In essence, Plaintiff is asking the Court for a vague order that requires County Defendant to "follow the law." To be entitled to relief, Plaintiff must show exactly what County Defendant is doing incorrectly, how that action injures Plaintiff, and how an order from this Court can prevent further injury to

---

[2] "The ACRU monitors and counters organizations that threaten our constitutional rights and promotes election integrity, compliance with federal election laws, government transparency and constitutional government. The ACRU litigates to enforce clean voter registration rolls, files amicus briefs in critical civil rights cases and defends the Constitution in print/broadcast media and on the Internet." http://www.theacru.org/mission-statement/

the Plaintiff. *Fowler*, 178 F.3d at 356. However, Plaintiff failed to articulate any specific action that could be imposed upon County Defendant through an order from this Court that will insure Plaintiff will not be injured in the future.

### C. Plaintiff's disguised HAVA Claims should be dismissed for lack of standing and jurisdiction.

Plaintiff's First Amended Complaint alleges that County Defendant violated section 21083 of the Help America Vote Act ("HAVA"), 52 U.S.C. § 21083. Doc. 49 at ¶¶ 15, 37-38. However, Plaintiff does not seek relief under HAVA or assert that HAVA provides a basis for the Court's jurisdiction. HAVA does not provide Plaintiff with standing or a private right of action against County Defendant. *See Morales-Garza v. Lorenzo-Giguere*, 277 Fed. Appx. 444, 446 (5th Cir. 2008). Further, HAVA does not provide the District Court with subject-matter jurisdiction over the Plaintiff's claims. Therefore, the Court should dismiss any claim under HAVA for lack of standing and jurisdiction.

### D. Starr County is not a proper Defendant to this suit

The Texas Elections Code mandates that the Secretary of State create and maintain a statewide computerized voter registration list that serves as the single system for storing and managing the official list of registered voters in the state and that counties can contract with the State to use this list. Tex. Elec. Code §§ 18.061(a) and (d). Starr County participates in this program and is an "online county" that shares registration data with the Texas Secretary of State. Tab C. The Elections Code also requires that the Secretary of State monitor county registrars. *Id*. at § 18.065(a). If the Secretary of State determines that a county is not in compliance, it must send notice to the county detailing the reasons for noncompliance and keep a record of that notice for two years. *Id*. Plaintiff's First Amended Complaint alleges that County Defendant is not

maintaining a reasonable program of voter registration. That is the duty of the Texas Secretary of State.

The federal courts have determined whether a local election administrator (LEA) or the state is responsible for maintaining a reasonable program in *United States v. Missouri*. As the Eighth Circuit stated:

> Although Missouri cannot be required to *enforce* the NVRA against the LEAs, any lack of LEA compliance remains relevant to determining whether or not Missouri is reasonably "conduct[ing] a general program." Other remedies besides ordering Missouri to enforce the NVRA against the LEAs may remain. For instance, if the district court determines a lack of LEA compliance renders Missouri's efforts to conduct a general program unreasonable, it could order Missouri either to (1) develop different or improved methods for *encouraging* LEA compliance, or (2) assume direct responsibility for some or all of the activities needed to remove ineligible voters from the voter rolls (*i.e.,* cease delegating NVRA responsibilities to the non-complying LEAs).

*United States v. Missouri*, 535 F.3d 844, 851 (8th Cir. 2008). The Texas Secretary of State is the entity responsible for the voter roll of online counties such as Starr County. Online Texas counties contribute to state list maintenance, but the ultimate responsibility for voter registration under the NVRA is the state. *See id*. If a violation of the NVRA is occurring, the Secretary of State would be the proper party to implement the necessary changes. Significantly, there is no allegation that the Secretary of State is not reasonably conducting a general program of voter registration under the NVRA.

The Fifth Circuit held a similar view in *Scott v. Schedler*, 771 F.3d at 839. In *Scott* the court held that, while not explicitly stated in the NVRA, the Secretary of State must be a party to the suit because the NVRA's notice provision requires that the Secretary of State be provided time to correct any alleged violations of the NVRA before someone can file suit. The only reason to provide this opportunity to cure would be if the State could actually cure a violation. *Id., citing Harkless v. Brunner*, 545 F.3d 445, 453 (6th Cir. 2008) ("[r]equiring would-be plaintiffs to send

notice to their chief election official about ongoing NVRA violations would hardly make sense if that official did not have the authority to remedy NVRA violations."). Therefore, whether the State is running a "reasonable program" and whether the County is properly implementing such a program is entirely the State's burden under the NVRA. Plaintiff does not allege that the State of Texas is not running a reasonable program. Tab A at 78:7-18. If the County is not properly performing some task, the State is the ultimate responsible party. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 385 (5th Cir. 2013) (suit against Texas Secretary of State John Steen for alleged NVRA violations); *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, (suit against Florida Secretary of State); *Brunner*, 545 F.3d at 453 (holding that Secretary of State was proper party to sue for Ohio's alleged violations of the NVRA, in light of Ohio designating the Secretary as its chief election officer, and the plain language of the NVRA). A person may only bring a private cause of action alleging NVRA violations against the Texas Secretary of State (i.e., the party responsible for the coordination and enforcement the State's responsibilities under the NVRA). Neither Texas nor federal law allow a private cause of action for a plaintiff to sue a county directly. Only the State of Texas can enforce elections laws against a county. Therefore, Plaintiff lacks standing to bring this suit against County Defendant.

