**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| AMERICAN CIVIL RIGHTS UNION, | ) | |
| in its individual and corporate capacities, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:16-cv-00103 |
| | ) | |
| ELECTION ADMINISTRATOR | ) | |
| JOHN RODRIGUEZ, | ) | |
| in his official capacity, and | ) | |
| TEXAS SECRETARY OF STATE | ) | |
| ROLANDO PABLOS, in his official | ) | |
| capacity, | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

**ACRU's RESPONSE IN OPPOSITION TO DEFENDANT JOHN RODRIGUEZ'S**
**MOTION FOR SUMMARY JUDGEMENT**

Plaintiff American Civil Rights Union ("ACRU") hereby files this Response in

Opposition to Defendant John Rodriguez's Motion for Summary Judgment. (Dkt. 105.)

**SUMMARY OF ARGUMENT**

Defendant Starr County Election Administrator Rodriguez's Motion fails to demonstrate

that he is entitled to judgment as a matter of law on either of the counts in this case. Instead,

Defendant Rodriguez does little more than repeat standing and jurisdictional arguments raised in

his motions to dismiss, misconstrues the enforcement portions of the National Voter Registration

Act ("NVRA"), and presents disputed facts related to Count II of ACRU's Amended Complaint.

Over a year has passed since the denial of Defendant's motions to dismiss. (Minute

Entry, Mar. 2, 2017.) Nothing has changed since then that would affect ACRU's standing or this

Court's jurisdiction to hear this case. No information has come to light through discovery that

changes the facts surrounding the commencement of the lawsuit in accordance with the requirements of the NVRA. Above all, Defendant Rodriguez has not made any substantive changes regarding the conduct of his list maintenance activities. Indeed, his Motion here does not even attempt to show an absence of evidence supporting ACRU's claim of failure to conduct adequate list maintenance under the NVRA. Accordingly, Defendant Rodriguez has not submitted any evidence that negates the existence of some material element of ACRU's claims. His motion for summary judgment should be denied. ACRU addresses Defendant Rodriguez's arguments in turn.

## STANDARD OF REVIEW

A motion for summary judgment should be granted only if there are no genuine disputes as to any material fact in the case. Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,323 (1986). In considering whether any of the facts are in genuine dispute, the Court must view the entire record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011). Also, the Court must not weigh conflicting evidence or evaluate its credibility. *Downhole Navigator*, 686 F.3d at 328. An issue is genuine if a reasonable trier of fact could return judgment for the non-moving party. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

## ARGUMENT

At its core, Defendant Rodriguez's Motion for Summary Judgment repeats the arguments made in his motions to dismiss from two years ago. (Dkt. 6, 24.) Defendant Rodriguez

acknowledges that Starr County's lists of eligible voters are not accurate or current, yet he has

not implemented substantive changes to list maintenance procedures since this suit was filed.

(Rodriguez Dep. 31:15-22; 240:22-241:2, attached as Exhibit 1.) He presents no evidence

establishing that ACRU cannot prove an element of its claims. Rather, he argues only a lack of

standing and jurisdiction. Yet no undisputed facts undermine Plaintiff's standing.

**B.     ACRU Has Properly Brought an Action under the NVRA for Violations of the NVRA by Administrator Rodriguez.**

**1.     ACRU has Established Organizational and Associational Standing.**

ACRU's well pled Amended Complaint establishes that it has standing to sue Defendant

Rodriguez for violations of his list maintenance and inspection obligations under the private right

of action created by the NVRA. ACRU has standing in two ways: first, as an organization, and

second, representing the interests of ACRU's members. Standing existed when the case was filed

and ACRU has preserved standing throughout this litigation. Indeed, the fact that NVRA

contains an enforcement provision demonstrates "congressional intent to cast the standing net

broadly—beyond the common-law interests and substantive statutory rights upon which

'prudential' standing traditionally rested." *FEC v. Akins*, 524 U.S. 11, 19 (1998) (rejecting the

defendant's argument that the plaintiff had not suffered an "injury in fact"). In its Amended

Complaint, ACRU sets forth several injuries suffered from Defendant Rodriguez's list

maintenance violations. (Dkt. 49 *passim*.)

