```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                     MCALLEN DIVISION

 3   AMERICAN CIVIL RIGHTS      )
     UNION, in its individual   )
 4   and corporate              )
     capacities,                )
 5       Plaintiff,             )
     vs.                        )  Civil Action No.
 6   ELECTION ADMINISTRATOR     )  7:16-CV-00103
     JOHN RODRIGUEZ, in his     )
 7   official capacity; and     )
     TEXAS SECRETARY OF STATE   )
 8   ROLANDO PABLOS, in his     )
     official capacity,         )
 9       Defendants.            )
```

                    ORAL DEPOSITION OF

                    BRIAN KEITH INGRAM

                    December 4, 2017


         ORAL DEPOSITION OF BRIAN KEITH INGRAM, produced

as a witness at the instance of the Defendants and duly

sworn, was taken in the above-styled and numbered cause

on December 4, 2017, from 10:04 a.m. to 12:23 p.m.,

before KATRINA FAITH WRIGHT, Certified Shorthand Reporter

in and for the State of Texas, reported by machine

shorthand, at 300 West 15th Street, 11th Floor, Austin,

Texas 78701, pursuant to the Federal Rules of Civil

Procedure and the provisions stated on the record or

attached hereto.

1    Q.   (By Mr. Arnold)  Does the Secretary of State use
2    the National Change of Address Database?
3              MR. ADAMS:  Objection, asked and answered.
4    A.   We do not.
5    Q.   (By Mr. Arnold)  And we talked about that
6    earlier, that's just because it's -- you hadn't quite
7    figured out the cost of it yet and it's maybe a little
8    bit cumbersome to use, right?
9              MR. ADAMS:  Objection, asked and answered.
10   A.   So I know it's a vendor specific thing and I
11   know there are enough permutations out there it requires
12   some sort of purchasing process in order to get more
13   information that would be more actionable.  I don't know
14   if there is any -- since it's unbudgeted, I don't know if
15   there is any reason to proceed with some sort of
16   purchasing process.
17   Q.   (By Mr. Arnold)  You mentioned earlier you knew
18   who the Starr County elections administrator was, right,
19   Mr. Rodriguez?
20   A.   Right, and Mr. Montalvo before him.
21   Q.   Do you have any opinions about Mr. Rodriguez's
22   ability to perform his job?
23             MR. ADAMS:  Objection, relevance, and
24   objection to form.
25   A.   It has been my general impression for some time

1  that Starr County has very little concept of the life of
2  a voter.
3      Q.   (By Mr. Arnold)  What do you mean by that?
4      A.   I mean that they generally don't understand --
5  they don't understand their role, they don't understand
6  our role, they don't understand that voters' statuses
7  change over time and that this information is available
8  to them.  They just don't have the framework, I guess, to
9  comprehend what's expected of them.
10          MR. ADAMS:  Plaintiff withdraws the
11  objection.
12     Q.   (By Mr. Arnold)  Have you all provided any
13  additional training to Starr County based on your --
14     A.   We have talked to Starr County a lot, yes.
15     Q.   Did you talk to Starr County before
16  Mr. Rodriguez became the elections administrator this
17  last summer?
18     A.   Yes.
19     Q.   What were your opinions of Mr. Montalvo when he
20  was the elections administrator?
21     A.   Very much the same.  They are not unique in that
22  regard, don't get me wrong, I'm just saying.
23     Q.   How many other counties in your experience
24  suffer from a similar, let's say, lack of training?
25     A.   It's not a lack of training, it's a lack of

1   comprehension, and I don't know.  There was one, there

2   was Houston County, and bless her heart, she was

3   completely incapable.  And we worked with the Texas

4   Association of Counties, we talked to her county judge,

5   we did whatever we could to try to alert them to the fact

6   that their elections office was in the hands of a person

7   that we considered to be in the early stages of dementia

8   and not competent.  And finally after this last election

9   she has been retired.

10       Q.   Okay.

11       A.   So it happens.

12       Q.   Okay.  How many other counties have you -- I

13  mean, that seems like an extreme example.  How many other

14  counties do you think struggle with, I guess you called

15  it --

16       A.   Not many.  There are some extreme examples.

17  Harrison County a few years ago had an election

18  administrator that was in desperate need of being

19  terminated and we put fairly relentless pressure on her

20  and her office and the county judge until that in fact

21  happened.

22            So I say that to say that Starr County is

23  within the range of normal.  We certainly haven't done

24  anything like that with regard to Starr County.  They

25  want to do well.  They call us, they ask questions, we