IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| AMERICAN CIVIL RIGHTS UNION, in its individual and corporate capacities,<br><br>*Plaintiff*,<br><br>v.<br><br>ELECTION ADMINISTRATOR JOHN RODRIGUEZ, in his official capacity, and TEXAS SECRETARY OF STATE ROLANDO PABLOS, in his official capacity,<br><br>*Defendants*. | Civil Action No. 7:16-cv-00103 |

## AFFIDAVIT OF SUSAN CARLESON, AS PRESIDENT OF THE AMERICAN CIVIL RIGHTS UNION

Pursuant to 28 U.S.C. § 1746, I, Susan Carleson, do hereby state:

1. I am over 18 years of age and my statements herein are based on my personal knowledge as President of Plaintiff American Civil Rights Union ("ACRU").

2. The ACRU is a non-profit corporation, incorporated in the District of Columbia

3. An essential and core mission of ACRU is to foster compliance with federal election laws, including the National Voter Registration Act ("NVRA"), promote election integrity and ensure that only eligible voters may participate in American elections so as prevent dilution of legitimate votes by illegal votes.

4. As part of its mission, ACRU disseminates information about compliance by state and local officials with federal election statutes, including election integrity statutes, and where necessary, urges federal, state and local election officials to comply with these laws.

5. According to my review of membership records, ACRU has members and supporters throughout the State of Texas, including one member that resides within Starr County.

6. According to my review of membership records, ACRU has approximately 63 members in Texas State House District 31, which includes Starr County.

7. Members and supporters enable the mission of ACRU and some make financial contributions to support this mission.

8. These members and supporters share ACRU's interest in the accuracy and currency of official lists of eligible voters in the State of Texas, as the accuracy and currency of these lists directly affect their right to vote.

9. Based on a review of publicly-available data disseminated by the U.S. Census Bureau and the federal Election Assistant Commission, ACRU learned that the registration rolls in Starr County contained more registrants than the citizen, voting-age population of Starr County. ACRU further learned that these circumstances had persisted in Starr County for several election cycles.

10. Consequently, ACRU began efforts to inform Starr County of its noncompliance with federal law and to remedy and fix the problem.

11. On December 23, 2015, I wrote to the then-Starr County Election Administrator Rafael Montalvo, on behalf of ACRU and its members and supporters, to notify Mr. Montalvo that based on ACRU's research his office was in violation of the NVRA (the "Notice Letter"). ACRU's Notice Letter explained that Starr County has significantly more people on the registration rolls than it has residents who are U.S. citizens.

12. The Notice Letter sought information and data regarding Starr County's registration list maintenance program. The Notice Letter also sought, pursuant to the NVRA, the right to inspect all records concerning Starr County's registration list maintenance program.

13. The Notice Letter informed Mr. Montalvo that a lawsuit may be bought to ensure compliance with the requirements of the NVRA.

14. ACRU's remedial efforts also included a public-information campaign to promote public awareness of the problems with Starr County's registration rolls. ACRU paid to place an advertisement in the *Starr County Town Crier*, which asked Starr County registrants to contact Mr. Montalvo and encourage him to take action to remedy the problems with the registration lists. ACRU's advertisement ran on January 6, 2016.

15. After receiving the Notice Letter, Mr. Montalvo contacted me by telephone. During the telephone call, Mr. Montalvo disagreed with ACRU's assessment of Starr County's registration rolls, which meant he disagreed that his registration rolls contained more registrants than Starr County's citizen population of voting age. Mr. Montalvo did not agree to remedy any of the problems identified by ACRU. Mr. Montalvo did not offer to send any of the documents or information requested and did not seek to clarify any of the requests ACRU had made.

16. Consequently, I explained to Mr. Montalvo that ACRU would be sending a representative to discuss the problems with Starr County's registration lists and solutions to those problems, and to inspect his office's list maintenance records.

17. In January 2016, ACRU representative John Mashburn traveled to Starr County to meet with Mr. Montalvo in an effort to remedy his office's failure to maintain clean registration rolls.

18. It is my understanding that Mr. Mashburn discussed with Mr. Montalvo and his successor, Defendant Rodriguez, specific problem areas with Starr County's efforts to remove ineligible registrants from the list of registered voters, including address confirmation mailings, review of deceased registrants, non-qualified juror information, registrants who lack U.S. citizenship, and registrants with felony convictions.

19. It is my understanding that Mr. Montalvo did not agree to remedy or begin to remedy his office's list maintenance program to address the inflated state of Starr County's registration rolls.

20. It is my understanding that Mr. Mashburn did not have an opportunity to inspect all of Starr County's list maintenance records and Mr. Mashburn did not return from Starr County with any of the requested documents or information.

21. ACRU diverted significant time and money attempting to remedy and fix the problems with registration rolls in Starr County. In total, ACRU spent over $7,000 to engage in these remedial efforts. These efforts failed because Starr County election officials would not agree to adopt remedial measures suggested by ACRU.

22. The inaction and refusal on the part of Starr County elections officials to remedy the problems with the registration rolls has impaired ACRU's mission of fostering compliance with federal election laws, promotion of election integrity and avoiding vote dilution.

23. Starr County's refusal to permit inspection of all list maintenance records has impaired ACRU's mission of disseminating information regarding compliance with state and federal election laws.

24. After the January meeting, ACRU received no further communication from Mr. Montalvo or his office staff.

25. ACRU waited until March 4, 2016 to file this lawsuit as required by the NVRA. Because no remedial action had occurred or was forthcoming, ACRU filed this lawsuit on March 4, 2016.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on April 13, 2018.

Susan A. Carleson
President
American Civil Rights Union