**E. Count II Should be Dismissed for Lack of Standing and Jurisdiction:**

As noted above, prior to filing suit Plaintiff only had contact with County Defendant on two occasions—the December 23, 2015 notice letter and Mashburn's visit on January 27, 2016. Mashburn is the only ACRU representative to visit Starr County prior to this suit being filed. Tab C. Mashburn only visited the Starr County Elections Office one time, when he met with Mr. Rodriguez and Mr. Montalvo. *Id*. Mashburn requested copies of the documents listed in Plaintiff notice letter and those documents were provided to Mashburn. *Id*. Mashburn reviewed the

documents, was offered a physical copy to take with him, but declined and left Starr County. *Id*. The ACRU then filed this suit for, in part, not providing access to the documents it requested in the notice letter, even though those documents were provided to Mashburn. *Compare* Doc. 49 at 12 to Tab C. Count II should be dismissed because copies of the requested documents were provided to the Plaintiff. Therefore, there was no violation.

Furthermore, even if the documents had not been provided to Plaintiff, it did not give proper notice before filing suit. Section 20510 of the NVRA governs the civil enforcement of Section 8, providing for enforcement by:

> (a) Attorney General—The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter.
> (b) Private right of action—
> > 1. A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved.
> > 2. If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.
> > 3. If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).

52 U.S.C. § 20510. As noted above, the documents were made available to Plaintiff during Mashburn's meeting with Mr. Rodriguez and Mr. Montalvo. Tab C. However, even if the documents had not been made available to Plaintiff, Plaintiff failed to send the proper notice of violation as required by the NVRA and failed to wait the required 90 days after being denied the documents before filing suit. The notice letter was sent on December 23, 2015; suit was filed on March 4, 2016, 18 days premature and before the expiration of the 90-day requirement. Therefore, the Court does not have jurisdiction over Count II and it should be dismissed because County

Defendant complied with the request for documents, for lack of notice, standing, and jurisdiction. *See Bellito v. Snipes*, No. 16-cv-61474-Bloom/Valle (S.D. Fl. 2017).

*Bellito* is an ongoing suit that involves the same facts as this case.[3] The plaintiff is the ACRU and the defendant is the Broward County Supervisor of Elections. The trial court in *Bellito* entered a sua sponte order involving the same facts and causes of action. Tab D, *Bellitto v. Snipes*, 268 F.Supp.3d 1328 (2017). Regarding the failure to produce records claim in Count II, the *Bellito* court held:

> [A]lthough ACRU's notice letter constitutes sufficient notice for purposes of ACRU's claim for failure to make reasonable efforts to conduct voter list maintenance programs under Count I, the notice letter does not constitute sufficient notice for purposes of ACRU's failure to disclose claim under Count II. As ACRU's notice letter represents the only written correspondence that ACRU provided Snipes prior to the commencement of this lawsuit, Snipes was never provided written notice of the potential NVRA violation claimed under Count II, nor was she afforded 90 days after such written notice by which to cure that potential violation—as required under 52 U.S.C. §§ 20510(b)(1), (2).
>
> Furthermore, because it is the lapse of the curative period contemplated in 52 U.S.C. § 20510(b)(2) that gives rise to the private cause of action, no standing was ever conferred upon ACRU to bring its failure to disclose claim—its standing to bring the claim for failure to make reasonable efforts to conduct voter list maintenance programs notwithstanding. *See Scott*, 771 F.3d at 835 ("No standing is therefore conferred if no proper notice is given, since the 90-day period never runs.") (quoting *Georgia State Conference of NAACP*, 841 F. Supp. 2d at 1335); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.").

Tab D at 10-11. In this case, Plaintiff's "notice letter" for Count II is insufficient because it only listed documents that Plaintiff wished to inspect. The notice letter did not respond to County Defendant's alleged lack of production of the documents. The Plaintiff also did not allow 90 days for production and inspection of the documents before filing this suit. Therefore, Count II must be dismissed as it is undisputed that Plaintiff failed comply with **any** notice provision of the NVRA,

---

[3] The Complaint in *Bellito* is almost identical to the Complaint in this case.

refused to take documents that were provided to it when Mashburn visited Starr County in person, and failed to allow the required 90 days for the documents to be produced.

Mashburn created a report that summarized his trip to Starr County and meeting with County Defendant. Tab E, Report of John Mashburn to Susan Carleson. As stated in Mashburn's report, Plaintiff was provided answers to many questions about the Starr County voter registration system and activities. Tab E. County Defendants were willing to improve the voter registration process.