First, ACRU has organizational standing. ACRU has established that the organization

itself has been and continues to be harmed by the County's inspection and list maintenance

failures. ACRU has tried to promote clean voter rolls in Starr County. To do so, ACRU had to

divert resources in order to address the particular state of the lists of eligible voters in Starr

County. (Dkt. 49 ¶¶ 10-11.) The evidence in the record shows that ACRU has "expended definite

resources counteracting the effects" of Defendant Rodriguez's list maintenance failures. *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 360 (5th Cir. 1999). These have included expending resources to analyze the population registration rate in Starr County beyond regular monitoring, being denied the ability to obtain records and data regarding an issue at the core of ACRU's mission and purpose, (Dkt. 49 ¶ 10), spending time and financial resources in an effort to encourage the citizens of Starr County to cure violations of the NVRA through a public campaign to encourage clean rolls in the county, (Dkt. 49 ¶¶ 32-33), and also spending time and financial resources to implement a fix to the list maintenance problems in Starr County by visiting with the Defendant's predecessor and encouraging remedial actions to solve the problems with the voter rolls, (Dkt. 49 ¶¶ 34-35). Just as the plaintiff did in *Fowler*, ACRU here has standing to pursue this action because it has wasted resources trying to improve voter rolls in Starr County, resources that could have been put to use elsewhere in pursuing its mission. *Fowler*, 178 F. 3d at 361. ACRU exists to help election officials foster election integrity and has demonstrated corporate standing similar to *Fowler*. The same result should prevail here. *See also ACRU v. Martinez-Rivera*, 166 F. Supp. 3d 779, 790 (W.D. Tex. 2015). Since discovery has completed, it has become very apparent that even the most basic list maintenance procedures— such as removing a deceased individual from the rolls after attending the registrant's viewing— are not being utilized.

Defendant Rodriguez does not question that ACRU's efforts to improve election administration occurred. Instead, Defendant Rodriguez, without relying on any undisputed facts, merely speculates regarding the underlying motivations behind ACRU's expenditures and remedial actions. That is not enough to defeat ACRU's standing. Defendant relies on no undisputed fact for these speculations and all reasonable inferences must be taken in favor of

ACRU. *Downhole Navigator, LLC*, 686 F.3d at 328. Accordingly, there at the very least remains a genuine issue of material fact on the issue of ACRU's corporate standing. If reasonable minds can differ about the import of certain facts, then summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Second, ACRU has representational standing as well. ACRU also brought this action on behalf of its members and supporters in Starr County and in Texas. (Dkt. 49 ¶¶ 4-10.) It has been established that ACRU has members and supporters in Texas, in Starr County, and in the state legislative district that includes Starr County. (Dkt. 30-1.)

As listed in the Amended Complaint, Defendant Rodriguez's violations of the NVRA have injured and continue to injure the members and supporters of ACRU who are registered to vote in Texas by undermining their confidence in the integrity of the electoral process and diluting the effectiveness of their vote. (Dkt. 49 ¶¶ 7-8, 27.) These members would doubtless have standing to sue in their own right under 52 U.S.C. § 20510 for Defendant Rodriguez's failures to maintain the lists of eligible voters in their own jurisdictions. If anyone is affected by violations of the NVRA, it is the voters in the relevant jurisdiction, both state and local. *See Judicial Watch, Inc., et al, v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012) ("If the state has a legitimate interest in preventing that harm [(reduction of confidence in the electoral process)] from occurring, surely a voter who alleges that such harm has befallen him or her has standing to redress the cause of that harm."). It is extremely unlikely that these individual supporters possess the ability and resources to bring an enforcement action under 52 U.S.C. § 20510. (Dkt. 49 ¶¶ 8-9.) These facts suffice to satisfy the requirements to establish associational standing. *Hunt v. Wash. State Apple Advertising Comm.*, 432 U.S. 333, 343 (1977). These associational injuries

5

alone are sufficient to maintain this action. Defendant Rodriguez does not contest standing based on these associational injuries and has therefore waived the ability to do so.