> Mr. Montalvo stated that he would be open to doing things to improve their registration processes, but that it would of course be subject to approval by the County Commissioners, as well as the County Judge who has oversight and control of the financial budget for his office. His main concern was who would pay for access to the mentioned databases and the training for county staff to be able to use them properly.

Tab E at 10. Nothing in Mashburn's report indicates that County Defendant was anything but forthright, cooperative, and willing to provide Plaintiff with documents. However, Plaintiff did not have any interest in resolving any issues or obtaining any documents. This meeting was merely a pretext to file this suit and another contrived attempt to obtain standing.

More troubling, Mashburn's report to Susan Carleson also contradicts Plaintiff's First Amended Complaint. *Compare* Tab E to Doc. 49 at ¶ 35. Plaintiff represented to this Court that County Defendant "would not agree to adopt additional remedial procedures suggested by the Plaintiff." Doc. 49 at ¶ 35. However, Plaintiff knew this was not correct based on both Mashburn's report and Susan Carleson's telephone conversation with Mr. Montalvo. *Id.*; Tab A at 61:18-63:14. Therefore, Defendant County requests that the Court strike Paragraph 35 from Plaintiff's First Amended Complaint.

Since the filing of this suit, County Defendant has provided over 80 hours of time to review elections records requested by Plaintiff. Tab C. The County has provided over 14,500 documents

to Plaintiff. These actions comply with the NVRA requirements to allow inspection of records. Therefore, Count II is also moot because the records in question have been provided. Plaintiff's request for injunctive relief is improper because Plaintiff cannot show an ongoing violation of any law or harm to Plaintiff.

### III. CONCLUSION

The Court should dismiss Plaintiff's claims under Count I because the Plaintiff lacks standing. Plaintiff has not incurred an injury in fact that was caused by County Defendant. Any injury claimed by Plaintiff was part of Plaintiff's routine day to day operations. Plaintiff's costs to publish the advertisement in the Starr County Town Crier were incurred before County Defendant even received Plaintiff's notice letter. Costs associated with John Mashburn's trip to Starr County to allegedly "investigate" an NVRA violation was unnecessary and contrived because County Defendant was willing to provide these documents for free, without an in-person visit by Plaintiff. These were self-inflicted costs incurred by Plaintiff for the purpose of attempting to gain standing, not to cure any wrongdoing by County Defendant.

Plaintiff's claims cannot be redressed by the Court under the NVRA because Plaintiff cannot articulate an action by County Defendant that it will request this Court to order to remedy any alleged violation. In essence, Plaintiff requests the Court to order County Defendant to "follow the law." Plaintiff also requests relief under the Help America Vote Act, but that statute does not allow for a private cause of action and any claims under that Act should be dismissed for lack of standing. County Defendant is also not a proper party to this suit because Plaintiff only has standing to sue the Texas Secretary of State for the alleged violations of the NVRA.

Plaintiff's Count II should be dismissed because it is without merit. County Defendant provided copies of all requested documents to the Plaintiff's representative, John Mashburn. Both

Defendant Rodriguez's affidavit and Mashburn's report confirm these facts. Further, Plaintiff did not comply with the proper notice requirements to make a claim for failure to allow inspection of the documents under the NVRA. Plaintiff did not send a notice letter stating that County Defendant failed to provide the documents and Plaintiff did not provide the required 90-day waiting period before filing suit, as required by the NVRA.

## IV. PRAYER

County Defendant prays that the Court grant his Motion for Summary Judgement for the reasons cited in his motion, and for any other relief to which he may be entitled.

Respectfully submitted,

/s/ Philip B. Arnold
James P. Allison
SBN: 01090000
j.allison@allison-bass.com
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
Philip B. Arnold
SBN: 24044710
p.arnold@allison-bass.com

**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 *telephone*
(512) 480-0902 *facsimile*
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

   I certify that a copy of the Defendant Rodriguez's Motion for Summary Judgment was served electronically to the following on this 12th day of March 2018:

Eric Wiesehan
Wiesehan Law Firm, PLLC
P.O. Box 72093
McAllen, Texas 78504
Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com

J. Christian Adams
Public Interest Legal Foundation
300 N. Washington Street, Ste. 405
Alexandria, VA 22314
adams@publicinterestlegal.org
Kaylan L. Phillips
Noel H. Johnson
Public Interest Legal Foundation
32 E. Washington Street, Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
kphillips@publicinterestlegal.org
njohnson@publicinterestlegal.org

Kenneth A. Klukowski
3213 Duke Street #625
Alexandria, Virginia 22314
Tel: (623) 261-9249
kklukowski@theacru.org
*Attorneys for Plaintiff ACRU*

Adam Bitter
Adam.bitter@oag.state.gov
Michael Abrams
Michael.abrams@oag.state.gov
Office of the Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 475-4055
Fax: (512) 320-0667
*Attorneys for Defendant Pablos,*
*in his official capacity as Texas Secretary*
*of State*

            /s/ Philip B. Arnold
            Philip B. Arnold