Protecting the voting rights of its members against dilution and undermined integrity is integral to ACRU's exempt purpose and mission. (Dkt. 49 ¶ 38.) Courts have routinely found representational standing when groups have brought actions under Section 8 of the NVRA on behalf of their members. *E.g.*, *Common Cause, et al, v. Buescher*, 750 F. Supp. 2d 1259, 1271-72 (D. Colo. 2010) ("Any burden on the right to vote . . . constitutes an injury-in-fact for standing purposes. . . . and Plaintiffs, as associations representing those members . . . have standing to challenge the rule on their behalf."); *Judicial Watch*, 993 F. Supp. at 924 ("There can be no question that a plaintiff who alleges that his right to vote has been burdened by state action has standing to bring suit to redress that injury."); *see, e.g.*, *Bellitto v. Snipes*, 221 F. Supp. 3d 1354 (S.D. Fla. 2016) (motion to dismiss denied and case continued without individual participation in Section 8 claim). Representational standing has been found in these cases despite the absence of participation of individual members in the action. *See Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 365 (5th Cir. 1999) (quoting *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977)).

Thus, in this case ACRU maintains both organizational and associational standing.

Defendant's attack on standing cannot succeed without attacking ACRU's original efforts to foster a solution to longstanding problems with election administration in the county. Defendant undermines the purposes of the NVRA in doing so. Undeniably, for every statute conferring a private right of action, a person viewing the situation with an unkind eye could argue that every action involving that statute, even the first action, is in anticipation of possible litigation. That reading would be absurd and nullify the important and explicit legislative intent

of the statute. Such a reading would swallow every penny in every situation as pre-filing

litigation expenses that would preclude any such organization from having Article III standing. It

would vitiate Congress's purpose in creating a private right of action to begin with. Courts

should not be too eager to sweep pre-litigation expenditures into the category of pre-filing

lawsuit expenses that do not count toward an Article III injury, because whenever any

organization engages in any legal matter where the relevant statute includes a private right of

action there is always the possibility that the situation could evolve into a lawsuit. Unfortunately

here, because Defendant's predecessor was unwilling to change anything at all about list

maintenance procedures, the situation could not be improved.

While the ACRU is a nonprofit that engages in many non-litigation activities, there are

other public-interest legal organizations that operate almost exclusively through lawsuits,

including test cases to promote their organizational mission. Such organizations very rarely have

standing to sue, because any pre-litigation activities would be retroactively regarded as part of

the lawsuit under Defendant Rodriguez's theory. Defendant Rodriguez's unorthodox theory of

standing would radically rearrange the jurisprudence of courts nationwide.

These injuries, both corporate and representational, are not speculative. Discovery in this

case has uncovered reason upon reason why the voter rolls in Starr County contain numerous

duplicate registrations, registrations of deceased individuals and registrants who long moved

away from Starr. The failure to engage in a substantive discussions and remedial plans when

these problems were first brought to the attention of the election administration gave ACRU

standing. Even today, the voter rolls in Starr are full of inaccuracies despite ACRU's original

efforts over two years ago to fix the problems. If that doesn't create an Article III case or

controversy, little else could.

Thus, confidence in the integrity of elections has been eroded and the votes of ACRU's members have been diluted by illegal votes cast and inaccurate registrations. Most significantly, Defendant Rodriguez concedes that the rolls are not accurate and that he has made no changes to any processes. (Rodriguez Dep. 31:15-22; 240:22-241:2.) Therefore, unlike in *Martinez-Rivera*, where ACRU was also found to have corporate standing, here ACRU is able to point to specific instances, backed with admissions against interest, in which Defendant Rodriguez has failed to reasonably maintain the rolls free from dead and ineligible registrants. *See Martinez-Rivera*, 166 F. Supp. 3d at 790. Thus, standing should all the more be found in this case.

Through discovery, ACRU has compiled evidence supporting its claims regarding Defendant Rodriguez's list maintenance violations, often relying on admissions and public records to do so. Among the violations are known fraudulent registrations created more than 10 years ago that might not have been corrected; self-removal requests from individuals who moved out of the county 10-20 years before the request; improper registration of applicants who either checked "no" on the citizen checkbox or left it blank and yet were still registered to vote in violation of Texas and federal law; and a lack of training and written procedures for employees. A list of some of these violations was set forth in ACRU's response to Defendant Rodriguez's Motion to Compel. (Dkt. 99.) In addition, ACRU has established that Starr County has an impossibly high registration rate. (Dkt. 99-1, Expert Report of Steven Camarota.)

Defendant Rodriguez also mistakes the nature of the "violation" that ACRU seeks to redress in this enforcement action. The violation consists in the Administrator's failure to execute adequate and reasonable procedures to maintain accurate and current eligible lists of voters. *Judicial Watch*, 993 F. Supp. at 922-23 n.2. The inflated registration rate, together now with the materials compiled through discovery, are evidence of this violation. *Id.* Accordingly,

Defendant Rodriguez is incorrect in claiming that ACRU needed to provide notice of *its injuries* under the NVRA's notice provision. (Dkt. 105 at 5-6.) There is simply no such requirement under the statute and Defendant Rodriguez provides no authority in support. ACRU provided ample notice of the alleged *violations* of the NVRA, that is, failure to adequately maintain the rolls and failure to provide inspection of all list maintenance records. (Dkt. 49 ¶.) The injuries incurred by ACRU and its members result from Defendant Rodriguez's violations of the NVRA. Accordingly, Defendant Rodriguez's misreads the statutory notice provisions of the NVRA. The Defendant also improperly characterizes ACRU's efforts to fix the problem with the Defendant's predecessor. Defendant's motion for summary judgment should be denied.

### 2.    ACRU's claims can readily be redressed by this Court.

Defendant Rodriguez claims that ACRU has "failed to articulate any specific action" that he could be ordered to do in order to come into compliance with his list maintenance obligations under the NVRA. (Dkt. 105 at 9.) But this claim is contradicted by evidence in the record. It is also contradicted by the fact that other United States District Courts have indeed entered consent decrees to impose a remedial structure on election officials who have failed to properly maintain the rolls. ACRU provided very specific list maintenance practice suggestions to Defendant's predecessor and discovered they were not being used in the elections office. Two years after litigation was commenced, they are still not being used. Mrs. Carleson listed several of these actions that could be taken to maintain lists of eligible voters, actions specifically raised and rejected at the initial meetings before this case was filed. (Dkt. 105-1 at 13, Carleson Dep. 43:11-44:2.)

In addition, the report of ACRU's expert, Mr. Donald Palmer contained a detailed and specific analysis of the various list maintenance failures in Starr County, together with

suggestions as to how those could be remedied. Finally, other federal courts have approved consent decrees listing various specific remedial actions that can be taken by election administrators to clean up their rolls. *E.g.*, *ACRU v. Clarke County, Miss., Election Commission*, No. 2:15-cv-101 at Dkt. 5 (S.D. Miss. Nov. 25, 2015).

      **C.**      **Plaintiff Is Not Bringing Claims under HAVA.**

Defendant Rodriguez misconstrues ACRU's claims. ACRU's cause of action and claims are not directly based on the Help America Vote Act. 52 U.S.C. §§ 20901-21145 (hereafter, "HAVA.") Nonetheless, a correct reading and application of the list maintenance obligations under the NVRA should reflect a full understanding of the corresponding sections of the HAVA. Section 20183(a) of HAVA expressly refers to and expounds on the voter list maintenance obligations of Section 20507(a). *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."). The requirements of HAVA are to be performed "in accordance with the provisions of the National Voter Registration Act." 52 U.S.C. § 21083(a)(2)(A)(i). Therefore, list maintenance done in accordance with 52 U.S.C. § 20507(a) includes the requirements in Section 20507(a) of the NVRA. By its express terms, Section 21083(a) does not create a new list maintenance scheme that supplants or competes with the one in Section 20507. Instead, they enhance those requirements and become part of the general maintenance provision of the NVRA. Nevertheless, ACRU does not bring this claim under HAVA. Rather, the HAVA is a statute that imposes additional list maintenance obligations on the Defendants—and though not enforced by the ACRU—certainly complete the Congressional architecture of list maintenance obligations.

      **D.**      **Courts Have Universally Held that Local Election Administrators Are Properly Subject to Suit under the NVRA.**

Defendant Rodriguez renews his argument that only the chief election official of a state is subject to suit under the enforcement provision of the NVRA. No court has ever agreed with Defendant Rodriguez on this point, and nearly every court that has confronted the issue has squarely rejected his argument.

Under the NVRA, the proper defendant in an enforcement action is the election official who is responsible for the list maintenance failures and obligations to maintain clean rolls at issue in the particular case. The NVRA places responsibility for list maintenance on the official actually conducting it. 52 U.S.C. § 20507(d)(3) ("[The] *voting registrar* shall correct an official list of eligible voters . . . ." (emphasis added)).[1]

Here, under the list maintenance program established in Texas statutes, the county election administrators are the officials who are primarily responsible for carrying out list maintenance. The allegations in this case concern activities and obligations of Defendant Rodriguez, not those of the Secretary of State.

Discovery has revealed that the allegations against the county (as compared to the state) were well founded. For example, documentary evidence emerged where the county was failing to follow directions of the state to remove registrants or to conduct work on "weak matches" of names provided by the state. Moreover, it has become clear that the county is wholly unaware of various list maintenance procedures available under Texas law, procedures they were trained about by the state. Hence the failure to utilize these statutory procedures—such as utilizing a wide range of information to remove deceased registrants—lies squarely on the county.

---

[1] The HAVA may again be helpful here. HAVA specifically requires that "[t]he appropriate State or *local election official* shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. § 21083(a)(2)(A) (emphasis added).

No cases cited by Defendant Rodriguez say that local election officials are immune to an NVRA lawsuit for their failures to maintain the voter rolls. Rather, the overwhelming weight of authority support's the ACRU's position that Election Administrator Rodriguez is a proper defendant here. In *United States v. Missouri*, enforcement was sought against the chief election official because of the particular facts of the case. The plaintiff was alleging that the state's overall program of list maintenance was unreasonable. *United States v. Missouri*, 535 F.3d 844, 849-50. But the Eighth Circuit expressly recognized that enforcement is entirely possible and appropriate against local election administrators as well. *Missouri*, 535 F.3d at 851 n.3 ("[T]he federal government has taken enforcement actions directly against the LEAs [Local Election Administrators] in the past."). The question here is not whether the state is conducting a reasonable program overall, but whether Defendant Rodriguez is failing to engage in basic list maintenance procedures.

*Scott v. Schedler* is likewise supportive of ACRU's position. That case involved a different subsection of the NVRA that expressly mandated obligations on state agencies, such as the designation of state agencies as voter registration offices. *Scott v. Schedler* stands for the proposition that when the NVRA mandates that state agencies establish voter registration services, the state is subject to suit under Section 7 of the NVRA. When an enforcement action is directed at the actions and obligations of the chief election official, then that official would be the proper primary defendant. *See e.g.*, *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1339 (2014) (challenge to the *Secretary's* noncitizen removal program). That a state official may be properly sued under the NVRA is not the same as saying a local election official cannot be. That is especially so when it comes to voter roll list maintenance.

12

Every other court to have considered the question of whether a local election official can be sued under the NVRA for failing to properly maintain registration rolls have come to the same conclusion. In *Bellitto v. Snipes*, the court found that, as the Supervisor of Elections, the defendant was designated under Florida law to maintain the lists of eligible voters in Broward County. *Bellitto*, 221 F. Supp. 3d at 1361. Florida law predominantly placed list maintenance obligations on county election administrators. *Id.* Therefore, the defendant in that case had obligations under the NVRA and a local county election official could certainly be a defendant in a Section 8 case under the NVRA. *Id.* at 1362.

The court in *Bellitto* closely followed the reasoning of the United States District Court for the Western District of Texas in *ACRU v. Martinez-Rivera*, 166 F. Supp. 3d 779 (W.D. Tex. 2015). *Bellitto*, 221 F. Supp. 3d at 1361-62. Other courts have reached the same conclusion. *Ass'n of Cmty. Organizations for Reform Now v. Scott*, 2008 WL 5272059, at *2 (W.D. Mo. Dec. 17, 2008) ("Plaintiffs have sued local election authorities . . . for their *own* violations of the NVRA and Missouri's implementing statutes." (emphasis in original)); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, ___ F. Supp. 3d ___, 2017 U.S. Dist. LEXIS 23565 at *5-9 (E.D. NC, Feb. 21, 2017).

Defendant Rodriguez has presented no authority to the contrary and the same result should follow here.

Finally, Defendant Rodriguez's position would immunize negligent election officials for their failures to maintain accurate voter rolls. According to Defendant Rodriguez, he could be entirely neglecting and failing in his list maintenance obligations and tasks, but cannot be subject to an enforcement action under the NVRA. (Dkt. 105 at 11.) That is certainly not what Congress attempted to do in passing the NVRA.

13

As have been listed above, discovery in this case has unearthed voluminous evidence demonstrating the inadequacy and problems with Defendant Rodriguez's list maintenance activities. A question of fact exists whether the Defendant Rodriguez is failing to satisfy obligations under Section 8 of the NVRA, and he may be sued for those failures.

### E.   ACRU Has Standing to Bring It's Inspection Claim and that Claim Is Not Moot.

Defendant Rodriguez was in violation of the NVRA's public inspection obligations when this case was filed and therefore his motion for summary judgment should be denied. Defendant Rodriguez has not carried his burden of showing the absence of any factual dispute that negates a material element of ACRU's inspection claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Nor has Defendant Rodriguez established the absence of evidence supporting ACRU's inspection claim. There remains a genuine issue of material fact surrounding the inspection request made by ACRU and whether that request has been satisfied.

First, the version of events presented by Defendant Rodriguez regarding Count II is not supported by admissible evidence and such evidence cannot be produced. Even if the movant's facts were true, they do not establish the absence of a genuine factual dispute. Second, evidence in the record demonstrates that the Election Administrator did not satisfy his obligation to permit inspection of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i).

For purposes of standing and jurisdiction, the operative period for the satisfaction of the inspection request is between the date of the request and the time of filing the lawsuit. *Bellitto*, ___ F. Supp. 3d ___, 217 U.S. Dist. LEXIS 107355, at *71. If the Administrator did not provide full inspection of all records, as contemplated by the statute, during that time period, and the

14

notice period after the request has expired, the ACRU has standing to bring an enforcement action in order to obtain relief from that failure to allow inspection. It is during this time period that the Administrator must provide for inspection. Failing to do so means that he has violated 52 U.S.C. § 20507(i). *Id.* The situation here is distinguishable from that in the *Bellitto* case. In *Bellitto*, the court determined that the defendant had not been provided a curative period for the plaintiff's claim of failure to provide for inspection of documents. *Bellitto v. Snipes*, 268 F. Supp. 3d 1328, 1334-35 (S.D. Fla 2017). The court's reasoning was based upon the facts indicating that there had been no further communications between the plaintiff and the defendant after the defendant had produced some, but my no means all, list maintenance documents. *Id*. at 1335 n.5. And so the court concluded that a full curative period had not been afforded. Here there is a genuine issue of material fact whether Defendant Rodriguez ever made any documents whatsoever available to ACRU before the case was filed. Furthermore, in *Bellitto*, there was communication between the parties, including a visit. Finally, the curative period here was 20 days because of the primary in March 2016, while in *Bellitto* the curative period was 90 days.

Most importantly, however, whatever production and examination of documents is required through discovery by the Federal Rules of Civil Procedure cannot serve to then moot violation public inspection claim founded in a statute. (*Contra* Dkt. 105 at 14-15). The violation of the statutory inspection obligation occurs before the action and the purpose of the action is to enforce the right to inspection. Therefore, by definition, Defendant Rodriguez cannot rectify the failure to permit inspection through compliance with the rules of discovery in the enforcement action. The failure occurred, period. Production of documents in discovery complies with the requirements of the Federal Rules of Civil Procedure, not with the inspection requirements in the NVRA. Otherwise, a jurisdiction could, with impunity, refuse to permit inspection under NVRA

and force all requestors to file enforcement actions. Discovery and public records provisions are distinct statutes with distinct purposes. *See Baldrige v. Shapiro*, 455 U.S. 345, 360 n.14 (1982) ("The primary purpose of the FOIA was not to . . . serve as a substitute for civil discovery.").

At the summary judgment stage, it is not correct to weigh the competing interpretations as to when and whether Defendant Rodriguez complied with his inspection obligations. *Bellitto*, ___ F. Supp. 3d ___, 2017 U.S. Dist. LEXIS 107355, at *63. Instead, there is a material issue of fact as to whether the Administrator provided for inspection of all list maintenance records prior to the filing of the lawsuit.

First of all, ACRU's notice letter of December 23, 2015, was adequate because Texas held primary elections on March 1, 2016. According to 52 U.S.C. § 20510(2), if the violation is not corrected within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for federal office, a plaintiff may proceed with an enforcement action. One hundred and twenty days before the March 1, 2016 federal primary was November 2, 2015. During that time, the Administrator was put on notice that ACRU had requested inspection of all list maintenance records and did not provide for such inspection within the 20-day curative period.

Secondly, the facts surrounding the communications between Defendant Rodriguez's predecessor and ACRU, and the subsequent visit to Starr County of ACRU's representative, appear to be very much in dispute. The facts as related in the affidavit of Mr. Rodriguez contradict those of related in the memo of Mr. Mashburn and in Mrs. Carleson's deposition. At the very least, there is a genuine issue of material fact whether Defendant Rodriguez satisfied the obligation to allow a public inspection of documents before the filing of the lawsuit. As Mrs. Carleson has expressed, ACRU would not have initiated litigation if the county had cooperated

with the inspection of their records and with remedial measures. (Dkt. 105-1 at 15, Carleson Dep. 49:18-20.)

There is a genuine issue of material fact regarding ACRU's document inspection request. Most importantly, Mrs. Carleson testified that Defendant Montalvo did not offer to send any documents. (Dkt. 105-1 at 18.) There is no mention of being offered documents in Mr. Mashburn's memo. (Dkt. 105-1, Tab E.) These documents were not attached to the affidavit of Mr. Rodriguez. (Dkt. 105-1, Tab C.) Be that as it may, even if Mr. Montalvo had offered documents to Mr. Mashburn, the offer could not have included the thousands of documents that have since been produced in discovery, which proves that Defendant Rodriguez decidedly *did not* provide for the inspection of all records related to list maintenance during the curative period. *Bellitto*, 221 F. Supp. 3d at 1366 (S.D. Fla., Oct. 26, 2016) (" . . . § 20507(i)(1) requires, with exception, that Defendant 'make available for public inspection . . . *all records* concerning the implementation of programs and activities . . . .") (emphasis in original order)). There is no record of this set of documents being offered again, whether before or after the initiation of the suit. In fact, Defendant Rodriguez has instead sought to restrict or halt the inspection of list maintenance records. (Dkt. 85 at 4-6.) Simply put, if Defendant Rodriguez had provided the documents requested or had arranged a full inspection of all list maintenance records, Count II would not have been part of this case. Unlike in *Bellitto*, here there were further communications, including a meeting, between ACRU and Defendant Rodriguez following the initial notice letter, such that the Administrator was certainly on notice that he needed to provide inspection of all his list maintenance records to ACRU within the 20-day curative period.

The same can be said of the Administrator's claim that he was willing to improve the voter registration and list maintenance processes. (Dkt. 105 at 14.) The procedural history of this

case, together with the evidence uncovered through discovery, do not support this claim. To the

contrary, they demonstrate that Defendant Rodriguez has known that the registration lists in Starr

County have had accuracy problems and that no changes have been made to any list maintenance

processes since the lawsuit was filed. There is a genuine issue of fact as to whether the

Administrator was willing to engage in any remedial actions prior to the lawsuit.[2]

**CONCLUSION**

For the reasons stated above, Defendant Rodriguez's Summary Judgment Motion should

be DENIED.

Respectfully submitted,

For the Plaintiff ACRU:

Dated: April 2, 2018

Eric Wiesehan
SBN 24084094
Southern District Bar No.: 1690807
Wiesehan Law Firm, PLLC
P.O. Box 720938
McAllen, TX 78504
Tel: (956) 207-2795
Fax: (866) 311-5445
wiesehanlaw@gmail.com

J. Christian Adams*
Public Interest Legal Foundation
300 N. Washington Street, Ste. 405
Alexandria, VA 22314
(317) 203-5599
adams@publicinterestlegal.org

Kenneth A. Klukowski*
American Civil Rights Union

---

[2] The evidence in the record does not conflict with Paragraph 35 of the Amended Complaint. The administrator did not and has not agreed to adopt any of the remedial procedures suggested by ACRU, now heading into the third year of this litigation.

3213 Duke Street #625
Alexandria, VA 22314
(623) 261-9249
kklukowski@theacru.org

/s/ Noel H. Johnson
Kaylan L Phillips*
Noel H. Johnson*
Public Interest Legal Foundation
32 E. Washington Street
Suite 1675
Indianapolis, IN 46204
(317) 203-5599
kphillips@publicinterestlegal.org
njohnson@publicinterestlegal.org
*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2018, I caused the foregoing to be filed with the United States District Court for the Southern District of Texas via the Court's CM/ECF system, which will serve all registered users.


Dated: April 2, 2018

_____/s/ Noel H. Johnson_____

Noel H. Johnson
Public Interest Legal Foundation
32 E. Washington Street
Suite 1675
Indianapolis, IN 46204
(317) 203-5599
njohnson@publicinterestlegal.org
